1 | KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
2 | HKING@KHPSLAW.COM
JOHN G. SNOW, ESQ., STATE BAR NO. 280790
3 | JSNOW@KHPSLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
4 | LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
5 | FACSIMILE:  (310) 282-8903

6 | Attorneys for Defendants CLARE
MAGUIRE, JAKE NYGARD,
7 | ANTONIUS WIRIADJAJA, and
DONGLEE HAN

8

9 | **UNITED STATES DISTRICT COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **WESTERN DIVISION**

12

13

14 | TAYLOR WHITLEY, and
WTF.INDUSTRIES, LLC,

15 |                 Plaintiffs,

16 |      v.

17 | CLARE MAGUIRE, JAKE NYGARD,
ANTONIUS WIRIADJAJA,
18 | DONGLEE HAN, and DOES 1-10,
inclusive,

19

20 |                 Defendants.

CASE NO. 22-CV-01837-ODW-JEM

**DEFENDANTS' MEMORANDUM
OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFFS'
COMPLAINT**

*Notice of Motion and Motion and
Proposed Order filed concurrently*

Date:   May 16, 2022
Time:   1:30 p.m.
Crtrm.: 5D

The Honorable Otis D. Wright II

21

22

23

24

25

26

27

28

5862.060/1804741.2

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................... 1

II.   SUMMARY OF RELEVANT ALLEGATIONS ............................ 3

III.  LEGAL STANDARD .............................................................. 4

IV.   ARGUMENT .......................................................................... 4

    A.   Whitley's First Claim For Copyright Infringement Claim Should Be Dismissed.................................................................... 4

        1.   Whitley Does Not Have A Valid Copyright Registration ........... 4

        2.   Whitley Affirmatively Pleads He Granted Defendants "Authorization" To Use The Subject Design And Fails To Allege Any "Copying" Exceeded The Scope Authorized ........ 5

        3.   Whitley Cannot Sue Nygard As An Alleged Co-Creator ........... 7

    B.   Whitley's Vicarious Infringement Claim Should Be Dismissed ........... 8

    C.   Whitley's Third and Fourth Claims for Negligent Misrepresentation Should Be Dismissed ................................. 8

    D.   Whitley's Fifth Claim For Breach Of Implied Contract Should Be Dismissed.................................................................... 9

    E.   Whitley's Sixth Claim For Breach Of Fiduciary Duty Should Be Dismissed ................................................................ 11

    F.   Whitley's Seventh Claim For Dissolution Of Implied Partnership Should Be Dismissed ................................... 12

    G.   Whitley's Eighth Claim For Unjust Enrichment Should Be Dismissed ................................................................ 12

    H.   Whitley's Ninth Claim For Conversion Should Be Dismissed ........... 13

    I.   Whitley's Tenth Claim For Defamation Should Be Dismissed ........... 15

        1.   The Claim Fails To Give Defendants Fair Notice Of The Statements Charged Against Them ................................. 15

        2.   The Three Statements Whitley Identifies Are Not Actionable ................................................................ 16

    J.   Whitley's Eleventh Claim For Unfair Competition Should Be Dismissed ................................................................ 21

V.    CONCLUSION ..................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ................................................................. 8

*Am. Title Ins. v. Lacelaw Corp.*,
  861 F.2d 224 (9th Cir. 1988) ................................................................. 6

*Arikat v. JP Morgan Chase & Co.*,
  430 F. Supp. 2d 1013 (N.D. Cal. 2006) ............................................... 15

*Art of Living Foundation v. Does 1-10*,
  2011 WL 2441898 (N.D. Cal. June 15, 2011) ...................................... 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 4

*Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*,
  2021 WL 6104014 (C.D. Cal. Aug. 13, 2021) ..................................... 10

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ................................................................. 4

*Beautiful Slides, Inc. v. Allen*,
  2017 WL 3782304 (N.D. Cal. Aug. 31, 2017) ..................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 4, 14

*Blatty v. New York Times Co.*,
  42 Cal. 3d 1033 (1986) ........................................................................ 16

*Brod v. Siux Honey Ass'n Co-op*,
  895 F. Supp. 2d 972 (N.D. Cal. 2012) ................................................. 11

*Cabo Brands, Inc. v. MAS Beverages, Inc.*,
  2012 WL 5520775 (C.D. Cal. Nov. 14, 2012) ..................................... 13

*Castel S.A. v. Wilson*,
  2020 WL 4003024 (C.D. Cal. July 15, 2020) ...................................... 13

KING, HOLMES,
PATERNO &
SORIANO, LLP

*Cel-Tech Comms., Inc. v. Los Angeles Cell. Tel. Co.*,
   20 Cal. 4th 163 (1999) ................................................................22

*Chaker v. Mateo*,
   209 Cal. App. 4th 1138 (2012) ...................................................20

*Clifford v. Trump*,
   339 F. Supp. 3d 915 (C.D. Cal. 2018) ........................................20

*D.A.R.E. Am. v. Rolling Stone Mag.*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000) ......................................16

*Deerpoint Grp., Inc. v. Agrigenix, LLC*,
   345 F. Supp. 3d 1207 (E.D. Cal. 2018) ......................................16

*Effects Assocs. v. Cohen*,
   908 F.2d 555 (9th Cir. 1990) .........................................................6

*F.B.T. Prods., LLC v. Aftermath, Recs.*,
   621 F.3d 958 (9th Cir. 2010) .........................................................6

*Field v. Google Inc.*,
   412 F. Supp. 2d 1106 (D. Nev. 2006) ...........................................6

*Fitbit, Inc. v. Laguna 2, LLC*,
   2018 WL 306724 (N.D. Cal. Jan. 5, 2018) .................................17

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
   139 S. Ct. 881 (2019) ..............................................................1, 5

*Fremont Indem. Co. v. Fremont Gen. Corp.*,
   148 Cal. App. 4th 97 (2007) .......................................................13

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ................................................17, 18

*Gilbert v. Sykes*,
   147 Cal. App. 4th 13 (2007) .......................................................16

*Greenbelt Coop. Publ'g Ass'n v. Bresler*,
   398 U.S. 6 (1970) ........................................................................20

*Heritage Pac. Fin., LLC v. Monroy*,
   215 Cal. App. 4th 972 (2013) .....................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

King, Holmes, Paterno & Soriano, LLP

iii

*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148 (9th Cir. 2021) ...................................................................... 20

*Ilagan v. Wells Fargo Bank, N.A.*,
  2019 WL 1063396 (C.D. Cal. Jan. 29, 2019) .......................................... 14

*Imagize LLC v. Ateknea Sols. Hungary KFT*,
  2019 WL 3068345 (N.D. Cal. July 12, 2019) ............................................ 5

*In re Bailey*,
  197 F.3d 997 (9th Cir. 1999) ..................................................................... 13

*In re Hoag Urgent Care-Tustin, Inc.*,
  2021 WL 1199440 (C.D. Cal. Mar. 30, 2021) ......................................... 12

*Info. Control Corp. v. Genesis One Comp. Corp.*,
  611 F.2d 781 (9th Cir. 1980) ..................................................................... 21

*Ingels v. Westwood One Broad. Services, Inc.*,
  129 Cal. App. 4th 1050 (2005) .................................................................. 21

*Interscope Recs. v. Time Warner, Inc.*,
  2010 WL 11505708 (C.D. Cal. June 28, 2010) .......................................... 6

*John Doe 2 v. Superior Court*,
  1 Cal. App. 5th 1300 (2016) ...................................................................... 17

