JOHN S. PURCELL (SBN 158969)
john.purcell@afslaw.com
JAKE GILBERT (SBN 293419)
jake.gilbert@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013-1065
Telephone:  213.629.7400
Facsimile:   213.629.7401

Attorneys for Plaintiffs
TAYLOR WHITLEY AND
WTF.INDUSTRIES, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR WHITLEY, and WTF.INDUSTRIES, LLC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CLARE MAGUIRE, JAKE NYGARD, ANTONIUS WIRIADJAJA, DONGLEE HAN, and DOES 1-10, Inclusive.<br><br>                    Defendants. | Case No. 2:22-cv-01837-ODW (JEMx)<br><br>**FIRST AMENDED COMPLAINT FOR**<br>**(1) COPYRIGHT INFRINGEMENT;**<br>**(2) VICARIOUS AND/OR CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>**(3) NEGLIGENT MISREPRESENTATION - HAN;**<br>**(4) NEGLIGENT MISREPRESENTATION - OTHERS**<br>**(5) BREACH OF IMPLIED CONTRACT;**<br>**(6) BREACH OF FIDUCIARY DUTY;**<br>**(7) DISSOLUTION OF IMPLIED PARTNERSHIP;**<br>**(8)MONEY HAD AND RECIEVED;**<br>**(9) CONVERSION;**<br>**(10) DEFAMATION;**<br>**(11) DEFAMATION; AND**<br>**(12) UNFAIR COMPETITION.**<br><br>**DEMAND FOR JURY TRIAL** |

1   Plaintiffs Taylor Whitley ("Whitley") and WTF.Industries, LLC
2   ("WTF.Industries") (collectively "Plaintiffs") complain and allege against Clare
3   Maguire ("Maguire"), Cake Nygard ("Nygard"), Antonius Wiriadjaja ("Wiriadjaja"),
4   Donglee Han ("Han"), and DOES 1-10 (collectively "Defendants") as follows:

5                         NATURE OF THE ACTION

6        1.     This action arises from Plaintiff Taylor Whitley's wrongful ouster from
7   the digital art community he founded and nurtured, ultimately resulting in the loss of
8   years of his own work, along with an extensive list of lucrative projects which he was
9   instrumental in creating.

10       2.     Whitley, like other entrepreneurial artists, created and sold art by using
11  his curated community of digital art collectors and collaborators.

12       3.     Whitley has now been forced to bring this action because some of those
13  same collaborators betrayed him and have hijacked his community, renamed it and
14  exploited it for their own pecuniary gain. They have exploited the community
15  Whitley developed in order to sell their own art, all while infringing Whitley's
16  intellectual property, and keeping him and the company he formed from reaping the
17  considerable financial rewards that now flow from his work and community.

18       4.     Defendants also have engaged in a campaign of defamation to devastate
19  Plaintiff's reputation, harm him both professionally and personally, and prevent him
20  from competing within the digital art space. Defendants' actions have robbed
21  Whitley of opportunities he cultivated over years as a digital artist, and Defendants
22  have indicated a willingness to continue to do so unless enjoined.

23       5.     As a result of Defendants' tortious and wrongful conduct, Whitley lost
24  access to years of collected art and music assets, confidential business plans and
25  future projects, his client list, and engagement data, directly impacting his ability to
26  work as a digital artist.

27       6.     Further, Whitley's art community lost tremendous goodwill associated
28  with it, and prices associated with community projects dropped precipitously, all due

to Defendants' careless rebranding and wanton usage. Such conduct can only be remedied with monetary damages to compensate Plaintiff for his economic losses in the joint projects and his removal from his digital arts community, payment to compensate him for revenue from other projects in which benefited from his network, community, and marketing skills, and injunctive relief to stop Defendants from continuing to tarnish Plaintiffs' good name.

## THE PARTIES

7.      Plaintiff Taylor Whitley is an individual resident of Arizona.

8.      Plaintiff WTF.Industries LLC is a limited liability company organized under the laws of the state of Delaware and with its place of operations in Arizona.

9.      Defendant Clare Maguire, on information and belief, is an individual residing in England.

10.     Defendant Jake Nygard, on information and belief, is an individual residing in Minnesota.

11.     Defendant Antonius Wiriadjaja, on information and belief, is an individual residing in New York City, New York.

12.     Defendant DongLee Han, on information and belief, is an individual residing in Los Angeles, California.

13.     The true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, who therefore sues said defendants by fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained.

## JURISDICTION AND VENUE

9.      This action arises in prominent part under the Copyright Act of 1976, Title 17 U.S.C. §101 *et seq.*

10.     This Court has federal question jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §§1331 and 1338(a) and (b). This Court has supplemental jurisdiction over the remaining causes of act pursuant to 28 U.S.C.

§1367(a) because the other claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. Further, this Court has jurisdiction under 28 U.S.C. §§1332(a)(1) because there is complete diversity of citizenship between Plaintiffs and the various Defendants and the amount in controversy is over $75,000.

11.    Plaintiff is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendants because Plaintiffs and Defendants have caused digital art products described herein to be advertised, promoted, and sold in the State of California and this judicial district.  They have also filed suit in this district against Whitley relating to many of the same facts, agreements and transactions that give rise to the claims stated herein.

