1  JOHN S. PURCELL (SBN 158969)
   john.purcell@afslaw.com
2  JAKE GILBERT (SBN 293419)
   jake.gilbert@afslaw.com
3  **ARENTFOX SCHIFF LLP**
   555 West Fifth Street, 48th Floor
4  Los Angeles, CA  90013-1065
   Telephone:  213.629.7400
5  Facsimile:   213.629.7401

6  Attorneys for Plaintiffs
   TAYLOR WHITLEY AND
7  WTF.INDUSTRIES, LLC

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12  TAYLOR WHITLEY, and              Case No. 2:22-cv-01837-ODW (JEMx)
    WTF.INDUSTRIES, LLC,
13                                   **PLAINTIFFS TAYLOR WHITLEY**
              Plaintiffs,            **AND WTF.INDUSTRIES, LLC'S**
14                                   **OPPOSITION TO DEFENDANTS'**
       v.                            **MOTION TO DISMISS**
15                                   **PLAINTIFFS' FIRST AMENDED**
    CLARE MAGUIRE, JAKE              **COMPLAINT**
16  NYGARD, ANTONIUS
    WIRIADJAJA, DONGLEE HAN,         Hearing: July 11, 2022 at 1:30 p.m. (PT)
17  and DOES 1-10, Inclusive,
                                     District Judge:   Hon. Otis D. Wright, II
18            Defendants.            Courtroom:        5D

19                                   Complaint filed: March 21, 2022
                                     FAC filed:        May 6, 2022
20

21

22

23

24

25

26

27

28

ArentFox Schiff LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................... 1

    A.    Plaintiffs' Complaint and Factual Allegations .................................... 1

    B.    Defendants' Separate Complaint ......................................................... 5

III.    LEGAL STANDARD ON MOTION TO DISMISS .............................. 5

IV.     ARGUMENT ........................................................................................... 6

    A.    Plaintiffs' Copyright Infringement Claim Is Sufficiently Pled to Survive Defendants' Motion to Dismiss .............................................. 6

    B.    Vicarious Copyright ............................................................................ 9

    C.    Plaintiffs' Causes of Action for Intentional Misrepresentation Are Sufficiently Pled .......................................................................... 9

    D.    Defendants Admit That an Implied Contract Exists Between Parties ................................................................................................ 12

    E.    Plaintiffs' Pled Breach of Implied Contract Sufficiently States the Terms of the Agreement to Withstand Scrutiny at this Phase ..... 12

    F.    Breach of Fiduciary Duty .................................................................. 14

    G.    Dissolution of Implied Partnership ................................................... 15

    H.    Plaintiffs' Cause of Action for Money Had and Received Is Properly Pled ..................................................................................... 15

    I.    Plaintiffs' Cause of Action for Conversion Is Properly Pled ............ 16

    J.    Plaintiffs' Defamation Cause of Action Is Properly Pled ................. 18

        1.    Defendants First Spend A Great Deal of Time on an Issue That Could Have Been Resolved With a Telephone Call ....... 18

        2.    Plaintiff Has More Than Adequately Pleaded the Defamatory Statements at Issue ............................................... 18

            a.    The Allegations against Maguire Are Clear .................. 19

            b.    Plaintiffs Have Also Adequately Pled Nygard's Defamatory Conduct .................................................... 20

        3.    Defendants' Attempts to "Spin" These Obviously Defamatory Remarks Are Completely Off Base ..................... 20

            a.    The Alleged Statements Are Clearly Capable of Defamatory Meaning and Survive a Pleading Motion ......................................................................... 20

            b.    The Pleadings Support the Inference That the Statements Were About Whitley ............................... 22

    K.    Unfair Competition ........................................................................... 23

V.      CONCLUSION ...................................................................................... 24

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1
2

# <u>TABLE OF AUTHORITIES</u>

3

**Cases**                                                                                           **Page(s)**

4
5

*Am. Title Ins. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988) ............................................................................ 5

6
7

*Aquamen Entertainment, LLC v. Pigmental, LLC*,
    Case No. CV 17-58-GW(GJSx), 2017 WL 7806619 ........................................ 7

8
9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 6

10

*Barnes-Hind, Inc. v. Superior Court*,
    181 Cal.App.3d 377 (1986) ................................................................ 19, 20, 21

11
12

*Beckwith v. Dahl*,
    205 Cal. App. 4th 1039 (2012) ...................................................................... 11

13
14

*Bell Atl. Corp. v Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 6

15
16

*Bindrim v. Mitchell*,
    92 Cal.App.3d 61 (1979) ............................................................................... 22

17
18

*Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) .................................................................................. 23

19
20

*Comm. on Children's Television Inc. v. Gen. Foods Corp.*,
    35 Cal. 3d 197 (1983) ................................................................................... 24

21

*Cotran v. Rollins Hudig Hall Intern., Inc.*,
    17 Cal. 4th 93 (1998) .................................................................................... 12

22
23

*DiGiorgio Fruit Corp. v. AFL-CIO*,
    215 Cal.App.2d 560 (1963) ........................................................................... 22

24
25

*Enea v. Superior Court*,
    132 Cal.App.4th 1559 (2005) ........................................................................ 14

26
27

*Haddock v. Bd. of Dental Examiners*,
    777 F.2d 462 (9th Cir. 1985) ........................................................................... 6

28

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

*People ex rel. Harris v. Rizzo*,
214 Cal.App.4th 921 (2013).................................................................. 14

*Holmes v. Lerner*,
74 Cal. App. 4th 442 (1999)................................................................. 13

*Jiagbogu v. Bank of America*,
2016 WL 7626427 (C.D.Cal. 2016)...................................................... 11

*Johnson v. State, Oregon Dept. of Human Resources, Rehabilitation
Div.*,
141 F.3d 1361 (9th Cir. 1998)............................................................... 5

*Kahn Creative Partners, Inc. v. Nth Degree, Inc.*,
2011 WL 1195680 (C.D.Cal. 2011)...................................................... 14

*Kersch v. Taber*,
67 Cal. App. 2d 499 (1945).................................................................. 13

*Kettler v. Gould*,
22 Cal. App. 5th 593 (2018)................................................................. 21

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003).............................................................. 17

*Lee v. Federal Street LA LLC*,
Case No. 2:14-cv-06264-CAS(SSx), 2016 WL 2354835 (C.D.Cal.
2016)..................................................................................................... 11

*Lickerish, Inc. v. Alpha Media Grp.*,
No. CV 13-00377 DMG (SSz), 2014 WL 12589641 (C.D.Cal.
2014)....................................................................................................... 8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
519 F.3d 1025 (9th Cir.2008)................................................................. 6

*Mat–Van, Inc. v. Sheldon Good & Co. Auctions*, *LLC*,
No. CV 07–CV–912 IEG–BLM, 2007 WL 2206946 (S.D.Cal. July
27, 2007)................................................................................................. 9

*MDY Industries, LLC v. Blizzard Entertainment, Inc.*,
629 F.3d 928 (9th Cir. 2010)............................................................ 7, 8

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)     - iii -     PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
AFDOCS/25892313.3