*Khoury v. Maly's of Cal. Inc.*,
  14 Cal. App. 4th 612 (1993) ...................................................................... 22

*Krantz v. BT Visual Images*,
  89 Cal. App. 4th 164 (2001) ...................................................................... 21

*Leidholdt v. L.F.P. Inc.*,
  860 F.2d 890 (9th Cir. 1988) ..................................................................... 19

*Leitner v. Sadhana Temple of New York, Inc.*,
  2014 WL 12588643 (C.D. Cal. Oct. 17, 2014) ........................................ 12

*Levitt v. Yelp! Inc.*,
  756 F.3d 1123 (9th Cir. 2014) ................................................................... 22

*Lickerish, Inc. v. Alpha Media Grp.*,
  2014 WL 12589641 (C.D. Cal. Jan. 2, 2014) ............................................. 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*McGarry v. University of San Diego*,
  154 Cal. App. 4th 97 (2007) ............................................................... 18, 19

*McKay v. Columbia Broadcasting Sys.*,
  324 F.2d 762 (2d Cir. 1963) ........................................................................ 8

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
  629 F.3d 928 (9th Cir. 2010) ................................................................... 2, 7

*Melchior v. New Line Prods., Inc.*,
  106 Cal. App. 4th 779 (2003) ................................................................... 12

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ........................................................................................ 19

*Nocsia v. De Rooy*,
  72 F. Supp. 2d 1093 (N.D. Cal. 1999) ...................................................... 20

*Oddo v. Ries*,
  743 F.2d 630 (9th Cir. 1984) ....................................................................... 8

*Partington v. Bugliosi*,
  56 F.3d 1147 (9th Cir. 1995) ............................................................... 17, 19

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*,
  150 Cal. App. 4th 384 (2007) ................................................................... 14

*Piantadosi v. Loew's Inc.*,
  137 F.2d 534 (9th Cir. 1943) ....................................................................... 8

*Price v. Stossel*,
  620 F.3d 992 (9th Cir. 2010) ..................................................................... 18

*Prime Healthcare Services, Inc. v. Humana Ins. Co.*,
  230 F. Supp. 3d 1194 (C.D. Cal. 2017) ...................................................... 9

*Prostar Wireless Grp. v. Domino's Pizza, Inc.*,
  2017 WL 67075 (N.D. Cal. Jan. 6, 2017) ................................................. 11

*Quest Software, Inc. v. DirectTV Operations, LLC*,
  2011 WL 4500922 (C.D. Cal. Sept. 26, 2011) ............................................ 6

*Richards v. Oliver*,
  162 Cal. App. 2d 548 (1958) ..................................................................... 10

*Rubio v. U.S. Bank N.A.*,
  2014 WL 1318631 (N.D. Cal. Apr. 1, 2014)..........................................................11

*Sakala v. Milunga*,
  2017 WL 2986364 (D. Md. July 13, 2017) .........................................................19

*Scolinos v. Kolts*,
  37 Cal. App. 4th 635 (1995) .................................................................................10

*SDV/ACCI, Inc. v. AT&T Corp.*,
  522 F.3d 955 (9th Cir. 2008) ................................................................................17

*Snapkeys, Ltd. v. Google LLC*,
  442 F. Supp. 3d 1196 (N.D. Cal. 2020)...............................................................22

*Spinelli v. NFL*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) .........................................................................7

*SST Records, Inc. v. Mould*,
  2013 WL 12131167 (C.D. Cal. July 10, 2013) .......................................................5

*Stockton Mortg., Inc. v. Tope*,
  233 Cal. App. 4th 437 (2014) .................................................................................9

*Summit Bank v. Rogers*,
  206 Cal. App. 4th 669 (2012) ...............................................................................20

*Terpin v. AT&T Mobility, LLC*,
  399 F. Supp. 3d 1035 (C.D. Cal. 2019)................................................................10

*Thognoppakun v. Am. Exp. Bank*,
  2012 WL 639531 (C.D. Cal. Feb. 27, 2012) ........................................................22

*Tobon v. Nationstar Mortg. LLC*,
  2017 WL 8114978 (C.D. Cal. Apr. 4, 2017).........................................................21

*Townsend v. Chase Bank USA N.A.*,
  2009 WL 426393 (C.D. Cal. Feb. 15, 2009) ........................................................16

*Troy Group, Inc. v. Tilson*,
  364 F. Supp. 2d 1149 (C.D. Cal. 2005).................................................................18

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) ..................................................................................5

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
   177 F. Supp. 3d 1183 (N.D. Cal. 2016)...........................................................13, 14

*United States v. Drew*,
   259 F.R.D. 449 (C.D. Cal. 2009)...........................................................................14

*Very Music Inc. v. Kid Glove Prods., Inc.*,
   2016 WL 6674991 (C.D. Cal. April 28, 2016)........................................................7

*Vogel v. Felice*,
   127 Cal. App. 4th 1006 (2005) ..............................................................................16

*Waitt v. Internet Brands, Inc.*,
   2010 WL 11549746 (C.D. Cal. July 29, 2010) ......................................................14

*Ward v. Zelikovsky*,
   643 A.2d 972 (N.J. 1994) ......................................................................................19

*ZL Tech., Inc. v. Does 1-7*,
   13 Cal. App. 5th 603 (2017) ............................................................................17, 20

**Rules & Statutes**

17 U.S.C. § 201..............................................................................................................8

17 U.S.C. § 411(a) ..........................................................................................................5

17 U.S.C. § 512(g)(2)(C) ................................................................................................2

Federal Rule of Civil Procedure 12(b)(6)........................................................................4

King, Holmes,
Paterno &
Soriano, LLP

5862.060/1804741.2

vii

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

Plaintiffs Taylor Whitley and WTF.Industries, LLC's (collectively, "Whitley") slapdash Complaint is riddled with pleading defects that are easy to point out and require it to be dismissed in its entirety. Most noticeably, Whitley attempts to bring his lead claim for copyright infringement without a valid copyright registration, despite the Supreme Court's mandate that "[b]efore pursuing an infringement claim in court . . . a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.'" *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). This alone requires dismissal of the claim. For the reasons explained herein, the ten other claims Whitley tacks on to his shotgun Complaint are just as poorly pled and the entire action should be dismissed.

This action arises from a failed collaboration between the parties to sell digital art, which has spawned two dueling lawsuits. As background, Defendants in this action filed suit against Whitley in this Court in the matter entitled *Jacob L. Nygard, et al. v. Taylor Whitley*, Case No. 22-cv-00425-ODW-JEMx (the "Nygard Action"). In the *Nygard* Action, Defendants allege they entered into a joint venture with Whitley to promote and sell a digital art collection of non-fungible tokens ("NFTs") known as "Caked Apes," which Whitley subsequently attempted to usurp ownership and control of solely for himself after he saw the project's commercial success. When Whitley's efforts failed, Whitley filed multiple false "takedown notices" under the Digital Millennium Copyright Act ("DMCA") to have the collection removed from online marketplaces, falsely claiming the project was derived entirely from his intellectual property and that he never granted Defendants a license to use that intellectual property. Those online marketplaces relied on Whitley's false notices to remove the collection from their websites, causing the immediate outrage of the project's collectors and customers, preventing the

continuing sale of the works, and harming the future value of the works. Defendants filed the *Nygard* Action to remedy Whitley's wrongful acts, to restore the collection, and to prove Whitley's claims in his takedown notices were false.