12.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because Defendants' tortious conduct has occurred in this judicial district and a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## FACTUAL BACKGROUND

## PLAINTIFF CREATES A THRIVING ONLINE ARTS COMMUNITY

13.    Plaintiff Whitley is a creative artist working in visual, performance, and digital media. He has been a Voisey App featured producer and has spoken at art conferences such as NFT NYC Conference due to his digital art world renown [1]. His work has been displayed all over the world including at the Official MF Doom CryptoVoxel Gallery, the Sino NFT project and Start Art Gallery in Hong Kong, and at The Global NFT Art Exhibition in Dubai. He has developed thriving social media accounts including on Instagram (Tayl0rWTF – 6,000 followers, Caked Apes –

---

[1] Non-Fungible Tokens ("NFTs") are digital assets that correspond to a unique digital or real world item and serve as a proof of ownership or bill of sale for that item by describing the item in metadata. Transactions involving NFTs are recorded to the same distributed digital ledger as common cryptocurrencies.

14,800 followers), Twitter (Tayl0rWTF – 38,000 followers, Caked Apes – 31,700 followers), and has led Discord groups with thousands of members each.

14. Discord is an internet platform which provides persistent voice and chat services, as well as digital distribution via the transferal of media and other computer files. It has approximately 350 million total registered users, 150 million monthly active users, and commonly serves as the central organization, marketing, and communications hub for its users.

15. Beginning in spring 2021, Whitley began promoting a new online community for digital artists using his contacts on social media platforms and in the Non-Fungible Token ("NFT") community. During this time Whitley developed and marketed his new online community by hosting and contributing to online social 'rooms' on Clubhouse (a social media app where artists, collectors and other individuals met and spoke about NFTs and the crypto art economy) among other online marketing activity.

16. In June of 2021, Whitley set up a Discord server entitled discord.art (the "Art Discord") and purchased a corresponding web domain (https://discord.art/). A Discord "server" is an online community commonly focused on a single topic or interest. Discord servers can contain multiple "channels" which act as subsets for the overall topic that the server was organized for, each with their own discussion.

17. NFT projects commonly use Discord to organize their community of buyers and to plan and centralize their messaging and release strategy. Discord serves as the message board for formal announcements, promotions and giveaways, votes on community issues, and conduit for other business. Moreover, Discord is where artists and platform can communicate directly with their collectors.

18. Using his notoriety as a digital artist and by exerting significant hours on Clubhouse and the Art Discord promoting it, Whitley was able to attract users to the Art Discord, including users within weeks of launching. Whitley also began using the Art Discord to promote his own work and digital goods for sale. Among

Whitley's digital goods were his Floppy Disk editions, a collection of digital art and music assets which others could use in their own projects.

19.    Through his effort, Whitley became a prominent digital artist and stood at the center of the Art Discord - one of the most important platforms for NFT artists and their collectors - all before any individual Defendant became involved.

**PLAINTIFF HIRES DEFENDANTS AND OTHER STAFF AND PLANS FUTURE PROJECTS**

20.    After launching the Art Discord, Whitley was contacted by Defendant Wiriadjaja (using his handle "Foodmasku"). Wiriadjaja asked if Whitley would allow him to open up a channel on the Art Discord in order to market Wiriadjaja's NFTs, as Wiriadjaja lacked a comparably-sized platform or collector population. Whitley agreed and created the channel.

21.    Later in June 2021, as the Art Discord's needs grew, Whitley hired  a community manager for the Art Discord, website developers to build a website to accompany the Art Discord, and coders to created automated moderation tools for the Art Discord. Whitley, for the first time, had a small paid staff to manage social media accounts related to the Art Discord and market and promote artists that are on the Art Discord.

22.    Throughout the next few months, Whitley exhaustively marketed the Art Discord, the community, and the artists who were now contained within each. Wiriadjaja assisted Whitley's promotion of the Art Discord, and the two developed a strong working relationship.

23.    On August 23, 2021, Whitley, feeling the deleterious effects of his work marketing and promoting the Art Discord and the artists who labored in it, decided to take a temporary step back from active moderation and recuperate. In order to ease his day-to-day burden, he transferred "ownership" of the Art Discord to Wiriadjaja. Whitley did not suggest that he was stepping back permanently, or that he would not have the same leadership role that he had taken on previously (including his

renumeration of all employees hired to operate the Art Discord).

24.    It is important to note that "owner" in the context of the web-platform Discord does not reflect legal ownership, or even an intent to alienate one's rights to the platform. Instead, the "owner" has the highest level of access and control of anyone presently existing on that server. "Owners" can dole out permissions to other users, including promoting users all the way up to Administrator, which allows unfettered access and control to the server, second only to the "owner" herself. Administrators can moderate the chat and spoken word tools, and membership lists, and even change server settings should anything need changing or fixing.

25.    Whitley never intended to leave the Art Discord, and remained instrumental in hiring and promotion decisions after transferring "ownership." Further, nothing in Whitley's transfer alienated his continued interest in the Art Discord, its contents, its value as a marketing platform, or the community that he had developed in it.

26.    In accordance with Whitley's request, Wiriadjaja began maintaining continuity with the community.

27.    Importantly, Whitley did *not* remove from himself any administrative privileges or control of the Art Discord, he merely transferred the "ownership" to Wiriadjaja temporarily on the web-platform for the Art Discord and then he gave Wiriadjaja "Administrator" access to the website. No changes were made as to ownership or control of the website or any social media accounts or other Art Discord-related .