*O'Connor v. McGrawHill, Inc.*,
   159 Cal. App. 3d 478 (1984) .............................................................. 21

*Patton v. Royal Indus., Inc.*,
   263 Cal. App. 2d 760 (1968) .............................................................. 21

*People v. McKale*,
   25 Cal. 3d 626 (1979) ......................................................................... 24

*R Power Biofuels, LLC v. Chemex LLC*,
   Case No. 16-CV-00716-LHK, 2017 WL 1164296 (N.D. Cal. 2017) ............... 11

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) .......................................................................... 9

*Rose v. Seamless Financial Corp. Inc.*,
   916 F. Supp. 2d 1160 (S.D.Cal. 2013) ............................................... 24

*Rubio v. U.S. Bank N.A.*,
   No. C 13-05752 LB, 2014 WL 1318631 (N.D. Cal. Apr. 1, 2014) .................. 13

*Rutherford Holdings, LLC v. Plaza Del Rey*
   223 Cal. App. 4th 221 (2014) .............................................................. 16

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*,
   965 F.Supp.2d 1141 (E.D.Cal.2013) .................................................. 14

*SDV/ACCI, Inc. v. AT&T Corp.*,
   522 F.3d 955 (9th Cir. 2008) ......................................................... 22, 23

*Second Measure, Inc. v. Kim*,
   143 F. Supp. 3d 961 (N.D. Cal. 2015) ................................................ 14

*Selleck v. Globe International, Inc.*,
   166 Cal.App.3d 1123 (1985) ............................................................... 20

*Shen v. Gotham Corp. Grp., Inc.*,
   Case No.: CV 14-07870 SJO (AJWx), 2015 WL 4517146 (C.D.
   Cal. July 21, 2015) ............................................................................... 15

*Smith v. Maldonado*,
   72 Cal.App.4th 637 (1999) .................................................................. 19

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- iv -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

*Solano v. Playgirl, Inc.*,
   292 F.3d 1078 (9th Cir. 2002) ............................................................... 21

*Spinelli v. NFL*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015) ......................................................... 8

*Taus v. Loftus*,
   40 Cal.4th 683 (2007) ............................................................................ 18

*Terpin v. AT&T Mobility, LLC*,
   399 F. Supp. 3d 1035 (C.D. Cal. 2019) ................................................. 12

*UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ............................................. 9, 11

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
   No. CV 07-5744 AHM (AJWx), 2009 WL 334022 (C.D. Cal. 2009) ................ 5

*United States v. Drew*,
   259 F.R.D. 449 (C.D.Cal. 2009) ...................................................... 17, 18

*Very Music Inc. v. Kid Globe Prods., Inc.*,
   2016 WL 6674991 (C.D. Cal. 2016) ........................................................ 8

*Walker v. Kiousis*,
   93 Cal.App.4th 1432 (2001) ................................................................... 21

*Walter v. Hughes Commc'ns, Inc.*,
   682 F.Supp.2d 1031 (N.D.Cal.2010) ...................................................... 15

*Weinberg v. Feisel*,
   110 Cal.App.4th 1122 (2003) ................................................................. 20

*Weiner v. Fleischman*,
   54 Cal.3d 476 (1991) ............................................................................. 13

*Welco Elecs., Inc. v. Mora*,
   223 Cal. App. 4th 202, 166 Cal. Rptr. 3d 877 (2014) ............................ 16

*In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*,
   903 F. Supp. 2d 880 (C.D. Cal. 2012) .................................................... 24

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
   135 F.3d 658 (9th Cir.1998) .................................................................... 5

ArentFox Schiff LLP
Attorneys at Law
Los Angeles

Case No. 2:22-cv-01837-ODW (JEMx)          - v -          PLAINTIFFS' OPPOSITION TO
                                                          DEFENDANTS' MOTION TO DISMISS
                                                          FIRST AMENDED COMPLAINT
AFDOCS/25892313.3

**Statutes & Rules**

17 U.S.C. §106 ...................................................................................................... 8

17 U.S.C. § 512 .................................................................................................... 8

Bus. Prof. Code §17200 ................................................................................ 23, 24

Cal. Corp. Code §16404 ..................................................................................... 14

Cal. Corp. Code §16801 ..................................................................................... 15

Fed. R. Civ. P. 8(a) ............................................................................................. 9

Fed. R. Civ. P. 9(b) ............................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 5

Fed. R. Civ. P. 26(f) ........................................................................................... 24

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- vi -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

Plaintiffs Taylor Whitley ("Whitley")  and WTF.Industries, LLC ("WTF.Industries") (collectively "Plaintiffs") hereby provide their opposition to Defendants Clare Maguire ("Maguire"), Jake Nygard ("Nygard"), Antonius Wiriadjaja ("Wiriadjaja"), and Donglee Han ("Han") (collectively "Defendants")'s motion to dismiss for failure to state a claim (the "Motion").

## I.     INTRODUCTION

Defendants, throughout their Motion, misread, misstate, and mischaracterize portions of Plaintiffs' First Amended Complaint (the "FAC") to the point that it is a wonder the parties refer to the same pleading. Reading Defendants' Motion, one would think that Taylor Whitley's role was as a minor contributor responsible for a handful of pixels used in a fraction of the Caked Apes NFT Project ("Caked Apes") and entitled to nothing more than the proceeds he received already.

In truth, Whitley was *the* central character in the Art.Discord world, Caked Apes, and had a hand in numerous other projects developed through *his* community. This suit is a means to recover promised revenue and damages stemming from the wrongful takeover of the community Whitley founded and all of the bases he has pled are sufficiently stated in order to survive Defendants' Motion. Accordingly, Defendants' Motion should be denied, and the factual disputes which engross most of this matter should proceed to discovery.

## II.    STATEMENT OF FACTS

### A.    PLAINTIFFS' COMPLAINT AND FACTUAL ALLEGATIONS

Whitley is a creative artist working in visual, performance, and digital media. (FAC ¶13.) His work has been displayed all over the world and he has thriving social media accounts which he uses to promote himself and his work. (*Id.*) In June of 2021, Whitley set up a Discord server entitled discord.art (the "Discord") and purchased a corresponding web domain (https://discord.art/) to serve as the central hub for the artist community he was growing quickly. (FAC ¶¶16-19.)

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)            - 1 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

As the Discord grew, Whitley was approached by artists looking to join and use the size of the community for their own projects (Defendant Wiriadjaja) and hired numerous others to moderate the community, build the website, and promote and market it. (FAC ¶¶ 20-21.)  After a few months, on August 23, 2021 Whitley, burnt out from marketing and promoting the Discord and its artists, decided to take a temporary step back to rest. (FAC ¶ 23.) To aid his rest, he transferred "ownership" of the Discord to Wiriadjaja. (*Id.*) Whitley did not say the chance was permanent, and did not intend to leave and in fact continued to hire and supervise employees, and maintained his administrative access to the Discord, and the website built to support the Discord. (FAC ¶¶ 23, 25, 27.)[1] Whitley did not transfer ownership of the website, social media accounts opened to support the Discord, or anything else. (FAC ¶ 27.)