The present action by Whitley (the "*Whitley* Action") is merely a continuation of his bad faith conduct toward Defendants and a misuse of the court system. For example, after Whitley's false takedown notices, Defendants filed DMCA "counter notices" with the relevant online marketplaces to have the collection restored, which then required Whitley to file suit against Defendants for copyright infringement within 14 days if he wanted to keep the collection offline. *See* 17 U.S.C. § 512(g)(2)(C). That is exactly what Whitley did with this hasty, legally deficient suit, which he raced to the courthouse to file despite having no copyright registration for his allegedly infringed works and notwithstanding that registration is a well-established requirement to bring such a claim.

Moreover, even if Whitley had registered his supposed copyrights before filing suit, his copyright claim *still* fails because he admits (1) that he gave Defendants "authorization" (*i.e.*, a license) to "use the Subject Design in the Caked Apes NFT project" (Compl. ¶ 48; *see also id.* ¶ 53), and (2) that he himself promoted the sale of Caked Apes (*id.* ¶ 35), giving rise to a further implied license to use the work. Importantly, to state a claim for copyright infringement when an alleged copyright holder such as Whitley has granted a license, "***the copying must exceed the scope of the defendant's license***." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 940 (9th Cir. 2010) (emphasis added). Here, Whitley does not (and cannot) allege that any copying exceeded the scope of the license he admits he granted Defendants. His copyright claim must be dismissed for this additional reason and the others stated herein.

In short, the *Whitley* Action is defective on its face and was filed for the sole purpose of retaliating against Defendants after they resisted his efforts to usurp the Caked Apes project for himself. It should be dismissed.

## II.     SUMMARY OF RELEVANT ALLEGATIONS

While Defendants disagree with Whitley's revisionist version of the facts, the following allegations from Whitley's Complaint are relevant to deciding the present motion:

In 2021, Defendants and Whitley collaborated to promote and sell a digital art project entitled "Caked Apes." (Compl. ¶ 33.) Whitley alleges he created the project with Defendant Nygard. (*Id.*) One of the ideas behind the project was to "use traits from other NFT projects"—*i.e.*, prior existing works. (*Id.*) The parties created a website to promote the project and listed the works for sale online. (*Id.* ¶ 35.) They agreed on percentages they would each receive for their contributions to the project. (*Id.* ¶ 36.)

A small percentage of the 8,888 total works in the project—including three specifically identified by Whitley—incorporated traits from one of Whitley's prior projects "in the background of the image." (*Id.* ¶ 48.) Whitley calls the traits from his prior project the "Subject Design" and admits that he granted Defendants "authorization for the use of the Subject Design in the Caked Apes NFT project." (*Id.*)

The Caked Apes project sold out in its initial run, "generating an estimated $1.9 million in primary sale revenue and $225,000 in royalties from secondary sales." (*Id.* ¶ 38.) Defendants sent Whitley 10% of the revenue received (*id.* ¶ 37), but Whitley alleges he did not receive additional revenue that he contends was due to "WTF.Industries, LLC"—a LLC Whitley claims he solely owns (*id.* ¶ 39).[1] After

---

[1] Defendants deny that any money from the Caked Apes project was due to WTF.Industries, LLC, or that Whitley is the sole beneficial owner WTF.Industries, LLC. Rather, the parties used the name "WTF.Industries" to refer to all of them collectively before the LLC with the same name was formed. Indeed, Whitley previously referred to all Defendants as "founders" and "partners" of WTF.Industries. Additionally, after Whitley received word the LLC had been formally registered, he wrote to all Defendants and stated "*we* are in," indicating—as Whitley had previously communicated to Defendants—that the LLC was formed for their joint ownership. After the success of Caked Apes, however, Whitley refused admit Defendants as members to the LLC and

1  supposedly learning this, Whitley decided to sue Defendants for copyright

2  infringement of his "Subject Design." Whitley alleges he has applied to register the

3  Subject Design with the United States Copyright Office, but he does not allege he

4  actually has a valid registration and he identifies only an "application case number"

5  in his Complaint. (*Id.* ¶ 47.)

6  **III.   LEGAL STANDARD**

7          Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be

8  dismissed when it fails "to state a claim upon which relief can be granted."

9  Dismissal can be based on either a lack of a cognizable legal theory or the absence

10 of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica*

11 *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

12         To survive a motion to dismiss, the complaint "must contain sufficient factual

13 matter, accepted as true, to 'state a claim to relief that is plausible on its

14 face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v.*

15 *Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a

16 cause of action will not suffice. *Twombly*, 550 U.S. at 555.

17 **IV.   ARGUMENT**

18         **A.      Whitley's First Claim For Copyright Infringement Claim Should
                     Be Dismissed**

19

20         Whitley's first claim for copyright infringement should be dismissed for at

21 least three independent reasons.

22                 1.      <u>Whitley Does Not Have A Valid Copyright Registration</u>

23         Whitley alleges that he has only applied to register the "Subject Design" with

24 the United States Copyright Office. (Compl. ¶ 47.) Whitley fails to allege that he has

25 an actual, valid copyright registration and, therefore, his claim must be dismissed.

26         It is well-established that a cause of action for infringement cannot be

27 _____

28 began to claim for the first time that he was its sole owner and Defendants were merely his
   employees.

1    enforced until the party alleging infringement actually registers the copyright in

2    accordance with the requirements of the Copyright Act. *See* 17 U.S.C. § 411(a) ("no

3    civil action for infringement of the copyright in any United States work shall be

4    instituted until preregistration or registration of the copyright claim has been made

5    in accordance with this title"); *Fourth Estate Pub.*, 139 S. Ct. at 887 ("Before

6    pursuing an infringement claim in court . . . a copyright claimant generally must

7    comply with § 411(a)'s requirement that 'registration of the copyright claim has

8    been made.'"); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir.

9    2017) ("registration [is] an element of an infringement claim").

10         In 2019, the Supreme Court held an "application alone" does not suffice. *See*

11    *Fourth Estate*, 139 S. Ct. at 892 ("we conclude that 'registration . . . has been made'

12    within the meaning of 17 U.S.C. § 411(a) not when an application for registration is

13    filed, but when the Register has registered a copyright after examining a properly

14    filed application"). Yet an application is all Whitley alleges he has. For this reason,

15    his copyright claim fails to state a claim upon which relief may be granted and

16    should be dismissed. *See Imagize LLC v. Ateknea Sols. Hungary KFT*, 2019 WL

17    3068345, at *3 (N.D. Cal. July 12, 2019) (dismissing copyright infringement claim

18    under Rule 12(b)(6) because plaintiff did not allege ownership of a valid copyright

19    registration); *SST Records, Inc. v. Mould*, 2013 WL 12131167, at *3 (C.D. Cal. July

20    10, 2013) (dismissing counterclaims for copyright infringement because

21    counterclaimant "failed to adequately allege registration of its copyrights").

22
23         2.   <u>Whitley Affirmatively Pleads He Granted Defendants "Authorization" To Use The Subject Design And Fails To Allege Any "Copying" Exceeded The Scope Authorized</u>

24         Whitley's copyright infringement claim also fails because he affirmatively

25    alleges he gave Defendants "authorization"—*i.e.*, a license—to "use the Subject

26    Design in the Caked Apes NFT project." (Compl. ¶ 48; *see also id.* ¶ 53.) Under

27    federal copyright law, "a license is an *authorization* by the copyright owner to

28    enable another party to engage in behavior that would otherwise be the exclusive

1  right of the copyright owner, but without transferring title in those rights."