28.    In fact, immediately after the "transfer" Whitley directly supervised and led the hiring of 24 people - Wiriadjaja recommended only a single hire. Whitley remained primarily in charge of compensating the staff - including well-compensated community managers.   Whitley, Wiriadjaja, and Whitley's employees began discussing the possibility of using Art Discord and the community Whitley had

grown as a means of increasing the potential scope of the project and introducing it to new collectors and users in the general public.

29.     Due primarily to Whitley's efforts and management, by mid-October 2021, the Art Discord was booming – thousands of members were contributing to the community and a full staff were in place to manage it. Whitley announced promotional efforts for a number of artists and projects hosted by the Art Discord, the sales of which would benefit Whitley and Wiriadjaja and the Art Discord. Wiriadjaja and Whitley agreed that they were "co-creators" of the Art Discord and that each had played critical roles in its growth and development.

30.     The Art Discord continued to grow – Defendant Maguire was hired as a community manager on or about October 19, 2021.

31.     Throughout November, the Art Discord hosted multiple art releases, launched new artist channels, and saw continuing growth in membership, artists and NFT sales, and excitement. Wiriadjaja, Maguire, and Whitley were working closely along with the other staff members to promote the various NFT releases and continue developing the Art Discord, the community, and the value of each. Defendant Han joined at the end of November 2021.

32.     Late in 2021, Whitley formed Plaintiff WTF.Industries to function as a digital art agency, which would be responsible for developing, marketing, promoting, and profiting from the sales of digital assets, like NFTs and other collections. WTF.Industries would take revenue cuts of the projects it supported, whether that was with the team that Whitley was already working with or third parties who sought to have institutional support for their releases. Whitley is the sole member of WTF.Industries.

**PLAINTIFFS AND DEFENDANTS LAUNCH THEIR OWN NFT COLLECTION AND PLAINTIFF IS OUSTED FROM HIS ARTS COMMUNITY**

33.   In line with Whitley's ambitions, on December 16, 2021, the Art Discord  was rebranded to "WTF Industries".

34.   On the same day, Han's NFT project Pixel Tots launched. Before this launch, Han and Whitley had agreed that Whitley and WTF.Industries would market Pixel Tots for two months in exchange for 25% of revenue from the initial launch, followed by 60% of all revenue earned through secondary sales[2] and 60 NFTs from the collection. Despite this agreement, neither Whitley nor WTF.Industries received any money from the Pixel Tots sale. To date, hundreds of Pixel Tots NFTs have been transacted generating tens of thousands of dollars of revenue for the project.[3]

35.   At the same time, Whitley and Defendant Nygard readied their own NFT collection for launch which they called Caked Apes. Caked Apes were originally conceived of by Whitley, who also advised on the elements to include in the various NFTs, backgrounds to use, and contributed a background story for the collection.   Whitley and Nygard ultimately collaborated on the final collection. Whitley invested nearly $200,000 of his own money to launch the product and provided intellectual property.[4]

36.   Additionally, Whitley, alone, created a series of logo designs which he uses to identify himself and his work to third parties. ("the Subject Design"). Representative samples can be seen below:

---

[2] NFTs are often bought and transferred using the Ethereum cryptocurrency system. That system allows for the initial seller to automatically receive a percentage royalty on subsequent sales of the same NFT. Therefore, creators are incentivized to continue marketing to their buyers and collectors, as maintaining high resale prices results in creators getting larger royalty payments.

[3] Pixel Tot sales take place on the OpenSea NFT sales platform, and sales records are publicly recorded and available online: https://opensea.io/collection/pixeltots?tab=activity.

[4] Certain NFT can include a license allowing the purchaser to reuse the image in their own projects. Several NFTs owned by Whitley formed the basis for various elements used in the ultimate Caked Apes NFT collection.

 

37.     On or about January 7, 2022, Whitley and Defendants Maguire, Nygard, and Wiriadjaja agreed that Whitley was to receive 10% of all revenue generated from Caked Apes primary and secondary sale royalties, and WTF.Industries was to receive 30% of all Caked Apes primary sales and 45% of all Caked Apes secondary sale royalties.

38.     Whitley     and     Defendants     launched     a     website (https://www.cakedapes.wtf/),     and     social     media     accounts (https://twitter.com/CakedApes,     https://www.instagram.com/CakedApes/)     to promote the Caked Apes NFT project. The Caked Apes project was put on OpenSea to sell (https://opensea.io/collection/cakedapesofficial) and opened for presale on January 10, 2022. Each of which identified both Whitley and Nygard as creators.

39.     Unbeknownst to Whitley when he agreed to the above revenue split, Defendants Maguire, Nygard, and Wiriadjaja created a "multi-signature wallet" to receive funds derived from the Caked Apes NFT launch and send Whitley the 10% he was due.[5] However, Defendants Maguire, Nygard, and Wiriadjaja have never distributed revenue from the Caked Apes NFT project to a wallet owned by

---

[5] A multi-signature wallet is software used to send and receive cryptocurrencies whereby at least two authorized individuals must  approve each transaction.

WTF.Industries for its share of the revenue according to the agreement the parties came to.

40.     Since launch, the Caked Apes NFTs have sold out of their original run, generating an estimated $1.9 million in primary sale revenue and $225,000 in royalties from secondary sales.

41.     To date, WTF.Industries has received none of the revenue generated by Caked Apes. On information and belief, all revenue that was not sent to WTF.Industries either remains in the multi-signature wallet or has been distributed to and used by Defendants. Neither Whitley nor WTF.Industries has authorized any expenses be paid with Caked Apes NFT project revenue.