As the Discord grew and the team expanded, Whitley, Wiriadjaja and the other Discord employees discussed expanding the Discord into a public-facing art group to increase the scale of their projects in order to profit from the sale of Discord artist projects and the use of the Discord as a platform. (FAC ¶¶ 28-29.) Whitley and Wiriadjaja referred to each other as "co-creators" of the Discord and hired Maguire in October 2021 and were joined by Han in November 2021 as the Discord grew and artist projects began selling through the Discord. (FAC ¶¶ 30-31.) In order to ultimately provide some legitimacy to the Discord as an art agency, Whitley formed WTF.Industries LLC to take revenue cuts from projects it supported using the Discord as a platform. (FAC ¶ 32.) The Discord rebranded to WTF.Industries on December 16, 2021. (FAC ¶ 33.)

Also on December 16, Han's NFT collection Pixel Tots launched. (FAC ¶ 33.) Whitley and Han agreed that they would marketing Pixel Tots for two months

---

[1] "Ownership" on Discord is limited to the highest level of access and control on a server, and the ability to change other users' access permissions. (FAC ¶ 24.) There is no indication or suggestion that it implies legal ownership or any legally-recognized right to possess a Discord server.

in exchange for 25% of revenue from the initial launch, 60% of secondary sale revenue[2], and 60 NFTs from the collection. (*Id.*) Plaintiffs have received no money at all from this project, despite it generating tens of thousands of dollars. (*Id.*)

At the same time, Whitley and Nygard were readying Caked Apes for sale using the Discord, website, and social media channels (FAC ¶ 35.) Whitley advised on elements to include in the collect, art decisions, and a background story, and invested around $200,000 of his own money into Caked Apes. (*Id.*) He also developed logo designs which would be include in the collection. (FAC ¶¶ 35-36.) Those logos are registered copyrights to Whitley (Registration No. VA0002291227), and are incorporated into many of the Caked Apes. (FAC ¶¶ 49-50.)

On January 7, 2022, shortly before launch, Whitley, Maguire, Nygard, and Wiriadjaja agreed that Whitley would receive 10% of all revenue from Caked Apes (primary and secondary sales) and WTF.Industries LLC would get 30% of primary sales and 45% of secondary sales. (FAC ¶ 37.) On January 10, 2022, Caked Apes, along with a website and social media accounts launched, specifying Whitley and Nygard as creators. (FAC ¶ 38.)

Before Caked Apes launched, Maguire, Nygard, and Wiriadjaja created a "multi-signature" wallet designed to receive funds from the Caked Ape sales. (FAC ¶ 39.) The wallet was designed to require at least two signatories to approve any transactions. (FAC fn. 5.) The wallet was programmed to send Whitley the 10% he was owed, but no revenue was ever sent to WTF.Industries LLC or a wallet it controlled. (FAC ¶ 39.) Caked Apes earned approximately $1.9m in initial sales, and $225,000 from secondary sales. (FAC ¶ 40.)

---

[2] NFTs are usually bought and sold using Ethereum (a cryptocurrency) and are housed on the same network, enabling all transactions to be recorded, and allowing the initial creator to receive an ongoing percentage of all subsequent sales so long as they allow the project to continue selling. (FAC fn. 2.)

1    Once Whitley learned that WTF.Industries LLC received no profits from

2  Caked Apes' sales and that Maguire requested that WTF.Industries LLC's

3  accountants add new directors to WTF.Industries LLC, Whitley requested a

4  meeting with Defendants, which never took place. (FAC ¶¶ 42-43.) Instead, on or

5  about January 28, 2022, Defendants revoked Whitley's access to Caked Apes social

6  media accounts and then on January 30, 2022, Whitley was removed from the

7  Discord. (FAC ¶ 44.) Despite this, Whitley has continued to pay maintenance fees

8  for the Discord to try and salvage its value. (FAC ¶ 48.) The Caked Apes are still

9  available online, being bought and sold despite Whitley's removal from the project.

10  (FAC ¶ 52.)

11    After his removal, Maguire and Nygard began sending harassing and

12  slanderous statements from their social media accounts which made plainly false

13  claims about Whitley. (FAC ¶ 46.) Examples of such statements by Maguire are

14  "Sorry didn't realise [sic] that guy stole art that makes him a dick, like the other

15  man I used to run a room with who did same thing. I was talking about someone I

16  was asked help build community and then they ended up trying to kill me[,]" and

17  "hi escargot, I do not know you. Can you tell me what it is I said about you because

18  i know Taylor despises you but I don't know who you are." (*Id.*) Sample statements

19  from Nygard include "he hates all of you". (*Id.*) Maguire has also admitted to using

20  anonymous social media accounts to harass social media profits she does not like

21  and may have done so here as Whitley intends to uncover through discovery. (FAC

22  ¶ 47.) Whitley's reputation is very important, as, in the NFT space, the value of

23  projects tends to follow the reputation of the creators, making Defendants' tactics

24  even more harmful to Whitley's long term economic goals. (*Id.*)

25    On March 18, 2022, Plaintiffs filed their Complaint in this matter, and on

26  May 6, 2022, they filed their FAC, the operative pleading.

27

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)        - 4 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

### B.   DEFENDANTS' SEPARATE COMPLAINT

Defendants, in their Motion, reference a separate suit, filed by Defendants against Whitley, stylized as *Jacob L. Nygard, et al. v. Taylor Whitley*, Case No. 22-cv-00425-ODW-JEMx (the "Nygard Action"). (Mot. at 1.) Plaintiffs dispute the "facts" in the Nygard Action, but its allegations are relevant for this Motion because Defendants attempt to have Plaintiffs' causes of action thrown out despite being premised on wholly similar facts alleged in the Nygard Action. *See Johnson v. State, Oregon Dept. of Human Resources, Rehabilitation Div.*, 141 F.3d 1361, 1369 (9th Cir. 1998) (holding that if a litigation's current position is manifestly inconsistent with a proper position such as to "amount to an affront to the court, judicial estoppel may apply."); *See Am. Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint . . .is a judicial admission.").

In the Nygard Action, even as described in Defendants' Motion, Defendants assert the existence of a "joint venture" with Whitely to selling Caked Apes. (Mot. at 1.) Specifically, Defendants assert that a "limited joint venture" existed with Whitley to "promote and sell 'Caked Apes'" but that this does not support Plaintiffs' claims because "Whitley appears to have a completely different position as to the terms and scope of the parties' joint venture…" (Mot. at fn 5.) Despite Defendants' protestations, the parties appear to agree that they entered into some implied agreement at minimum with respect to Caked Apes, if not more.

### III.   LEGAL STANDARD ON MOTION TO DISMISS

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the allegations of the complaint must be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Wyler Summit P'ship v. Turner Broad. Sys., Inc*., 135 F.3d 658, 661 (9th Cir.1998). A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *UMG Recordings, Inc. v. Veoh Networks Inc.*, 2009 WL

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)          - 5 -          PLAINTIFFS' OPPOSITION TO
                                                          DEFENDANTS' MOTION TO DISMISS
                                                          FIRST AMENDED COMPLAINT
AFDOCS/25892313.3

334022 at *2 (C.D. Cal. 2009). Thus, if the complaint states a claim under any legal theory, even if the plaintiff erroneously relies on a different legal theory, the complaint should not be dismissed. *Haddock v. Bd. of Dental Examiners*, 777 F.2d 462, 464 (9th Cir. 1985).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678.