2  *F.B.T. Prods., LLC v. Aftermath Recs.*, 621 F.3d 958, 965 (9th Cir. 2010) (emphasis

3  added). Few formalities are required to effectuate a nonexclusive license. Indeed, a

4  nonexclusive license may be granted orally or by conduct, and exists "where the

5  totality of the parties' conduct indicates an intent to grant such permission."

6  *Interscope Recs. v. Time Warner, Inc.*, 2010 WL 11505708, at *3 (C.D. Cal. June

7  28, 2010) (quoting Nimmer on Copyright § 10.03[A][7] (rev. ed. 2009)) (cleaned

8  up). Here, because Whitley affirmatively pleads he granted Defendants

9  "authorization" to use the Subject Design, he cannot now argue he did not intend to

10  grant any such permission. *See Am. Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226

11  (9th Cir. 1988) ("A statement in a complaint . . . is a judicial admission.").

12       Moreover, Whitley also alleges that he promoted the sale of the Caked Apes

13  project, including by "put[ting] up a website . . . and social media accounts" (*id.* ¶

14  35), giving rise to a further implied license to use the work. *See Field v. Google Inc.*,

15  412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) ("An implied license can be found

16  where the copyright holder engages in conduct from which the other party may

17  properly infer that the owner consents to his use. Consent to use the copyrighted

18  work need not be manifested verbally and may be inferred based on silence where

19  the copyright holder knows of the use and encourages it.").

20       It is well-settled that "[a] license is a defense to a claim of copyright

21  infringement." *Id.* at 1115 (citing *Effects Assocs. v. Cohen*, 908 F.2d 555, 558-59

22  (9th Cir. 1990)); *see also Quest Software, Inc. v. DirectTV Operations, LLC*, 2011

23  WL 4500922, at *4 (C.D. Cal. Sept. 26, 2011) ("Generally, a copyright owner who

24  grants a nonexclusive license to use his copyrighted material waives his right to sue

25  the licensee for copyright infringement and can sue only for breach of contract."

26  (quotation marks omitted)). To state a claim for copyright infringement when an

27  alleged copyright holder such as Whitley has granted a license, "(1) the copying

28  must exceed the scope of the defendant's license and (2) the copyright owner's

1  complaint must be grounded in an exclusive right of copyright (e.g., unlawful

2  reproduction or distribution)." *MDY Indus., LLC*, 629 F.3d at 940.

3      Here, Whitley does not (and cannot) allege that any copying exceeded the

4  scope of the license he granted Defendants or that Defendants violated any of

5  Whitley's alleged exclusive rights of copyright. Rather, he merely alleges that he did

6  not receive certain additional revenue to which he believes he was entitled. (Compl.

7  ¶ 53.) Alleged underpayment pursuant to a written or oral agreement, however, does

8  not state a claim for copyright infringement. *See Lickerish, Inc. v. Alpha Media*

9  *Grp.*, 2014 WL 12589641, *3 (C.D. Cal. Jan. 2, 2014) (granting motion to dismiss

10  copyright infringement claim based on alleged failure to pay a license fee because

11  such claims "sound in contract rather than federal copyright law"); *Very Music Inc.*

12  *v. Kid Glove Prods., Inc.*, 2016 WL 6674991, *4 (C.D. Cal. April 28, 2016)

13  (allegations that Defendants collected more royalties "than they were entitled to

14  under the parties' informal agreement . . . [i]f proven, . . . would tend to establish a

15  cause of action for breach of contract, not a claim for copyright infringement"); *see*

16  *also Spinelli v. NFL*, 96 F. Supp. 3d 81, 125 (S.D.N.Y. 2015) ("where a licensee's

17  use of a copyrighted work is authorized by a license, any claim for unpaid royalties

18  for that use cannot form the basis of an infringement claim"). Whitley's copyright

19  infringement claim should be dismissed for this additional reason.

20              3.    Whitley Cannot Sue Nygard As An Alleged Co-Creator

21      Finally, while Defendants disagree that Whitley had any role in actually

22  designing or creating the "Caked Apes" works, Whitley nevertheless alleges that he

23  designed and created them together which Defendant Nygard. (Compl. ¶ 33

24  (alleging "Caked Apes were designed and created by Whitley and Nygard as a

25  collection of 8,888 NFTs").) Taking this allegation as true at this stage, it precludes

26  Whitley from suing Nygard for copyright infringement because it establishes—at

27  least based on Whitley's theory of the case—that he and Mr. Nygard are coowners

28  of the copyrights in Caked Apes and "[a] co-owner of a copyright cannot be liable to

1  another co-owner for infringement of the copyright." *Oddo v. Ries*, 743 F.2d 630,

2  633-634 (9th Cir. 1984); *see also* 17 U.S.C. § 201 ("Copyright in a work . . . vests

3  initially in the author or authors of the work. The authors of a joint work are

4  coowners of copyright in the work."). Moreover, this precludes Whitley from suing

5  the other Defendants (who are affiliated with Nygard) for copyright infringement

6  because Nygard's authorization of any use immunizes the other Defendants "from

7  liability to the other co-holder for copyright infringement." *McKay v. Columbia*

8  *Broadcasting Sys.*, 324 F.2d 762, 763 (2d Cir. 1963) (citing *Piantadosi v. Loew's*

9  *Inc.*, 137 F.2d 534, 537 (9th Cir. 1943)).

10      In short, Whitley's copyright infringement claim should be dismissed for any

11  one of the above three reasons.

12      **B.    Whitley's Vicarious Infringement Claim Should Be Dismissed**

13      Because Whitley fails to state a claim for direct copyright infringement

14  against any Defendant, his second claim for vicarious and/or contributory

15  infringement must also be dismissed. *See A&M Records, Inc. v. Napster, Inc.*, 239

16  F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Secondary liability for copyright infringement

17  does not exist in the absence of direct infringement . . . .").

18      **C.    Whitley's Third and Fourth Claims for Negligent**
       **Misrepresentation Should Be Dismissed**

19

20      Whitley's third claim for negligent misrepresentation against Defendant Han

21  alleges that Han represented to Whitley that certain revenue percentages from a

22  digital art project known as "Pixel Tots" "would be sent to him," which Whitley

23  alleges "Han did not have reasonable ground to believe [to be] true." (Compl. ¶ 63.)

24  Similarly, Whitley's fourth claim for negligent misrepresentation against

25  Defendants Maguire, Nygard and Wiriadjaja alleges that these Defendants

26  supposedly represented that certain revenue percentages from the Caked Apes

27  project "would be sent" to Whitley and WTF.Industries, LLC, which Whitley also

28  alleges these Defendants "did not have reasonable grounds to believe [to be] true."

1  (*Id.* ¶ 69.)

2      Defendants deny all of these allegations but, in any event, they fail on their

3  face because they are all based on alleged promises to perform in the *future*, which

4  as a matter of law cannot support a claim for *negligent* misrepresentation, which is

5  what Whitley alleges. *See Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 458

6  (2014) ("Although a false promise to perform in the future can support an

7  intentional misrepresentation claim, it does not support a claim for negligent

8  misrepresentation."). For example, in *Prime Healthcare Services, Inc. v. Humana*

9  *Ins. Co.*, 230 F. Supp. 3d 1194 (C.D. Cal. 2017), the court dismissed a negligent

10  misrepresentation claim based on an alleged misrepresentation that "Plaintiffs *would*

11  *be reimbursed* for the services provided" at a certain percentage because the alleged

12  misrepresentation was a promise of *future* performance, which could not serve as

13  the basis of such a claim. *Id.* at *1207 (emphasis in original). Here, Whitley's

14  allegations that Defendants supposedly misrepresented to him that certain

15  percentages "*would be* sent to him" are similarly insufficient to state a negligent

16  misrepresentation claim.