42.     Whitley later learned that WTF.Industries had not received any Caked Apes NFT revenue and further that Defendant Maguire had contacted WTF.Industries accountants to add directors to WTF.Industries. Immediately, Whitley directed his representatives to convene a meeting with Defendants to resolve any disputes related to the WTF.Industries brand, and their various projects, revenue splits.

43.     Defendants never responded and this meeting never took place.

44.     On January 28, 2022, on information and belief, Defendants revoked Whitley's access to all social media accounts related to the Caked Apes NFT project. On January 30, 2022, on information and belief, Defendants terminated Whitley's access to the Art Discord.

45.     Art Discord functioned as Whitley's source of income and as marketing for both his projects and as a means to support other artists. The Art Discord contains significant amounts of Plaintiff's art and music assets, data and contact information about the community and collectors, a client list, and his future art project plans - crucial data for his ability to work as an artist. The Art Discord also contains communications between Whitley and Defendants, financial records, and other information at issue here.

**DEFENDANTS PURSUE A CAMPAIGN OF SLANDER AGAINST PLAINTIFF AFTER REMOVING HIM FROM THE ART DISCORD**

46.     Since Plaintiff was removed from the Art Discord, social media accounts associated with Nygard and Maguire as well as anonymous social media accounts have harassed and made false and slanderous statements about Whitley to the public, and to specific prominent individuals and entities in the digital art world. These messages make plainly false claims about Whitley. Representative examples can be seen below:

1



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28







47.    Maguire previously admitted to Plaintiff that she used anonymous social

media accounts in other ways, such as to build hype for the Art Discord or its projects, or for nefarious tasks like harassing social media profiles she does not like. On information and belief, numerous of the above slanderous messages were made directly by Maguire on anonymous accounts she controls, or at her behest, and were made to impact Plaintiff's reputation in the art world and among potential collectors. Reputation is particularly important in the NFT space, as the value of NFT projects Plaintiff promotes, associates with, or sells directly are directly related to Plaintiff's reputation among collectors and among the broader populace who rely upon that reputation (and the scarcity of the desired objects) to lead to high valuations and lucrative resales.

48.    Despite the above malfeasance, in order to attempt to maintain the sinking value of Plaintiff's assorted investments, the value of the Art Discord overall, and the prices of art promoted by the Art Discord, Plaintiff has continued to pay required maintenance fees for the Art Discord in the hope that he would one day be able to retain its goodwill and the assets stored therein.

49.    Whitley registered the Subject Design with the United States Copyright Office covering the Subject Design, and received Registration No. VA0002291227.

50.    Many of the Caked Ape NFTs incorporate the Subject Design, including, but not limited to, Caked Ape #787, Caked Ape #5099, and Caked Ape #1798 seen below, each of which use the Subject Design in the background of the image. Whitley's authorization for the use of the Subject Design in the Caked Apes NFT project was contingent on the revenue split to being paid to him and WTF.Industries, as well his continued involvement with and management of the Caked Apes NFT project.

| Subject Design | Infringing Use |
|---|---|
|  |  |
|  |  |
|  |  |

51.     Whitley is informed and believes, and thereon alleges that Defendants have sold Caked Ape NFTs incorporating the Subject Design since Caked Aped NFTs launched on January 10, 2022, and continued to sell them after Whitley was removed the Art Discord, after Whitley's access to the Caked Apes social media

accounts was revoked, and after Defendants failed to pay Plaintiffs their entire portion of the proceeds from the Caked Apes revenues.

52.    Now, Plaintiff seeks judicial intervention into the operation of his lucrative art community in order to recover Plaintiff's rightful share of proceeds from the Caked Apes NFT project, and for Whitley's loss of access to the Art Discord and to remedy Defendant's wrongful acts which have not only injured the value of the community itself, but the individual projects, and Whitley's very reputation and future involvement in the digital art world.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement against all Defendants, and Each)

53.    Plaintiff incorporates and re-alleges the allegations contained in paragraphs 1-52 of this Complaint as if fully set forth herein.

54.    Whitley alleges that Defendants, and each of them, had access to the Subject Design stemming from Whitley's collaboration and involvement as co-creator of the Caked Apes NFT project.

55.    Whitley's authorization to use the Subject Design was contingent on receiving his agreed upon portion of revenue from the Caked Apes NFT project and WTF.Industries receiving its share, and his ongoing involvement with and management of the Caked Apes NFT project. When WTF.Industries did not receive its agreed-upon share and when Whitley was removed from the Art Discord and his access to the Caked Apes social media accounts was removed, his authorization to use the Subject Design was revoked.

56.    Due to Defendants' acts of infringement, Whitley suffered substantial damages to his professional reputation and opportunities.

57.    Due to Defendants' acts of infringement, Whitley has suffered general and special damages in an amount to be established at trial.

58.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would

not otherwise have realized but for their infringement of the Subject Design. As such, Whitley is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Whitley's rights in the Subject Design in an amount to be established at trial.

## SECOND CLAIM FOR RELIEF

### (Vicarious and/or Contributory Copyright Infringement against all Defendants, and Each)

59.     Whitley incorporates and re-alleges the allegations contained in paragraphs 1-57 of this Complaint as if fully set forth herein.

60.     Whitley is informed and believes and thereon alleges that Defendants knowingly induced, participated in, aided and abetted in, and profited from the illegal reproduction and/or subsequent sales of NFTs featuring the Subject Design alleged herein.