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir.2008).

## IV.    ARGUMENT

### A.    PLAINTIFFS' COPYRIGHT INFRINGEMENT CLAIM IS SUFFICIENTLY PLED TO SURVIVE DEFENDANTS' MOTION TO DISMISS

Any license granted by Whitley to Defendants would be neither dispositive nor definitive in determining whether Plaintiffs can maintain their cause of action for copyright infringement because Whitley does not dispute that he was a co-creator of Caked Apes. He further acknowledges, and has in fact alleged, that he contributed his intellectual property to Caked Apes. However, as was expressly pled in the FAC (and this is after all a pleading motion), Whitley's authorization was not unconstrained. His authority to use his work in Caked Apes was predicated on his continued involvement in the project he founded and by the community he created and built up, and finally compensated as he had agreed to. When

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 6 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

Defendants violated all of those conditions, Whitley reasonably withdrew his authorization and filed suit when sales continued.

It is true that a "copyright owner who grants a nonexclusive, limited license … waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract." *MDY Industries, LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928 (9th Cir. 2010) (*citing Sun Microsystems, Inc. v. Microsoft, Inc.*, 188 F.3d 1115, 1121 (9th Cir. 1999)). However, it is also true, and far more relevant here, that when "the licensee acts outside the scope of the license, *the licensor may sue for copyright infringement*." *Id.* (emphasis added*).* [3]

"Covenants" are other license terms, which are actionable as breaches of contract. *Id.* They are distinguished by state law, to the "extent consistent with federal copyright law and policy." *Id. citing Foad Consulting Grp. v. Musil Govan Azzalino*, 3270 F.3d 821, 827 (9th Cir. 2001). Notably, the *Blizzard* court also acknowledged that "A licensee arguably may commit copyright infringement by continuing to use the licensed work while failing to make required payments, even though a failure to make payments otherwise lacks a nexus to the licensor's exclusive statutory rights." *Id.* at fn. 4.  An important factor for the *Blizzard* court was that "for a licensee's violation of a contract to constitute copyright infringement, there must be a nexus between the condition and the licensor's exclusive rights of copyright." *Blizzard Entertainment, Inc.*, 629 F.3d at 941.

Subsequent cases affirm *Blizzard*'s reasoning. Indeed, this Court held that breach of the "scope of the license" could enable a party to bring a suit based in copyright infringement in *Aquamen Entertainment, LLC v. Pigmental, LLC*, 2017 WL 7806619. Here, Whitley's demanded "scope of license" with Defendants has a direct and substantial nexus to his exclusive rights in the copyright - Whitley's

---

[3] The Court in *Blizzard* continued by defining "condition" as a contractual term which limits a license's scope and can be the subject of copyright infringement suit. *Id.*

ArentFox Schiff LLP
Attorneys at Law
Los Angeles

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 7 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

involvement in the distribution and earnings of Caked Apes ties directly in with his exclusive right to reproduce, publish and display his owned work. 17 U.S.C. §106. Similarly, his continued involvement with the Discord has a nexus with his right to adapt his work in future planned projects, not to mention his reproduction and publication and display rights. Far from being just a dispute about money, Defendants have "not only injured the value of the [Discord] community itself, but the individual projects, and Whitley's very reputation and future involvement in the digital art world." (FAC ¶52.)[4]

Defendants' cited caselaw is inapposite. *Lickerish, Inc. v. Alpha Media Grp.*, 2014 WL 12589641 (C.D.Cal. 2014), *Very Music Inc. v. Kid Globe Prods., Inc.*, 2016 WL 6674991 (C.D. Cal. 2016) and *Spinelli v. NFL*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015) are all cases related solely to royalties and unpaid license fees, which Whitley does not dispute do not typically provide a basis for a copyright infringement cause of action.  Again, this is not a case merely about money. This case is about an arts community ripped away from its founder, who offered his help and his work to other artists as a way to encourage all of their success.

Lastly, and of note, Defendants argue that they have not offered Caked Apes for sale since the initial offering. This argument is not effective for two reasons. First, Defendants could have purchased Caked Apes after they were launched and then resold them in order to demonstrate that Caked Apes were being bought and sold in order to encourage other purchasers. Such an assertion can only be evaluated in discovery. Second, by their very nature, Defendants can determine whether Caked Apes are available to sell. NFTs are bought on sold at online platforms like OpenSea and Rarible and are subject to takedown notices under the Digital Millennium Copyright Act. 17 U.S.C. §512. As the owners of the

---

[4] *Blizzard* also acknowledged that "A licensee arguably may commit copyright infringement by continuing to use the licensed work while failing to make required payments, even though a failure to make payments otherwise lacks a nexus to the licensor's exclusive statutory rights." *Id.* at fn. 4.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 8 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

intellectual property, Defendants can take the collections offline at any time, halting all sales activities. While Defendants may not have "new" Caked Apes to sell, they control the market for them.

Plaintiffs' cause of action for copyright infringement should stand.

### B. VICARIOUS COPYRIGHT

As Plaintiffs have demonstrated, because their direct copyright claims survive Defendants' Motion, so too will their cause of action for vicarious and/or contributory infringement survive.

### C. PLAINTIFFS' CAUSES OF ACTION FOR INTENTIONAL MISREPRESENTATION ARE SUFFICIENTLY PLED

Significant facts exist and were pled in the FAC demonstrating that Defendants should be liable for intentional misrepresentation with respect to their nonpayment of Pixel Tots and Caked Apes revenues, and Plaintiffs' claims for intentional misrepresentation should not be dismissed.

Under California law, the elements of a cause of actional for intentional misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004).

Under Rule 8(a), a plaintiff "must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1109–10 (C.D. Cal. 2015). "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *Mat–Van, Inc. v. Sheldon Good & Co. Auctions*, LLC, No. CV 07–CV–912 IEG–BLM, 2007 WL 2206946, at *6 (S.D.Cal. July 27, 2007) (quoting *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)           - 9 -           PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

AFDOCS/25892313.3

(N.D.Cal.2002); *Richardson v. Reliance Nat'l Indemnity Co.*, No. CV 99–2952, 2000 WL 284211, at *4 (N.D.Cal. Mar. 9, 2000)).

First, Whitley is a well-known, successful digital artist, whose fame has brought him all around the world to display his work. (FAC ¶ 13.) Whitley has a robust social media following on Instagram, Twitter, and Discord. (FAC ¶¶ 13, 14.) Whitley had established his renowned reputation in the NFT community before Defendants became involved. (FAC ¶ 19.) In fact, relative to Whitley, the Defendants did not have comparable platforms, or access to a community nearly the same size, which he had spent months of time developing. (FAC ¶¶ 15-16, 20.)