17      In short, Whitley's third and fourth claims fail to state a claim as a matter of

18  law and should be dismissed.[2]

19      **D.    Whitley's Fifth Claim For Breach Of Implied Contract Should Be Dismissed**

20

21      Whitley's fifth cause of action is a vaguely stated claim for breach of an

22  "implied contract" that fails state what the terms of the supposed contract actually

23  were or what the course of conduct was from which that agreement may be implied.

24

25  _____

26  [2] Whitley also fails to plead both claims with the requisite particularity because he fails to state the date and place any of the alleged negligent misrepresentations were made. Indeed, in *Prime Healthcare*, the court held that negligent misrepresentation claims are subject to Rule 9(b)'s

27  heightened pleading requirements and found the plaintiff's claim to be defective for the additional reason that it did not allege "with particularity when and where Defendants allegedly made the

28  representations"—something Whitley's claim also fails to allege. 230 F. Supp. at 1028.

1   It should be dismissed.

2         In the claim, Whitley alleges that by virtue of some unspecified "public social

3   media posts," "third parties" would have understood the "parties were engaged in

4   business together" for "the promotion of first the Art Discord and its artists and

5   projects and later related to the Pixel Tots and Caked Apes NFT projects." (Compl.

6   ¶ 75.) Therefore, according to Whitley, they had an implied contract. (*Id.*) However,

7   these generic allegations fail to state a claim because they do not sufficiently allege

8   what the supposed terms of this "business" arrangement were or how the parties'

9   conduct gave rise to them. As this Court held when addressing similarly vague

10  allegations in another case, "[t]his is not sufficient to state a claim for breach of

11  implied contract." *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1049 (C.D.

12  Cal. 2019) (Wright II, J.) (dismissing breach of implied contract claim because the

13  plaintiff "fail[ed] to allege the parties' conduct that form the basis of the implied

14  contract").

15        California law—which Whitley seeks to apply—requires a contract to be

16  pleaded either verbatim or "according to its legal intendment and effect." *Scolinos v.*

17  *Kolts*, 37 Cal. App. 4th 635, 640 (1995). "In order to plead a contract by its legal

18  effect, [a] plaintiff must 'allege the substance of its relevant terms.'" *Heritage Pac.*

19  *Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 993 (2013) (quotation marks omitted).

20  Additionally, "[c]ontracts must be definite enough to enable the court to ascertain

21  what is required of the respective parties in the performance thereof." *Richards v.*

22  *Oliver*, 162 Cal. App. 2d 548, 561 (1958).

23        Here, Whitley pleads none of the relevant terms of the implied contract other

24  than to conclusorily allege the parties were "engaged, collectively, in a venture to

25  earn profit and share loss." (Compl. ¶ 75.) Courts have repeatedly held that such

26  allegations are insufficient to state a claim for breach of implied contract or the

27  existence of a joint venture. *See, e.g.*, *Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, ,

28  2021 WL 6104014, at *3 (C.D. Cal. Aug. 13, 2021) (claimant failed to plead "the

1   existence of a joint venture" because the claim consisted "mostly [of] conclusory

2   assertions of fact that restate the elements of a joint venture"); *Prostar Wireless Grp.*

3   *v. Domino's Pizza, Inc.*, 2017 WL 67075, *4-5 (N.D. Cal. Jan. 6, 2017) (dismissing

4   breach of fiduciary duty and implied contract claims where allegations were "too

5   general" to plead "agree[ment] to share in the actual profits and losses of the joint

6   venture itself"); *Beautiful Slides, Inc. v. Allen*, 2017 WL 3782304, at *5 (N.D. Cal.

7   Aug. 31, 2017) (dismissing breach of implied contract claim where plaintiff failed to

8   allege "a course of conduct from which any such agreement may be implied");

9   *Rubio v. U.S. Bank N.A.*, 2014 WL 1318631, at *10 (N.D. Cal. Apr. 1, 2014)

10  (dismissing a breach of implied contract claim because it was not clear how the

11  plaintiff's allegations "constitute[] a contract, what its terms might be, or how

12  Defendants could have breached it"); *Brod v. Siux Honey Ass'n Co-op*, 895 F. Supp.

13  2d 972, 982 n.7 (N.D. Cal. 2012) (breach of implied contract claim "plainly

14  meritless" where complaint "did not describe the 'bargained-for exchange' at the

15  core of the implied contract, nor [did] it illuminate any contractual terms").

16          The claim should be dismissed.

17      **E.      Whitley's Sixth Claim For Breach Of Fiduciary Duty Should Be
                 Dismissed**
18

19          Whitley's sixth claim rehashes the same vague allegations of the "implied

20  contract" claim—namely, that "third parties" would have understood from the

21  parties' social media posts that they were engaged in some undefined "business

22  together." (Compl. ¶ 80.) Ergo, according to Whitley, Defendants were engaged in

23  some implied joint venture or partnership with him and thus owed him a fiduciary

24  duty, which they supposedly breached by allegedly refusing him access to social

25  media profiles, among other things. (*Id.* ¶ 82.)

26          This claim fails because—just like the implied contract claim—Whitley fails

27  to sufficiently plead the existence and terms of the supposed implied joint venture or

28  partnership on which the claim is based. *See Prostar Wireless Grp., LLC*, 2017 WL

67075 at *4-5 (dismissing breach of fiduciary duty claim where plaintiff failed to sufficiently plead the existence of the joint venture on which it was based); *see also In re Hoag Urgent Care-Tustin, Inc.*, 2021 WL 1199440, at *5 (C.D. Cal. Mar. 30, 2021) ("it cannot be the case that a joint venture is established whenever two entities intend to make a mutually beneficial business deal; such a rule would have 'no limiting principle,' creating putative joint ventures for a wide range of standard contractual agreements"). The claim should likewise be dismissed.[3]

### F.   Whitley's Seventh Claim For Dissolution Of Implied Partnership Should Be Dismissed

Whitley's seventh claim for dissolution of an alleged implied partnership shares the same fate because, again, Whitley has not sufficiently alleged the existence or terms of the implied partnership or joint venture he seeks to dissolve. *See Leitner v. Sadhana Temple of New York, Inc.*, 2014 WL 12588643, at *14 (C.D. Cal. Oct. 17, 2014) ("Because [plaintiff] has not alleged the existence of a joint venture, there is no entity or association to dissolve. The claim must therefore be dismissed.").

### G.   Whitley's Eighth Claim For Unjust Enrichment Should Be Dismissed

Whitley's eighth claim for unjust enrichment should be dismissed because "unjust enrichment is not a valid cause of action" in California, *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 785 (2003), which is where Whitley alleges "a substantial portion of the events" giving rise to his claim occurred. (Compl. ¶ 12.) Indeed, this Court has repeatedly dismissed "claims" for unjust

---

[3] Defendants do not deny that they were in a joint venture with Whitley to promote and sell "Caked Apes," as the *Nygard* Action alleges claims based upon that joint venture and sets forth the specific, written terms of the parties' agreement, with "screen shots" of the parties' messages stating those terms. However, this admission does not aid Whitley's claim because, while vaguely stated, Whitley appears to have a completely different position as to the terms and scope of the parties' joint venture and he is required to plead those terms with enough detail to give Defendants fair notice of his claim, which he fails to do.