61.     Whitley is informed and believes and thereon alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

62.     By reason of the Defendants', and each of their acts of contributory and vicarious infringement as alleged above, Whitley has suffered and will continue to suffer substantial damages to his professional reputation and opportunities in an amount to be established at trial, as well as additional general and special damages, in an amount to be established at trial.

63.     Due to Defendants', and each of their acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Subject Design. As such, Whitley is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Whitley's rights in the Subject Design, in an amount to be established at trial.

**THIRD CLAIM FOR RELIEF**

**(Intentional Misrepresentation against Defendant Han)**

64.     Whitley incorporates and re-alleges the allegations contained in paragraphs 1-63 of this Complaint as if fully set forth herein.

65.     Whitley alleges that, on December 16, 2021 when Defendant Han represented to Whitley that, in exchange for marketing services, Whitley and WTF.Industries would receive 25% of revenue from the initial launch of her Pixel Tot NFL project, followed by 60% of all revenue earned through secondary sales and 60 Pixel Tot NFTs, Han knew that those representations were false.

66.     Han's assertions as to the revenue split were material to Whitley's decision to host the Pixel Tots project on the Art Discord and provide marketing and promotional services for it.

67.     Han intended for Whitley and WTF.Industries relied on her representation that Whitley and WTF.Industries would receive 25% of revenue from the initial launch of her Pixel Tot NFL project, followed by 60% of all revenue earned through secondary sales and 60 Pixel Tot NFTs.

68.     Whitley did not have knowledge of Han's misrepresentations and omissions as to the foregoing issues, and reasonably and justifiably relied on her false and incomplete statements in providing marketing services and the use of the Art Discord to support the Pixel Tots NFT project.

69.     As a direct and proximate result of Han's misrepresentations and omissions, Whitley agreed to, and performed said marketing and promotional services for the Pixel Tots NFT project, resulting in high sales volumes but preventing Whitley from engaging with other projects at the same time.

70.     Whitley, in addition to the unpaid revenue from the Pixel Tots NFT launch, was damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**(Intentional Misrepresentation against Defendants Maguire, Nygard, and Wiriadjaja)**

71.     Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-70 of this Complaint as if fully set forth herein.

72.     Whitley alleges that, on January 7, 2022, Defendants Maguire, Nygard, and Wiriadjaja represented to Whitley that 10% of revenue from the Caked Apes NFT project (both primary sales and secondary royalties) would be sent to Whitley and 30% of revenue from primary sales of the Caked Apes NFT project would be sent to WTF.Industries and 45% of secondary sale royalties of the Caked Apes NFT project would be sent to WTF.Industries, Defendants Maguire, Nygard, and Wiriadjaja knew those representations were false.

73.     Defendants Maguire, Nygard, and Wiriadjaja's assertions related to the revenue split were material to Whitley's decision to launch the Caked Apes NFT project and use his intellectual property for it.

74.     Defendants Maguire, Nygard, and Wiriadjaja intended for Whitley and WTF.Industries to rely upon their representations that 10% of revenue from the Caked Apes NFT project (both primary sales and secondary royalties) would be sent to Whitley and 30% of revenue from primary sales of the Caked Apes NFT project would be sent to WTF.Industries and 45% of secondary sale royalties of the Caked Apes NFT project would be sent to WTF.Industries.

75.     Whitley did not have knowledge of Defendants Maguire, Nygard, and Wiriadjaja's misrepresentations and omissions as to the foregoing issues and reasonably and justifiably relied on her false and incomplete statements in agreeing to launch the Caked Apes NFT project and use his intellectual property for it.

76.     As a direct and proximate result of Defendants Maguire, Nygard, and Wiriadjaja's misrepresentations and omissions, Whitley agreed to use his intellectual

property in and support the launch of the Caked Apes NFT Project, resulting in enormous sales but preventing Whitley from pursuing other opportunities at the time.

77.     Whitley was damaged in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

### (Breach of Implied Contract against Defendants)

78.     Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-77 of this Complaint as if fully set forth herein.

79.     Whitley, WTF.Industries, and Defendants joined together to earn profit and share loss from projects created by each other and others in the Art Discord and promoted by the Art Discord and its social media accounts. In addition to the explicit Caked Apes NFT project revenue split agreed to above, Whitley, WTF.Industries, and Defendants planned to collectively produce and market other NFT projects in order to collect revenue those future projects generate as well as leverage the Art Discord to develop the community of potential buyers for those NFT projects.

80.     Through their actions in promoting projects such as the Caked Apes NFT project for the benefit of the Art Discord in order to receive a portion of the revenue from those projects and the absence of a formal writing establishing its terms, Whitley alleges that both he and Defendants understood themselves to have formed an implied partnership. Accordingly, pursuant to California Corporations Code § 16101(9), Plaintiffs and Defendants were in an implied partnership.

81.     As such, California Corporations Code § 16103(b) provides a number of duties which govern the relation of Plaintiffs and Defendants' implied partnership, specifically stating that the partnership agreement may not "unreasonably restrict the right of access to books and records…" and "eliminate the duty of loyalty…" among other imposed duties.