Han, as well as the other Defendants, desiring to use Whitley's well-established reputation and platform, sought out Whitley to use his large platform to increase sales and market NFTs and, in exchange, would share revenues of their sales with him. (FAC ¶ 34.) This has been successful for Han, as hundreds of Pixel Tots NFTs have been transacted generating tens of thousands of dollars of revenue. (FAC ¶ 34.) Similarly, Whitley's fame and renown directly contributed to the incredible success of Caked Apes, which he helped midwife through investment and use of his community to market.

Second, Defendants created and designated a "multi-signature" wallet, which requires at least two authorized individuals to approve each transaction, to receive funds derived from the Caked Apes launch. (FAC ¶ 39.) They did so without Whitley's knowledge. (*Id*.) As the multi-signature wallet is designed to prevent withdrawal without multiple authorizations, Whitley would have at all times been unable to reap the rewards of Caked Apes' success without another Defendant's authorization, or even to potentially challenge the distribution if some dispute occurred, enabling them to act as a unit to impede him. (FAC ¶¶ 39-42.) In combination with their collective refusal to discuss the lack of revenue sharing, as well as their removal of Whitley from the Discord and the Caked Apes social media

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)                    - 10 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1    accounts, Defendants demonstrated their intent to prevent Whitley from receiving

2    his agreed upon percentage of the revenue, which was reasonably understood to

3    exist at the time the parties agreed to the revenue split. (FAC ¶¶ 37, 65, 72.)

4          Third, the First Amended complaint contains public statements made by

5    Defendant Maguire that strongly suggest she has similarly exploited other members

6    of the NFT community. (FAC ¶ 46.). Defendant Maguire's statements of "another

7    day, another man's ETH, my job is complete #BackToBed," and "my only regret is

8    I didn't take more…" demonstrate her experience and nonchalant attitude towards

9    dishonoring similar agreements, and suggest at her intent to not perform at the time

10   the agreement was made. (*Id.*)

11         Defendants' cited caselaw is inapposite to this situation. In *UMG Recordings*,

12   *Inc.*, 117 F. Supp. 3d at 1110 and in *Jiagbogu v. Bank of America*, 2016 WL

13   7626427 (C.D.Cal. 2016), the Court acknowledged that the only allegation that

14   might give rise to an inference that the promise was made without intention to

15   perform is that the contract was not performed. The situation here is more akin to

16   that in *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1061-62 (2012) where the

17   allegations that defendant never intended to perform the promises made was

18   sufficient to send the question to the trier of fact. Similarly, the facts in *R Power*

19   *Biofuels, LLC v. Chemex LLC*, 2017 WL 1164296 at *11-12 (N.D. Cal. 2017), align

20   here because the pled facts created sufficient inferences for the Court to find, at the

21   pleading phase, that defendant never intended to perform its promises. *See also*, *Lee*

22   *v. Federal Street LA LLC*, 2016 WL 2354835, at *9 (C.D.Cal. 2016) (finding

23   inference of fraudulent intent where actions taken after promise carried an inference

24   that Plaintiff never intended to perform).  So too here, where Defendants' actions

25   (cutting Whitley out of communications and the Discord, preventing him from

26   being able to access the agreed upon revenues) provide more than sufficient

27   inference to defeat a pleading motion with respect to the intentional

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)          - 11 -          PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

AFDOCS/25892313.3

1   misrepresentation claims.

2       **D.**    **DEFENDANTS ADMIT THAT AN IMPLIED CONTRACT EXISTS BETWEEN**

3              **PARTIES**

4          Defendants cite, in footnote 5 to their Motion, their allegation that a joint

5   venture was created between Whitley and Defendants. While Whitley disputes the

6   specific facts upon which Defendants base their theory, it would be remiss to not

7   point out that Defendants assert the existence of a contractual relationship based

8   upon "screen shots" (and therefore presumably no signed writing) yet reject

9   Plaintiffs' similar allegations.

10          Obviously both parties allege that there was a contract between them but

11   dispute what its terms were.  Such obvious factual disputes should be left to a trier

12   of fact to determine. "If the terms of the contract are ambiguous or uncertain, as is

13   often true of implied contracts, determining the contract's terms is a question of fact

14   for the trier of fact (here the jury), based on "all credible evidence concerning the

15   parties' intentions...." *Cotran v. Rollins Hudig Hall Intern., Inc.*, 17 Cal. 4th 93

16   (1998) (Kennard, J., concurring in part) (*citing Winet v. Price*, 4 Cal. App. 4th

17   1159, 1165 (1992); see also BAJI No. 10.75 (8th ed.1994).)

18       **E.**    **PLAINTIFFS' PLED BREACH OF IMPLIED CONTRACT SUFFICIENTLY**

19              **STATES THE TERMS OF THE AGREEMENT TO WITHSTAND SCRUTINY**

20              **AT THIS PHASE**

21          To establish a cause of action for breach of contract, Plaintiffs must prove:

22   "(1) the existence of a contract; (2) performance by the plaintiff or excuse for

23   nonperformance; (3) breach by the defendant; and (4) damages." *Terpin v. AT&T*

24   *Mobility, LLC,* 399 F. Supp. 3d 1035, 1049 (C.D. Cal. 2019). Here, the FAC

25   provides significant detail as to the contours and structure of the implied agreement

26   between Plaintiffs and Defendants, and this Court should deny Defendants' Motion

27

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 12 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

as their respective conduct leads to the reasonable deduction that a partnership was formed.

"Ordinarily the existence of a partnership is evidenced by the right of the respective parties to participate in profits and losses and in the management and control of the business." *Kersch v. Taber*, 67 Cal. App. 2d 499, 504 (1945). That being said, sharing of profits is prima facie, but not necessary evidence to prove partnership existed. *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457 (1999). If Plaintiffs and Defendants implicitly agreed to form a partnership, the Court can assume that the partnership was "organized from a reasonable deduction from the acts and declarations of the parties." *Weiner v. Fleischman*, 54 Cal.3d 476, 482–83 (1991); *see also Rubio v. U.S. Bank N.A.*, 2014 WL 1318631, at *10 (N.D. Cal. Apr. 1, 2014) ("[A] contract implied in fact consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words").

Here, the facts pled in the FAC create a reasonable inference that a partnership was created. Where Defendants see "nebulous" allegations, a reasonable observer would see a collection of individuals who, while originally joining the Discord as Whitley's employees, ultimately came to have important roles in the organization, given ultimate color by the revenue split on Caked Apes. (FAC ¶¶ 31, 34, 37.)

The simple fact that Defendants agreed to the revenue splits, and had their approval actively sought out, demonstrates that they were all key members, acting in concert by the time that Caked Apes was released. (FAC ¶¶ 37.) Further still, as Wiriadjaja and Han each operated on their own projects and they, along with Whitley, Maguire, and ultimately Nygard, ran the Discord and the various projects that were being developed with Whitley, including Caked Apes, Pixel Tots, and others which are now unknown to Whitley given his removal, with the aim to share

ArentFox Schiff LLP
Attorneys at Law
Los Angeles

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 13 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1   profits and costs from each, a partnership reasonably was formed. (FAC ¶¶ 37, 79,
2   80.)