1   enrichment for this very reason. *See Castel S.A. v. Wilson*, 2020 WL 4003024, *14

2   (C.D. Cal. July 15, 2020) (Wright II, J.) (dismissing claim for unjust enrichment "on

3   the grounds that California law does not recognize such a claim for relief"); *Cabo*

4   *Brands, Inc. v. MAS Beverages, Inc.*, 2012 WL 5520775, *4 (C.D. Cal. Nov. 14,

5   2012) (Wright II, J.) (same). Accordingly, Whitley's unjust enrichment claim should

6   be dismissed.

7       **H.      Whitley's Ninth Claim For Conversion Should Be Dismissed**

8       Whitley's ninth claim contends Defendants converted (1) revenue from "the

9   Pixel Tots and Caked Apes NFT launches" that had been allegedly "agreed by

10   Plaintiffs and Defendants" to go to Plaintiffs, and (2) the "Art Discord," i.e., an

11   Internet server that hosted an online community to discuss digital art projects.

12   (Compl. ¶¶ 97-98.) The claim fails on both fronts.

13       To state a claim for conversion, a plaintiff must allege "(1) the plaintiff's

14   ownership or right to possession of personal property; (2) the defendant's

15   disposition of the property in a manner that is inconsistent with the plaintiff's

16   property rights; and (3) resulting damages." *Fremont Indem. Co. v. Fremont Gen.*

17   *Corp.*, 148 Cal. App. 4th 97, 119 (2007). When the first element is based on an

18   alleged "right to possession" instead of actual ownership, the plaintiff must allege a

19   right "to immediate possession at the time of conversion." *United Energy Trading,*

20   *LLC v. Pac. Gas & Elec. Co.*, 177 F. Supp. 3d 1183, 1194 (N.D. Cal. 2016). When

21   the alleged property at issue is a sum of money, "a mere contractual right of

22   payment, without more, will not suffice" to support a claim. *Id.* This is because a

23   contractual right of payment generally "does not entitle the obligee to the immediate

24   possession necessary to establish a cause of action for the tort of conversion." *In re*

25   *Bailey*, 197 F.3d 997, 100 (9th Cir. 1999).

26       Here, first, Whitley fails to state a claim for conversion based on an alleged

27   failure to pay him some supposed "agreed" portion of "Pixel Tots" and "Caked

28   Apes" revenue because "a claim for conversion cannot be premised upon an alleged

1  failure to make a payment as required by a contract," which is all Whitley has

2  alleged. *Waitt v. Internet Brands, Inc.*, 2010 WL 11549746, at *1 (C.D. Cal. July 29,

3  2010). Additionally, the claim fails because Whitley fails to identify a specific sum

4  of money that was allegedly converted—instead, basing the claim only on

5  unquantified "revenue" from the projects. This is insufficient because "[m]oney

6  cannot be the subject of a cause of action for conversion unless there is a specific,

7  identifiable sum involved[.]" *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser,*

8  *Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 395 (2007); *see also United Energy*,

9  177 F. Supp. 3d at 1194 (dismissing conversion claim as inadequate where plaintiff

10  alleged "approximately $2.3 million" had been converted, which was "not a

11  sufficiently 'definite sum'").

12      Second, Whitley fails to state a claim for conversion based on the "Art

13  Discord" because he affirmatively alleges he transferred ownership of the Art

14  Discord to Defendant Wiriadjaja in August 2021. (Compl. ¶ 23.) It is axiomatic that

15  Defendants cannot convert something they rightfully own and possess.[4]

16  Additionally, as owner of the Discord, Wiriadjaja had the right to remove Whitley's

17  access because "the owner of an Internet website has the right to establish the extent

18  to (and the conditions under) which members of the public will be allowed access to

19  information, services and/or applications which are available on the website."

20  *United States v. Drew*, 259 F.R.D. 449, 461 (C.D. Cal. 2009).

21

22  _____

23  [4] While Whitley makes the conclusory assertion that "'owner' in the context of Discord the web-platform does not reflect legal ownership" (Compl. ¶ 24), he alleges no facts to support this self-serving "say-so." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (a complaint must allege

24  "enough facts to state a claim to relief that is plausible on its face"). For example, Whitley cites nothing from Discord Inc. (the company behind Discord) to support his convenient claim that in

25  the world of Discord "ownership" does not mean actual ownership. He also fails to allege any specific conversations with Defendant Wiriadjaja whereby Whitley conveyed his subjective,

26  unconventional understanding of the term "ownership" to Wiriadjaja. As such, Whitley's assertion

27  may appropriately be disregarded. *See Ilagan v. Wells Fargo Bank, N.A.*, 2019 WL 1063396, *1

28  (C.D. Cal. Jan. 29, 2019) ("The Court must disregard allegations that are legal conclusions, even when disguised as facts.").

1    In short, Whitley's conversion claim fails on both fronts and should be

2  dismissed.

3    **I.      Whitley's Tenth Claim For Defamation Should Be Dismissed**

4    Like his other claims, Whitley's defamation claim against Defendants

5  Maguire and Nygard is sloppily pled and legally deficient, falling far short of the

6  strong showing required to hold a person civilly liable for engaging in free speech, a

7  Constitutionally protected activity.

8         1.    <u>The Claim Fails To Give Defendants Fair Notice Of The</u>
              <u>Statements Charged Against Them</u>
9

10    As an initial matter, Whitley's defamation claim improperly lumps

11  Defendants Maguire and Nygard together and fails to give either of them fair notice

12  of the specific statements charged against them. (*See* Compl. ¶ 105.) For example,

13  Paragraph 105 alleges: "In making a series of posts on social media, including, *but*

14  *not limited to* on Twitter and the Art Discord that 'someone I was asked to help

15  build community for abused me and tried to kill me[,]' and 'The caked apes

16  collection was DMCA'[d] by Taylor Whitley aka Taylor wtf because he chose to

17  abuse Cake and an entire community of holders of Caked Apes' and 'he hates all of

18  you' Maguire *and* Nygard expressed purportedly factual statements about Whitley

19  that implied that there was a factual basis to evaluate Whitley's mental health,

20  friendships, and work." (*Id.* (emphases added).)

21    This allegation problematically leaves Defendants Maguire and Nygard with

22  more questions about the claim than answers, including: (1) Are they defending

23  against just these three statements (it seems not given Whitley's use of the "but not

24  limited to" language)? (2) If not, what other unspecified statements are charged

25  against them? (3) Are these three statements charged against *both* Maguire and

26  Nygard? and (4) If not, which statement is charged against which Defendant?

27    The mere fact the claim raises these questions is reason to dismiss it. *See*

28  *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1020 (N.D. Cal. 2006)

1   (finding defamation allegations "insufficient" where "they are ascribed to

2   defendants collectively rather than to individual defendants"); *Townsend v. Chase*

3   *Bank USA N.A.*, 2009 WL 426393, *3 (C.D. Cal. Feb. 15, 2009) ("The general rule

4   is that the words constituting the alleged libel must be specifically identified, if not

5   pleaded verbatim, in the complaint." (quoting *Gilbert v. Sykes*, 147 Cal. App. 4th 13,

6   34 (2007))); *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1017 n.3 (2005) (a court

7   "would be justified in disregarding any evidence or argument concerning statements

8   not explicitly set forth in the complaint").[5]

9            2.     The Three Statements Whitley Identifies Are Not Actionable

10          Next, not one of the three statements Whitley actually identifies in his claim

11  (*see* Compl. ¶ 105) is actionable because they constitute protected statements of

12  opinion and are too vague and uncertain to be capable of being proven true or false.