82.     Defendants breached the implied partnership agreement by, *inter alia*:

- Removing Whitley from the Art Discord on January 30, 2022 and not returning control or reinstating him - preventing Whitley from

accessing his stored client lists, customer engagement data, future projects, and collected assets;

- Removing Whitley from the Caked Apes social media profiles and refusing access;
- Failing to distribute to Whitley his portion of revenue from the Pixel Tots NFT project;
- Failing to distribute to WTF.Industries its portion of revenue from the Caked Apes NFT project.

83. As a proximate cause of Defendants' breach of the implied partnership agreement, Plaintiff has been damaged in an amount to be proven at trial.

<u>SIXTH CLAIM FOR RELIEF</u>

**(Breach of Fiduciary Duty against Defendants)**

84. Plaintiffs incorporates and re-alleges the allegations contained in paragraphs 1-83of this Complaint as if fully set forth herein.

85. Whitley, WTF.Industries, and Defendants joined together to earn profit and share loss from projects created by each other and others in the Art Discord and promoted by the Art Discord and its social media accounts. In addition to the explicit Caked Apes NFT project revenue split agreed to above, Whitley, WTF.Industries, and Defendants planned to collectively produce and market other NFT projects in order to collect revenue those future projects generate as well as leverage the Art Discord to develop the community of potential buyers for those NFT projects.

86. Through their actions in promoting projects such as the Caked Apes NFT project for the benefit of the Art Discord in order to receive a portion of the revenue from those projects and the absence of a formal writing establishing its terms, Whitley alleges that both he and Defendants understood themselves to have formed an implied partnership. As such, California Corporations Code §§16404(a)-(f) provides a series of duties that are owned between Plaintiffs and Defendants

1   including a duty of care, a duty of loyalty, and an obligation of good faith and fair

2   dealing.

3         87.    Defendants breached these duties by, *inter alia*:

4         • Removing Whitley from the Art Discord on January 30, 2022  and

5           not returning control or reinstating him - preventing Whitley from

6           accessing his stored client lists, customer engagement data, future

7           projects, and collected assets;

8         • Removing Whitley from the Caked Apes social media profiles and

9           refusing access;

10        •  Failing to distribute to Whitley his portion of revenue from the Pixel

11          Tots NFT project;

12        • Failing to distribute to WTF.Industries its portion of revenue from

13          the Caked Apes NFT project.

14        88.    Defendants are intimately familiar with the Art Discord, the community

15  that uses it, the projects that are being developed on it, and how much the community

16  depends on access to Whitley and Whitley's assurances as to the value of the assorted

17  projects. Defendants have each acknowledged how vital Whitley's contribution and

18  involvement is because of the general association the digital art and NFT world have

19  with Whitley.

20        89.    Additionally, Defendants' conduct negatively impacted the Art Discord,

21  which has significant independent value and future projects associated with it. By

22  preventing Whitley from accessing the Art Discord, Defendants prevented their user

23  community from accessing one of the prime assets they bargained for when they

24  joined the Art Discord or bought any NFTs sold independently by Whitley.

25  Defendants' actions have depressed the prices of NFTs sold by artists promoted by

26  the Art Discord and harmed their resale value, which negatively impacts

27  WTF.Industries revenues for existing and future projects and the value of the Art

28  Discord as a tool to profit off of future NFT projects. Accordingly, Defendants'

breaches of their fiduciary duties to Plaintiffs have directly and proximately damaged Plaintiffs in the firm of lost profits, opportunities for future projects, the Art Discord's goodwill, and other related damages.

90.    As a direct and proximate cause of Defendants' conduct, Plaintiffs have been damaged in an amount to be proven at trial.

91.    Defendants' conduct will cause further damages to Plaintiffs until such time as Defendants honor their fiduciary duties. The longer Whitley is kept locked out of the Art Discord and away from the community he founded, the more damage that will be done, both as the prices of community-sold NFTs will be harmed, but similarly, the reputation and goodwill of the Art Discord and community will be harmed because part of the rights and benefits of membership are access to Whitley and his work and without those, the community and Plaintiff's main collectors will hold him personally responsible.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**(Dissolution of Implied Partnership against Defendants)**

92.    Plaintiffs incorporates and re-alleges the allegations contained in paragraphs 1-91 of this Complaint as if fully set forth herein.

93.    Whitley, WTF.Industries, and Defendants joined together to earn profit and share loss from projects created by each other and others in the Art Discord and promoted by the Art Discord and its social media accounts. In addition to the explicit Caked Apes NFT project revenue split agreed to above, Whitley, WTF.Industries, and Defendants planned to collectively produce and market other NFT projects in order to collect revenue those future projects generate as well as leverage the Art Discord to develop the community of potential buyers for those NFT projects.

94.    Through their actions in promoting projects such as the Caked Apes NFT project for the benefit of the Art Discord in order to receive a portion of the revenue from those projects and the absence of a formal writing establishing its terms, Whitley alleges that both he and Defendants understood themselves to have formed

an implied partnership. As such, California Corporations Code §§16405(b) provides a series of bases on which a partner of an implied partnership may maintain an action against a partner, including but not limited to "[t]he partner's right to compel a dissolution and winding up of the partnership business under Section 16801…" and "[t]he partner's right on dissociation to have the partner's interest in the partnership purchased pursuant to Section 16701 or 16701.5…"

95.    Defendants' actions have unreasonably frustrated the economic purpose of the implied partnership described herein, and engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with Defendants. Specifically, by preventing Whitley from accessing the Art Discord and preventing the Art Discord community from accessing Plaintiff, Defendants have inhibited one of the prime assets Art Discord community bargained for when they joined the Art Discord or bought any NFTs sold by Whitley.