3       Caselaw supports this conclusion too – in *Second Measure, Inc. v. Kim*, 143
4   F. Supp. 3d 961, 978 (N.D. Cal. 2015), the court there found an implied partnership
5   had been formed by oral agreement despite the lack of "co-ownership of property,
6   sharing of gross returns, and sharing of business profits". The *Second Measure, Inc.*
7   court found that "their agreements, conduct, and surrounding circumstances[,]"
8   were determinative. *Id.* So too in *Kahn Creative Partners, Inc. v. Nth Degree*, *Inc.*,
9   2011 WL 1195680 (C.D.Cal. 2011), where this Court found that there was a triable
10  issue of fact as to whether the lack of use of "partner", their work as a team and in
11  teams on a series of projects, and their messaging internally and externally led to
12  the conclusion from a trier of fact that an implied partnership had been created.

13      Overall, sufficient facts have been pled to infer the existence of an implied
14  contract to operate as a partnership, with each of the Defendants having at least
15  some share. Accordingly, dismissal at this stage would be improper and the parties
16  should conduct discovery to substantiate their respective claims and defenses.

17  **F.    BREACH OF FIDUCIARY DUTY**

18      To establish a breach of fiduciary duty, a plaintiff must show "(1) existence
19  of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately
20  caused by the breach." *People ex rel. Harris v. Rizzo*, 214 Cal.App.4th 921, 950,
21  (2013) (quotation omitted). Section 16404 of the California Corporations Code
22  provides a nonexclusive list of the fiduciary duties that one partner owes to another.
23  *See Enea v. Superior Court*, 132 Cal.App.4th 1559, 1565, (2005) (holding that the
24  list is "comprehensive, but not exhaustive" (quotation and emphasis omitted)).

25      Because fiduciary duties are imposed by statute, pleading the existence of
26  partnership or joint venture is sufficient to establish the existence of a fiduciary
27  duty. See *Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F.Supp.2d

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)        - 14 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1141, 1150 (E.D.Cal.2013). Accordingly, as Plaintiffs have already sufficiently pled the existence of an implied partnership, fiduciary duties inherently attach and this cause of action will survive.

### G. DISSOLUTION OF IMPLIED PARTNERSHIP

The cause of action for dissolution of implied partnership is sufficiently pled as, similar to the causes of action for breach of implied contract and breach of fiduciary duty, Plaintiffs have pled sufficient facts for the finding of a reasonable inference that the parties entered into an implied partnership agreement and the extent of that agreement. Dissolution is governed by Cal. Corp. Code §16801, which enables a court to determine that "another partner has engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with that partner." Cal. Corp. Code §16801(5)(B). As Plaintiffs' allegations make clear, Defendants' conduct totally inhibits the partnership's ability to carry on in business promoting and selling art. As such, this cause of action should be upheld.

### H. PLAINTIFFS' CAUSE OF ACTION FOR MONEY HAD AND RECEIVED IS PROPERLY PLED

The elements of money had and received are: "(1) the statement of indebtedness in a certain sum, (2) the consideration, i.e., goods sold, work done, etc., and (3) nonpayment." *Shen v. Gotham Corp. Grp., Inc*., 2015 WL 4517146, at *8 (C.D. Cal. July 21, 2015) (citing *Farmers Ins. Exch. v. Zerin*, 53 Cal.App. 4th 445, 459 (1997)). "[I]n order for plaintiff recover in such action she must show that definite sum, to which she is justly entitled, has been received by defendants." *Walter v. Hughes Commc'ns, Inc*., 682 F.Supp.2d 1031, 1047 (N.D.Cal.2010). The FAC properly alleges the requisite elements for money had and received: an express oral contract, consideration, and a certain sum owed which was not paid. Accordingly, Whitley's claim for money had and received should not be dismissed.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 15 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

First, Whitley properly pled that he performed marketing work on behalf of Defendants which led to their significant sales. (FAC ¶¶ 101.) There is no question as well whether Defendants received the sums in questions, thanks to the public nature of the Caked Apes sales, all of which are available on the assorted platforms which host the sales. (FAC ¶¶ 39-40.)

Further, there is a definite sum because, while sales are ongoing, the amount of revenue at issue is perpetually being calculated and updated as new sales occur. (*See* FAC fn. 3.) Regarding Pixel Tots, Plaintiffs allege that they were to receive 25% of revenue from the initial launch and 60% of all revenue earned through secondary sales under his agreement with Defendant Han. (FAC ¶ 34.) Regarding Caked Apes, Whitley alleges he was to receive 10% of all revenue generated from primary and secondary sale royalties, and WTF.Industries was to receive 30% of all Caked Apes Primary sales royalties and 45% of all Caked Apes secondary sale royalties. (FAC ¶ 37.) Thus, Whiley's claim for money had and received should not be dismissed as all of the elements have been properly pled.

## I.    PLAINTIFFS' CAUSE OF ACTION FOR CONVERSION IS PROPERLY PLED

A cause of action for conversion requires "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208, 166 Cal. Rptr. 3d 877, 881 (2014) (citing *Los Angeles Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387, 147 Cal. Rptr. 3d 768, 771 (2012)). A plaintiff must show legal ownership and the right of possession or actual possession at the time of the alleged conversion. *Rutherford Holdings, LLC v. Plaza Del Rey* 223 Cal. App. 4th 221, 233 (2014).

Here, Whitley asserted his legal and rightful ownership of the Discord and the social media accounts, and he also asserted the name and existence of both relevant social media accounts and the Discord serving as the hub for Plaintiffs'

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

- 16 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  burgeoning art collector's community, and all other facts necessary for this claim
2  for conversion to survive. (FAC ¶¶13, 16, 23-27, 38, 44.)

3       Confusingly, Defendants nevertheless argue Whitley's claim for conversion
4  fails because Whitley does not identify the social media accounts subject to the
5  claim nor plead enough facts to establish ownership of the social media accounts or
6  the Art Discord. However, the FAC does in fact describe the social media accounts
7  created at Whitley's direction (FAC ¶21) in order to support Caked Apes, describe
8  other accounts created in relation to the Discord (FAC ¶27) and provide web links
9  for both the Twitter and Caked Apes accounts. (FAC ¶¶ 38, 103.)

10      Furthermore, even without specifying the actual links to social media
11 accounts, the descriptions in the FAC are sufficient. Whitley directed his employees
12 to create social media accounts created in association with the Art Discord (FAC
13 ¶21) and which are still possessed, and, on information and belief, used by
14 Defendants, and subject to a conversion cause of action. *Kremen v. Cohen*, 337
15 F.3d 1024, 1033-34 (9th Cir. 2003) (holding that conversion can be applied to
16 intangible assets.)