13  Moreover, *two of them do not even refer to Whitley*.

14          **First**, to state a defamation claim, a plaintiff must "establish that the

15  statement on which the defamation claim is based is 'of and concerning' the

16  plaintiff." *D.A.R.E. Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1289 (C.D.

17  Cal. 2000). "To satisfy this requirement, 'the plaintiff must effectively plead that the

18  statement at issue either expressly mentions him or refers to him by reasonable

19  implication.'" *Id.* at 1289–90 (quotation marks omitted). At its core, "[t]he 'of and

20  concerning' or specific reference requirement limits the right of action for injurious

21  falsehood, . . . denying it to those who merely complain of nonspecific statements

22  that they believe cause them some hurt." *Blatty v. New York Times Co.*, 42 Cal. 3d

23  1033, 1044 (1986). "In California, whether statements can reasonably be interpreted

24

25  ---

26  [5] The claim's incorporation by reference of the 103 paragraphs set forth early in the Complaint does no better to give Defendants sufficient notice of the claim. *See Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1234 n.15 (E.D. Cal. 2018) ("[I]ncorporating literally all

27  143 preceding paragraphs, without specific reference" to a particular fact "does not give Defendants (or the Court) fair notice of the factual bases of the [ ] claim"). The claim must

28  identify the actual statements charged against Defendants.

1  as referring to plaintiffs is a question of law for the court." *SDV/ACCI, Inc. v. AT&T*
2  *Corp.*, 522 F.3d 955, 959 (9th Cir. 2008).

3       Here, two of the three statements fail this requirement—specifically, the
4  statements that "*someone* . . . abused me and tried to kill me" and "*he* hates all of
5  you." Indeed, neither statement expressly mentions Whitley. Additionally, Whitley
6  pleads no facts or context to show either statement "refers to him by reasonable
7  implication." Rather, both statements plainly fall in the category of "nonspecific
8  statements" that are not actionable under the defamation laws and should thus be
9  dismissed from the claim. *See Fitbit, Inc. v. Laguna 2, LLC*, 2018 WL 306724, at *8
10 (N.D. Cal. Jan. 5, 2018) ("It is hard to see how a party unidentified and unknown to
11 the audience of the alleged defamation can claim it was defamed and injured.").

12      **Second**, even assuming each of the statements did refer to Whitley (again,
13 two did not), they are still not actionable. Fundamentally, only false statements of
14 *fact* can be defamatory. *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009). This
15 is because pure opinions—"those that do not imply facts capable of being proved
16 true or false"—are protected by the First Amendment. *Partington v. Bugliosi*, 56
17 F.3d 1147, 1153, n. 10 (9th Cir. 1995). Thus, the "threshold question" in any
18 "defamation claim is whether a reasonable factfinder could conclude that the
19 contested statement implies an assertion of objective fact." *Gardner*, 563 F.3d at
20 987 (citations omitted).

21      Additionally, to support a claim for defamation, the statement must be
22 sufficiently specific and concrete such that it is capable of being proven true or
23 false. Accordingly, "overly vague statements" and "generalized comments lacking
24 any specificity as to the time or place of alleged conduct" will not support a claim.
25 *ZL Tech., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017) (cleaned up); *see also*
26 *John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, (2016) ("Without some
27 reference to the type of undisclosed conduct . . . comments [can be] too vague and
28 uncertain to be actionable as conveying a defamatory accusation.").

1    For example, in *McGarry v. University of San Diego*, 154 Cal. App. 4th 97

2   (2007), an "amorphous assertion" that the plaintiff engaged in "immoral behavior"

3   was not actionable when the statement "contained no hint of what conduct [the

4   speaker] believed [the plaintiff] had engaged in that would be immoral" and was

5   thus "incapable of being interpreted as implying a *provably false* assertion of *fact*."

6   *Id.* at 116-117. Among other things, the court reasoned that because "[b]ehavior that

7   might qualify as immoral to one person" could be "perfectly acceptable to another

8   person," the assertion was "within the range of statements of opinion that are not

9   actionable."

10    Ultimately, it is the *plaintiff's* burden to show the statement is actionable. To

11   survive a motion to dismiss, "a plaintiff must establish both that the words about

12   which they complain are reasonably capable of sustaining a defamatory meaning,

13   and that they are not mere comment within the ambit of the First Amendment." *Troy*

14   *Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) (internal

15   quotation marks omitted omitted). "Whether an allegedly defamatory statement is

16   one of opinion or fact is a question of law" for the court that may be addressed in a

17   Rule 12(b)(6) challenge. *Gardner*, 563 F.3d at 986; *see also ZT Tech.*, 13 Cal. App.

18   5th at 624 ("It is a question of law for the court whether a challenged statement is

19   reasonably susceptible of a defamatory interpretation." (cleaned up)).

20    Here, the three statements Whitley targets are all the type of statements that

21   courts have consistently held to be nonactionable opinions or statements that are too

22   vague to be proven true or false. For example, the alleged statement that Whitley

23   "chose to abuse Cake and an entire community of holders of Caked Apes" when he

24   "DMCA'd" (*i.e.*, took down) the Caked Apes collection expresses an opinion that

25   Whitley's decision to "DMCA" the collection—which Whitley does not deny

26   doing—is a form of "abuse." Because the speaker fully discloses the basis for her

27   opinion that Whitley's conduct is "abuse," the statement is not actionable as a matter

28   of law. *See Price v. Stossel*, 620 F.3d 992, 1004 (9th Cir. 2010) ("a speaker who

1  outlines the factual basis for h[er] conclusion is protected by the First

2  Amendment"); *Partington*, 56 F.3d at 1156 (if "the author presents the factual basis

3  for h[er] statement, [it] can only be read as h[er] personal conclusion about the

4  information presented, *not as a statement of fact*" (citation omitted)).

5       Moreover, the concept of "abuse"—like the concept of "immoral behavior" in

6  *McGarry*—means different things to different people and comes in many forms,

7  including verbal abuse, emotional abuse, mental abuse, and physical abuse.

8  Therefore, generalized accusations of "abuse"—including the other statement

9  Whitley challenges that "someone I was asked to help build community for abused

10  me"—are too vague to be capable of being proven true or false and thus may not

11  form the basis of a defamation claim. *See Art of Living Foundation v. Does 1-10*,

12  2011 WL 2441898, at *7 (N.D. Cal. June 15, 2011) (holding that online statements

13  that accused defendant of "abuse" and other  misconduct were "too loose and

14  hyperbolic" to state a defamation claim under California law (quoting *Milkovich v.*

15  *Lorain Journal Co.*, 497 U.S. 1, 20 (1990)); *Sakala v. Milunga*, 2017 WL 2986364,

16  *2 (D. Md. July 13, 2017) (dismissing defamation claims based on statements that

17  person was "mistreated" and "abused" because such statements "are not matters of

18  fact, but of opinion, which is not the province of defamation law"). Statements like

19  the one Whitley challenges that "he hates all of you" are similarly nonactionable.