96.    Defendants also have depressed the prices of NFTs sold by artists promoted by the Art Discord and harmed their resale value, which negatively impacts Plaintiffs' revenues for existing and future projects. Therefore, it is not otherwise reasonably practicable to carry on the partnership business.

97.    Accordingly, Plaintiffs are entitled to dissolution of the partnership and a winding up of its affairs, pursuant to California Corporations Code §16801 *et seq.* and seek a judicial order for such dissolution to occur.

## EIGHTH CLAIM FOR RELIEF

### (Money Had and Received against Defendants)

98.    Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-97 of this Complaint as if fully set forth herein.

99.    Defendants requested that Whitley market and promote the Pixel Tots and Caked Apes NFT collections using Whitley's notoriety in the NFT art space, skills as a marketer and/or promoter, and also the community in Whitley's Art

Discord. No written contract existed where Defendants and Whitely agreed to compensation for Whitley's contribution.

100.   Whitley did market and promote the Pixel Tots and Caked Apes NFT collections, leading each to massive revenues obtained by Defendants.

101.   Defendants have not compensated Whitley for his work promoting and/or marketing the Pixel Tots and Caked Apes NFT collections, instead just returning the amount he had invested into the projects.

**NINTH CLAIM FOR RELIEF**

**(Conversion against Defendants)**

102.   Plaintiffs incorporate and re-allege the allegations contained in paragraphs 1-101 of this Complaint as if fully set forth herein.

103.   The Art Discord, which Whitley created, developed, managed, and hired all staff for (including bringing in all of Defendants who have wrongfully converted it) and all data contained therein is Plaintiff Whitley's property.

104.   Further, the social media accounts, which were created by Whitley's employees, at Whitley's instruction to promote the Art Discord and projects it supported, are Plaintiff Whitley's property.

105.   Defendants intentionally and substantially interfered with Plaintiffs' property by terminating Plaintiff's access to the Art Discord and the information and data contained therein and by revoking his access to the Art Discord's social media accounts.

106.   Plaintiff did not consent to Defendants taking any of the property specified in this Complaint for their personal or any other use except as specified herein.

107.   Defendants have not returned any of that property to Plaintiffs.

108.   Plaintiffs have been damaged in an amount to be proven at trial as a result of Defendants' actions in converting and misappropriating Plaintiffs' property.

109.   In addition, Plaintiffs' damages are ongoing and increasing due to the loss of value of goodwill associated with the Art Discord and the lowered ability to profit off of the NFT community Whitley developed there.

## TENTH CLAIM FOR RELIEF

### (Defamation against Maguire)

110.   Whitley incorporates and re-alleges the allegations contained in paragraphs 1-109 of this Complaint as if fully set forth herein.

111.   In making a series of posts on social media, including, but not limited to on Twitter and the Art Discord that "someone I was asked to help build community for abused me and tried to kill me[,]" and "The caked apes collection was DMCA'd by Taylor Whitley aka Taylor wtf because he chose to abuse Cake and an entire community of holders of Caked Apes" and " Can you tell me what it is I said about you because i know Taylor despises you but I don't know who you are."

112.   Maguire expressed purportedly factual statements about Whitley and implied that there was a factual basis to evaluate Whitley's mental health, friendships, and work. Further still, on information and belief, Maguire has told various of Whitley's contacts (both other artists and collectors of Whitley's projects) that he threatened to kill her and that an audio recording of such threat exists in her possession.

113.   The relevant public familiar with Whitley, the Art Discord, and Defendants understands Maguire to be referring to Whitley, even without naming him. For example, in various tweets where Maguire refers to "crackheads" she also mentions "Hollywood" which is where Whitley and Maguire spent time together.

114.   On information and belief, Maguire used social media accounts under other people's names or identities or using fake identities, or caused other people to make similar posts and defamatory statements about Whitley on social media and on the Art Discord.

115. On information and belief, Maguire intentionally communicated these specific statements to the public at large and individuals in the NFT community on social media.

116. On information and belief, the individuals to whom Maguire sent these messages to or caused messages to be sent to understood these statements to refer to Whitley, and specifically to mean that Whitley should not be associated with by others in the NFT community.

117. These statements were false. Maguire was a valued member of the Art Discord  team whose opinion had been eagerly sought throughout its development and Whitley was unfailingly polite and kind to Maguire. Maguire's statements, and those Maguire caused others to make, are themselves express false statements of fact, and they falsely imply knowledge that had come from others and was known to people who associate with Whitley.

118. No factual basis for these statements exist however, and more so, without access to the Art Discord, Whitley cannot know the extent to which further statements have been made about him by Maguire or others on her behalf.

119. Maguire made the above-described defamatory statements with actual malice – i.e. with knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity.

120. Maguire made these statements without privilege or justification.

121. The above-described statements concerning Whitley directly injured him by diminishing his reputation in his profession and among his peers in the NFT art world, which has a natural tendency to lower his earnings – much of which are based on his reputation amongst his peers and NFT collectors.

122. The above-described statements convey a defamatory meaning. They harm Whitley's reputation as to lower it.

123. It was Maguire's expectation and intent that the defamatory statements would injure Whitley economically, including by lessening his earnings.

124.   Whitley has not discovered, and may not be able to discover, the extent to which any lessening of his reputation has occurred as a result of Maguire's defamatory statements. Whitley may have lost out on the opportunity to collaborate with other NFT artists, or to market or promote other projects in exchange for shares of revenue generated – similar to how he worked with Defendants.