17      Finally, Plaintiffs properly pled that permanent ownership of the Discord was
18 never issued to Wiriadjaja. Plaintiffs note that the term "owner" only describes the
19 highest level of access and control on the Discord Platform, and Whitley instructed
20 Defendant Wiriadjaja to take on "ownership" on August 23, 2021 because Whitley
21 was overwhelmed and needed to ease his day-to-day burden. (FAC ¶¶ 23-24, 26.)
22 Whitley also did not remove himself from any administrative privileges or control
23 of the Art Discord, remained the legal owner of the website launched to support the
24 Discord and the social media accounts and remained instrumental in hiring and
25 promotion decisions after the transfer. (FAC ¶¶ 24, 25, 27.)[5]  As such, neither

26 _____
[5] Defendants' reference to *United States v. Drew*, 259 F.R.D. 449, 461 (C.D.Cal.
27 2009) is inapposite because it applies specifically to "members of the public" and
their access to the website – Whitley was not a random stranger who wanted access,
28 he was actually operating the Discord by paying the employees who performed

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)        - 17 -        PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT
AFDOCS/25892313.3

Wiriadjaja nor any other Defendant could reasonably have understood Whitley to have alienated his legal ownership of the Discord or his responsibility for its operation at any time, making their ultimate removal of Whitley a wrongful act for which his cause of action for conversion is proper.

Plaintiffs have properly pled each of the elements of conversion, and therefore this cause of action should be maintained by the Court.

## J.    PLAINTIFFS' DEFAMATION CAUSE OF ACTION IS PROPERLY PLED

### 1.    DEFENDANTS FIRST SPEND A GREAT DEAL OF TIME ON AN ISSUE THAT COULD HAVE BEEN RESOLVED WITH A TELEPHONE CALL

Defendants begin their section on defamation by taking offense that when describing the defamatory statements in this action, Plaintiff included the phrase "including but not limited to," and then listed the four statements.  (Mot. at 16-18.) This phrase was included in the event that other statements came to light through discovery or elsewhere – important because since Whitley was removed from the Discord, he has no idea what statements have been made about to him to his community and whether they are actionable.  However, for purposes of the Motion, Plaintiff will gladly limit its allegations to the statements set forth in the FAC.

### 2.    PLAINTIFF HAS MORE THAN ADEQUATELY PLEADED THE DEFAMATORY STATEMENTS AT ISSUE

On the merits, Defendants seem oblivious to the fact that the pleadings meet every element of a defamation claim.  In California, the tort of defamation "involves (a) a publication [of a statement] that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). "Publication means communication to some third person who understands the defamatory meaning of

---

tasks to support it. Further, the company Discord, Inc. is the equivalent "owner" to Myspace.com in the *Drew* decision, not Defendants.

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)        - 18 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

the statement and its application to the person to whom reference is made." *Smith v. Maldonado*, 72 Cal.App.4th 637, 645, (1999) (citing Cal. Civ. Code §§ 45, 46).

Defendants' Motion never bothers to share these elements with the Court, presumably because that would make it clear that, in the FAC, these elements are all satisfied with respect to both Maguire and Nygard.

### a.   THE ALLEGATIONS AGAINST MAGUIRE ARE CLEAR

Specifically, Maguire is alleged to have made the following statements:

- "Someone I was asked to help build community for abused me and tried to kill me."
- 'The caked apes collection was DMCA'd by Taylor Whitley aka Taylor wtf because he chose to abuse Cake and an entire community of holders of Caked Apes'
- "Can you tell me what it is I said about you because i know Taylor despises you but I don't know who you are."
- Maguire has also told various of Whitley's contacts (both other artists and collectors of Whitley's projects) that he threatened to kill her and that an audio recording of such threat exists in her possession.

Plaintiff pleads four statements (FAC ¶¶ 111-112, meeting requirement one), pleads they are false (FAC ¶ 117, requirement two), pleads they are defamatory (FAC ¶¶ 122-124 requirement three), pleads they are not privileged (FAC ¶ 120, requirement four) and pleads that they caused injury and damage (FAC ¶¶ 122-123, requirement five).  From a pleading standpoint (and for all of Defendants' bluster, this is a *pleading* motion), all bases are clearly covered here and Defendants' Motion should be dismissed. *See, Barnes-Hind, Inc. v. Superior Court*, 181 Cal.App.3d 377, 385 (1986) (courts interpret liberality at the pleading state with respect to libel and it is said to be "error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 19 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1   susceptible of a defamatory meaning."); *see also Selleck v. Globe International,*
2   *Inc.*, 166 Cal.App.3d 1123, 1131 (1985).

3                  **b.**     **PLAINTIFFS HAVE ALSO ADEQUATELY PLED NYGARD'S**
4                       **DEFAMATORY CONDUCT**

5         With respect to defendant Nygard, the pleadings are equally clear: In making
6   a series of posts on social media, including, but not limited to on Twitter and the
7   Art Discord that "he hates all of you" Nygard expressed purportedly factual
8   statements about Whitley and implied that there was a factual basis to evaluate
9   Whitley's mental health, friendships, and work. FAC ¶ 126.

10         As above, these statements were pleaded as being defamatory, false,
11   unprivileged, and causing injury and damage.  FAC ¶¶ 126-135.  Accordingly, they
12   meet California's defamation pleading standard and are not susceptible to
13   dismissal.  *See, Barnes-Hind, supra*, 181 Cal.App.3d at 385.

14             **3.**     **DEFENDANTS' ATTEMPTS TO "SPIN" THESE OBVIOUSLY**
15                  **DEFAMATORY REMARKS ARE COMPLETELY OFF BASE**

16                  **a.**     **THE ALLEGED STATEMENTS ARE CLEARLY CAPABLE OF**
17                       **DEFAMATORY MEANING AND SURVIVE A PLEADING**
18                       **MOTION**

19         Defendants attempt to claim that these obviously disturbing and damaging
20   comments are too "vague" and "generalized" to be actionable.  (Mot. at 18-23.)
21   However, this could not be further from the truth.  There is nothing vague about
22   claims of abuse and attempted murder, especially when one of the allegations of
23   abuse is expressed as "abused and tried to kill me."

24         Indeed, California law is quite clear on this subject.  In California, false
25   statements charging the commission of crime or tending directly to injure a plaintiff
26   in respect to his or her profession by imputing dishonesty or questionable
27   professional conduct are defamatory per se. *See Weinberg v. Feisel*, 110

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)      - 20 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  Cal.App.4th 1122, 1127 (2003); *Barnes-Hind, Inc.*, 181 Cal.App.3d at 385; *see also*
2  *Kettler v. Gould*, 22 Cal. App. 5th 593, 597 (2018) (denying motion to strike
3  defamation complaint over elder abuse accusations).  .

4      A statement is libel per se if "the defamatory meaning of [the statement]
5  would be immediately apparent to any reader without knowing any facts beyond the
6  face of the [statements]." *Walker v. Kiousis*, 93 Cal.App.4th 1432, 1442 (2001).
7  Here, allegations of abuse and attempted murder more than meet this standard.