20  *See Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 894 (9th Cir. 1988) (dismissing

21  defamation claim based on statements that the plaintiff "hates men" and "hates

22  herself" because they were nonactionable statements of opinion); *see also Ward v.*

23  *Zelikovsky*, 643 A.2d 972, 980 (N.J. 1994) (accusation that plaintiffs "hated Jews"

24  nonactionable).

25       Finally, the statement that "*someone . . . tried to kill me*" is also too vague and

26  nonspecific to be actionable, including because Whitley fails to allege any

27  surrounding context, leaving unclear whether the speaker meant "kill me" in the

28  literal sense or a figurative one. Indeed, as alleged, the statement is susceptible to

1   numerous meanings: on one end, it can be interpreted to suggest the unidentified

2   "someone" actually tried "to kill" (*i.e.*, murder) the speaker. On the other end, it can

3   be interpreted figuratively to suggest the unidentified person tried "to kill" the

4   speaker's name, reputation, spirit, or career, which would plainly be a subject of

5   opinion. For this reason, the statement is "overly vague," too "generalized," and

6   lacks sufficient "specificity as to the time or place of alleged conduct" to support a

7   defamation claim. *ZL Tech.*, 13 Cal. App. 5th at 624; *see also Nocsia v. De Rooy*, 72

8   F. Supp. 2d 1093, 1102 (N.D. Cal. 1999) (dismissing statement that plaintiff "killed

9   Jan Kerouac" as nonactionable where context showed defendant "was not literally

10  accusing [plaintiff] of murder"); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S.

11  6, 13–14 (1970) (description of the plaintiff's negotiating position as "blackmail"

12  could not reasonably be interpreted as having accused him of committing the crime

13  of blackmail).

14       Furthermore, "loose, figurative, or hyperbolic language" like that in the

15  statement alleged has consistently been found "to negate the impression that

16  contested statement is an [actionable] assertion of fact." *Herring Networks, Inc. v.*

17  *Maddow*, 8 F.4th 1148, 1160 (9th Cir. 2021) (cleaned up). Adding to this is the fact

18  that the statement was allegedly made on an unmoderated Internet forum (Twitter),

19  which "courts . . . have recognized . . . are places where readers expect to see

20  strongly worded opinions rather than objective facts." *Summit Bank v. Rogers*, 206

21  Cal. App. 4th 669, 697 (2012); *see also Chaker v. Mateo*, 209 Cal. App. 4th 1138,

22  1142 (2012) ("In determining statements are nonactionable opinions, a number of

23  recent cases have relied heavily on the fact that the statements were made in Internet

24  forums."). When posted on such forums, including Twitter specifically, courts have

25  frequently held that statements of apparent fact assume the character of opinion. *See,*

26  *e.g.*, *Clifford v. Trump*, 339 F. Supp. 3d 915, 926 (C.D. Cal. 2018) (treating as

27  "rhetorical hyperbole" a tweet accusing the plaintiff of lying and calling her a "total

28  con job"); *Chaker*, 209 Cal. App. 4th at 1142 (treating as opinion statements on

1    internet message board that the plaintiff is a "deadbeat dad," "may be taking

2    steroids," "is into illegal activities," and "picks up street walkers and homeless drug

3    addicts").

4    Finally, because Defendants and Whitley are involved in a public legal battle

5    with complaints on both sides, to the extent any of the alleged statements were

6    actually about Whitley, "they are highly unlikely to be understood by their audience

7    as statements of fact." *Info. Control Corp. v. Genesis One Comp. Corp.*, 611 F.2d

8    781, 784 (9th Cir. 1980); *see also Nicosia*, 72 F. Supp. 2d at 1101 (explaining that

9    defendant's statements made on her "personal web-site, and through Internet

10   discussion groups, as part of a heated debate concerning a bitter legal dispute [in

11   which the plaintiff] has fully engaged" are more likely to be opinion than fact).

12   For all the above reasons, Whitley's defamation claim—which seeks to

13   impose civil liability for vague statements of opinion expressed online with no

14   surrounding context alleged—is insufficiently pled and should be dismissed.

15   **J.    Whitley's Eleventh Claim For Unfair Competition Should Be**
     **Dismissed**

16

17   For good measure, Whitley adds a UCL claim to the end of his Complaint,

18   alleging Defendants are liable under both the "unlawful" and "unfair" prongs.

19   Whitley fails to allege a cognizable claim under either prong.

20   First, Whitley's claim under the unlawful prong is subject to dismissal

21   because it is based entirely on his other defective claims. *See Tobon v. Nationstar*

22   *Mortg. LLC*, 2017 WL 8114978, *8 (C.D. Cal. Apr. 4, 2017) ("because all of

23   Plaintiff's other claims fail, her claim under the unlawful prong fails"); *Ingels v.*

24   *Westwood One Broad. Services, Inc.,* 129 Cal. App. 4th 1050, 1060 (2005) ("If the

25   [underlying] claim is dismissed, then there is no unlawful act upon which to base the

26   derivative Unfair Competition claim" (internal quotes omitted)); *see also Krantz v.*

27   *BT Visual Images,* 89 Cal. App. 4th 164, 178 (2001) (the viability of an "unlawful"

28   UCL claim "stands or falls" with the underlying claims).

1    Second, to plead a claim under the "unfair" prong, a plaintiff must allege the

2    conduct in question "threatens an incipient violation of an antitrust law or violates

3    the policy of spirit of such law or otherwise significantly threatens or harms

4    competition." *Cel-Tech Comms., Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal. 4th 163,

5    187 (1999). Moreover, the plaintiff must allege with specificity how the conduct

6    specifically threatens or harms competition. *See Levitt v. Yelp! Inc.*, 756 F.3d 1123,

7    1136-37 (9th Cir. 2014) (affirming dismissal of a UCL unfair prong claim based on

8    conclusory allegations of competitive harm); *see also Snapkeys, Ltd. v. Google LLC*,

9    442 F. Supp. 3d 1196, 1210 (N.D. Cal. 2020) (dismissing claim that was "devoid of

10   any allegation about how [the] conduct harmed competition"); *Thognoppakun v.*

11   *Am. Exp. Bank*, 2012 WL 639531, *2 (C.D. Cal. Feb. 27, 2012) (Wright II, J.) ("A

12   plaintiff alleging unfair business practices under these statutes must state with

13   reasonable particularity the facts supporting the statutory elements of the violation."

14   (quoting *Khoury v. Maly's of Cal. Inc.*, 14 Cal. App. 4th 612, 619 (1993)).

15        Here, Whitley's claim does none of these things. Instead, it simply makes the

16   conclusory allegation that Defendants' conduct has "injure[d] Plaintiff's business

17   and property." (Compl. ¶ 117.) However, "merely focus[ing] on harm to [one]self . .

18   . is sufficient to state a claim under the 'unfair' prong." *Snapkeys*, 442 F. Supp. 3d at

19   1209-1210. For all of these reasons, Whitley's UCL claim should be dismissed.

20   **V.     CONCLUSION**

21        In the end, Whitley's Complaint is full of sound and fury, signifying nothing.

22   Defendants respectfully request that this Court grant their Motion and dismiss

23   Whitley's Complaint in its entirety.

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1  DATED: April 15, 2022          KING, HOLMES, PATERNO & SORIANO, LLP

2

3

4                                 By:  ___*/s/ John G. Snow*___
                                           JOHN G. SNOW
5                                 Attorneys for Defendants CLARE MAGUIRE,
                                  JAKE NYGARD, ANTONIUS WIRIADJAJA, and
6                                 DONGLEE HAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28