## ELEVENTH CLAIM FOR RELIEF

### (Defamation against Nygard)

125.   Whitley incorporates and re-alleges the allegations contained in paragraphs 1-124 of this Complaint as if fully set forth herein.

126.   In making a series of posts on social media, including, but not limited to on Twitter and the Art Discord that "he hates all of you" Nygard expressed purportedly factual statements about Whitley and implied that there was a factual basis to evaluate Whitley's mental health, friendships, and work

127.   The relevant public familiar with Whitley, the Art Discord, and Defendants understands Nygard to be referring to Whitley, even without naming him.

128.   On information and belief, Nygard intentionally communicated these specific statements to the public at large and individuals in the NFT community on social media.

129.   On information and belief, the individuals to whom Nygard sent these messages to or caused messages to be sent to understood these statements to refer to Whitley, and specifically to mean that Whitley should not be associated with by others in the NFT community.

130.   These statements were false. Nygard was a valued member of the Art Discord  team whose opinion had been eagerly sought throughout its development and Whitley was unfailingly polite and kind to Nygard. Nygard's statements are themselves express false statements of fact, and they falsely imply knowledge that had come from others and was known to people who associate with Whitley. No factual basis for these statements exist however, and more so, without access to the

ARENT FOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Art Discord, Whitley cannot know the extent to which further statements have been made about him by Nygard or others on her behalf.

131.   Nygard made the above-described defamatory statements with actual malice – i.e. with knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity.

132.   Nygard made these statements without privilege or justification.

133.   The above-described statements concerning Whitley directly injured him by diminishing his reputation in his profession and among his peers in the NFT art world, which has a natural tendency to lower his earnings – much of which are based on his reputation amongst his peers and NFT collectors.

134.   The above-described statements convey a defamatory meaning. They harm Whitley's reputation as to lower it.

135.   It was Nygard's expectation and intent that the defamatory statements would injure Whitley economically, including by lessening his earnings.

136.   Whitley has not discovered, and may not be able to discover, the extent to which any lessening of his reputation has occurred as a result of Nygard's defamatory statements. Whitley may have lost out on the opportunity to collaborate with other NFT artists, or to market or promote other projects in exchange for shares of revenue generated – similar to how he worked with Defendants.

## TWELFTH CLAIM FOR RELIEF

### (Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* against Defendants)

137.   Plaintiff incorporates and re-alleges the allegations contained in paragraphs 1-136 of this Complaint as if fully set forth herein.

138.   Defendants, by wrongfully removing Whitley from the Caked Apes social media accounts and withholding the Art Discord and the revenue generated by the Pixel Tots and Caked Apes NFT launches, have engaged in unlawful and unfair business practices that have injured and will continue to injure Plaintiff's business and property in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

139.  Plaintiff has been, and will continue to be, irreparably harmed by Defendants' conduct unless Defendants are enjoined by this Court.  Plaintiff has no adequate remedy at law, in that the amount of damage to Plaintiff's business and reputation and the diminution of the goodwill associated the Art Discord is difficult to ascertain with specificity.  Plaintiff is therefore entitled to injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

**a)** For judgment in favor of Plaintiffs on each of their claims for relief;

**b)** For injunctive relief; specifically, that Defendants and all of their officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns and  successors in interest, and all other persons acting in concert with them be preliminarily and permanently enjoined from (i) acting on behalf of or in any way representing themselves to be the Art Discord or its predecessors with Plaintiff's consent; (ii) withdrawing any funds (whether in US Dollars or in any cryptocurrency) that were earned as a result of the same of any art project created by members of, or that was supported in any way, by the Art Discord or its predecessors without Plaintiffs' consent; and (iii) making any statements, whether anonymously or identified by any individual Defendant's name or in the name of the Art Discord or its predecessors, that defames Whitley or injures his reputation in any way;

**c)** An order that the implied partnership described herein be dissolved and all partnership affairs be wound up within 30 days of judgment, including all partnership records be turned over to Plaintiff and that affairs be settled and distribution made to the partners in a proportion that will be proven at trial;

**d)** An award in favor of Plaintiff and against Defendants for all damages suffered as a result of Defendants' wrongdoing, in an amount to be proven at trial;

**e)** For compensatory and punitive damages in an amount to be proven at trial;

1    **f)**    For disgorgement of Plaintiffs' portion of all revenue obtained from, or

2    in connection with, the Pixel Tots NFT project and the Caked Apes NFT project on

3    or after January 1, 2022, and lost profits Plaintiff would have attained had his access

4    not been deleted;

5    **g)**    For attorneys' fees;

6    **h)**    For pre-judgment and post-judgment interest;

7    **i)**    For costs of this suit; and

8    **j)**    For such other relief in law or equity as the court deems just and proper.

9    Plaintiffs hereby demand trial by jury on all issues pursuant to Fed. R. of Civ.

10   Proc. 38 and the 7th Amendment to the United States Constitution.

11

12   Dated:  May 6, 2022                    **ARENTFOX SCHIFF LLP**

13

14                                          By: _/s/John S. Purcell_

15                                             John S. Purcell
                                               Jake Gilbert
16                                             Attorneys for Plaintiffs
                                               TAYLOR WHITLEY and
17                                             WTF.INDUSTRIES, LLC

18

19

20

21

22

23

24

25

26

27

28