8      Further, Defendants' attempt to claim that these statements *can* be interpreted
9  in some sort of innocuous manner: "Whitley fails to allege any surrounding context,
10  leaving unclear whether Maguire meant 'kill me' in a literal or figurative sense."
11  (Mot. at 22.)  There is nothing in context that would indicate that Maguire meant
12  "kill" in any other sense other than the definition relating to the unarguably
13  defamatory "attempted murder" sense of the word.  However, if she instead meant
14  some other meaning ("beat someone at backgammon," "wowed an audience at a
15  comedy club," or "stopped someone from spiking a volleyball) presumably there
16  would be some context indicating this.  There is none.

17      Even if there was an argument for some other meaning, it would be
18  irrelevant on a motion to dismiss.  "If it is determined that the publication is
19  susceptible of a defamatory meaning and also of an innocent and nondefamatory
20  meaning *it is for the jury to determine* which meaning would be given to it by the
21  average reader." *Patton v. Royal Indus., Inc.*, 263 Cal. App. 2d 760, 765 (1968)
22  (emphasis added). "The fact that an applied defamatory charge or insinuation leaves
23  room for an innocent interpretation as well does not establish that the defamatory
24  meaning does not appear from the language itself." *O'Connor v. McGrawHill, Inc.*,
25  159 Cal. App. 3d 478, 485 (1984); *see also Solano v. Playgirl, Inc.*, 292 F.3d 1078,
26  1084 (9th Cir. 2002) ("[O]ur inquiry is not to determine whether the publication
27  may have an innocent meaning but rather to determine if it reasonably conveys a

28

1    defamatory meaning.").

2           **b.**    **THE PLEADINGS SUPPORT THE INFERENCE THAT THE**
3                     **STATEMENTS WERE ABOUT WHITLEY**

4           Defendants claim there the FAC does not adequately plead that  some of the

5    statements are about Taylor Whitley.  (Mot. at 18.)  However, California law

6    strongly supports a plaintiff's right to plead defamation even if the defendant does

7    not specifically identify the plaintiff in the defamatory statement.  Under California

8    law, "[t]here is no requirement that the person defamed be mentioned by name. . . .

9    It is sufficient if from the evidence the jury can infer that the defamatory statement

10   applies to the plaintiff. . . [or] if the publication points to the plaintiff by description

11   or circumstance tending to identify him." *DiGiorgio Fruit Corp. v. AFL-CIO,* 215

12   Cal.App.2d 560 (1963); *see also Bindrim v. Mitchell,* 92 Cal.App.3d 61, 75-76

13   (1979).

14          Here, the FAC spends paragraphs explaining how Maguire and Whitley

15   worked together, and not only identifies the comments and how in context they

16   refer to Whitely, but also has provided an example where Maguire's comment was

17   followed up by a third party on the discord who explains that the "someone"

18   Maguire referred to had to be Whitley:

19          She (Maguire) is talking about someone pushing a domino, the only

20          one who did that was Taylor and there is an entire team of people who

21          witnessed it.  He DMCA'd the project and the uses the response of the

22          abused parties to make himself a victim.  This is his abuse tactic.

23          Watch.

24   (FAC ¶ 46).

25          Defendants cite to *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959

26   (9th Cir. 2008) on this issue as if it helps them.  It does not.  *SDV/ACCI, Inc.*

27   was a summary judgment case that explicitly recognized that where, as here,

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)          - 22 -

AFDOCS/25892313.3

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

a complaint alleges that the relevant public understood that the statements were about the plaintiff:

> The Metzes cite *Church of Scientology of California v. Flynn*, <u>744 F.2d 694</u> (9th Cir. 1984), for the proposition that "[i]t is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff." *Id.* at 697 (quoting *Di Giorgio Fruit Corp. v. AFL-CIO*, <u>215 Cal.App.2d 560</u>, <u>30 Cal.Rptr. 350</u> (1963)). The Metzes read *Flynn* as eliminating the need to show that a third party *actually* understood the statement to refer to the plaintiffs. We reject this contention. *Flynn* arose out of a motion to dismiss for failure to state a claim; the court held that dismissal was improper because, among other reasons, the complaint alleged that the defamatory remarks were understood by the listening public to apply to the plaintiff. *See Id.* at 697.

Here, as in the *Flynn* case cited in *SDV/ACCI, Inc.*, the FAC does state that the viewing public understood Maguire's comments to be about Whitley. Accordingly, as in *Flynn*, the Motion should be denied.

## K.    UNFAIR COMPETITION

Plaintiffs' final cause of action is similarly well-pled and consistent with California's intent in enacting Bus. Prof. Code §17200.

Unfair competition includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, unique or misleading advertising . . . ." Bus. Prof. Code §17200 *et seq*. "The statutory language referring to "any unlawful, unfair or fraudulent" practice (italics added) makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law." *Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co*., 20 Cal. 4th 163, 180 (1999). The term "unlawful" means "anything that can properly be called a business practice and that

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 23 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

1  at the same time is forbidden by law." *People v. McKale*, 25 Cal. 3d 626, 634

2  (1979). The term "unfair" is broad enough to encompass deceptive but not unlawful

3  business practices. *Comm. on Children's Television Inc. v. Gen. Foods Corp.*, 35

4  Cal. 3d 197, 209-10 (1983) (superseded on other grounds by statute).

5      Given Plaintiffs' maintenance of their other causes of action, this cause of

6  action stands as well. Defendants' removal of Whitley from the Discord and social

7  media accounts and of WTF.Industries, LLC from the Caked Apes profits

8  constitute unlawful and unfair practices for which Plaintiffs are entitled to relief.

9  *See, e.g.*, *In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F. Supp.

10  2d 880, 928 (C.D. Cal. 2012) ("With respect to the eleventh cause of action, a

11  "breach of contract may form the predicate for a section 17200 claim, provided it

12  also constitutes conduct that is unlawful, or unfair, or fraudulent."); *Rose v.*

13  *Seamless Financial Corp. Inc.*, 916 F. Supp. 2d 1160 (S.D.Cal. 2013) (holding that

14  breach of fiduciary satisfied unlawful prong of UCL claim.)

15  **V.    CONCLUSION**

16      For all of the above reasons, and specifically because of the intensely factual

17  nature of Defendant's bases for their motion and the plain need for findings of fact

18  to determine liability in this matter, Defendant's Motion should be denied, and

19  Plaintiffs permitted to conduct discovery in parallel with Defendants' separately

20  filed complaint. Both actions assert litanies of agreed-to facts and disputed facts,

21  and this Court should not dismiss Plaintiffs' properly-pled causes of action until

22  discovery can be conducted on each. Plaintiffs respectfully urge the Court to reject

23  Defendants' legal contentions, deny their Motion, and direct the parties to exchange

24  initial disclosures and set to work on a Fed. R. of Civ. Proc. 26(f) report.

25

26

27

28

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)

AFDOCS/25892313.3

- 24 -

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

Dated: June 13, 2022

**ARENTFOX SCHIFF LLP**

By:  */s/ John S. Purcell*
      John S. Purcell
      Jake Gilbert
      Attorneys for Plaintiffs
      TAYLOR WHITLEY and
      WTF.INDUSTRIES, LLC

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:22-cv-01837-ODW (JEMx)    - 25 -    PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED COMPLAINT

AFDOCS/25892313.3