KING, HOLMES, PATERNO & SORIANO, LLP
HOWARD E. KING, ESQ., STATE BAR NO. 77012
HKING@KHPSLAW.COM
JOHN G. SNOW, ESQ., STATE BAR NO. 280790
JSNOW@KHPSLAW.COM
1900 AVENUE OF THE STARS, 25TH FLOOR
LOS ANGELES, CALIFORNIA 90067-4506
TELEPHONE: (310) 282-8989
FACSIMILE:  (310) 282-8903

Attorneys for Defendants CLARE MAGUIRE, JAKE NYGARD, ANTONIUS WIRIADJAJA, and DONGLEE HAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| TAYLOR WHITLEY, and WTF.INDUSTRIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>CLARE MAGUIRE, JAKE NYGARD, ANTONIUS WIRIADJAJA, DONGLEE HAN, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 22-CV-01837-ODW-JEM<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date:   July 11, 2022<br>Time:   1:30 p.m.<br>Crtrm.: 5D<br><br>The Honorable Otis D. Wright II<br><br>Complaint filed:   March 21, 2022<br>FAC filed:            May 6, 2022 |

5862.060/1826860.1

REPLY IN SUPPORT OF MOTION TO DISMISS FAC

# TABLE OF CONTENTS

**Page(s)**

I. THE COPYRIGHT INFRINGEMENT CLAIM FAILS ................................ 1

II. THE INTENTIONAL MISREPRESENTATION CLAIMS FAIL ................ 4

III. THE BREACH OF IMPLIED CONTRACT, FIDUCIARY DUTY, AND DISSOLUTION OF IMPLIED PARTNERSHIP CLAIMS STILL FAIL ..... 5

IV. THE "MONEY HAD AND RECEIVED" CLAIM FAILS ........................... 7

V. THE CONVERSION CLAIM FAILS ........................................................... 9

VI. THE DEFAMATION CLAIMS FAIL ........................................................... 9

VII. THE UCL CLAIM FAILS ............................................................................ 12

VIII. CONCLUSION ............................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adaimy v. Bank of New York Mellon*,
  2012 WL 10423232 (C.D. Cal. Apr. 6, 2012) ...................................................... 1

*Beautiful Slides, Inc. v. Allen*,
  2017 WL 3782304 (N.D. Cal. Aug. 31, 2017) ..................................................... 6

*Bekins v. Zheleznyak*,
  2016 WL 1091057 (C.D. Cal. Mar. 21, 2016) ...................................................... 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 10

*Church of Scientology of Cal. v. Flynn*,
  744 F.2d 694 (9th Cir. 1984) .............................................................................. 11

*Conley v. Gibson*,
   355 U.S. 41 (1957) ............................................................................................ 11

*Elias v. Spotify USA Inc.*,
  2020 WL 11884714 (C.D. Cal. Nov. 24, 2020) ................................................. 12

*Fosson v. Palace (Waterland)*,
  78 F.3d 1448 (9th Cir. 1996) ................................................................................ 3

*Kahn Creative Partners, Inc.*,
  2011 WL 1195680 (C.D. Cal. Mar. 29, 2011) ...................................................... 7

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  568 U.S. 519 (2013) .............................................................................................. 3

*Lee v. Federal Street LA LLC*,
  2016 WL 2354835 (C.D. Cal. May 3, 2016) ........................................................ 5

*Leidholdt v. L.F.P. Inc.*,
  860 F.2d 890 (9th Cir. 1988) .............................................................................. 10

*Lickerish, Inc. v. Alpha Media Grp.*,
  2014 WL 12589641 (C.D. Cal. Jan. 2, 2014) ....................................................... 3

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 1999) ....................................................................... 2

*Mitchell v. Taylor*,
    2021 WL 4311459 (N.D. Cal. Sept. 22, 2021) ........................................... 8

*Mujica v. AirScan Inc.*,
    771 F.3d 580 (9th Cir. 2013) ....................................................................... 3

*Nelson v. Levy*,
    2016 WL 6892713 (N.D. Cal. Nov. 23, 2016) ........................................... 6

*R Power Biofuels, LLC v. Chemex LLC*,
    2017 WL 1164296 (N.D. Cal. Mar. 29, 2017) ........................................... 5

*Sakala v. Milunga*,
    2017 WL 2986364 (D. Md. July 13, 2017) .............................................. 10

*SDV/ACCI, Inv. v. AT&T Corp.*,
    522 F.3d 955 (9th Cir. 2008) ..................................................................... 11

*Second Measure, Inc. v. Kim*,
    143 F. Supp. 3d 961 (N.D. Cal. 2015) ........................................................ 7

*Shen v. Gotham Corp. Grp., Inc.*,
    2015 WL 4517146 (C.D. Cal. July 21, 2015) ............................................. 8

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*,
    306 F. Supp. 3d 1164 (C.D. Cal. 2018) ...................................................... 2

*Troy Grp., Inc. v. Tilson*,
    364 F. Supp. 2d 1149 (C.D. Cal. 2005) .................................................... 10

*UMG Recs., Inc. v. Global Eagle Entm't, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015) .................................................. 4, 5

*Walter v. Hughes Commc'ns, Inc.*,
    682 F. Supp. 2d 1031 (N.D. Cal. 2010) ...................................................... 8

*Williams v. California*,
    764 F.3d 1002 (9th Cir. 2014) ................................................................... 12

*Yellowcake, Inc. v. Morena Music, Inc.*,
    522 F. Supp. 3d 747 (E.D. Cal. 2021) ........................................................ 9

**State Cases**

*Beckwith v. Dahl*,
 205 Cal. App. 4th 1039 (2012) ................................................................................ 5

*Cel-Tech Comms., Inc. v. Los Angeles Cell. Tel. Co.*,
 20 Cal. 4th 163 (1999) ........................................................................................... 12

*Cotran v. Rollins Hudig Hall Inern.*,
 17 Cal. 4th 93 (1998) ........................................................................................... 6, 7

*ZL Tech., Inc. v. Does 1-7*,
 13 Cal. App. 5th 603 (2017) .................................................................................. 10

**Federal Statutes**

17 U.S.C. § 106 .......................................................................................................... 2

17 U.S.C. § 109 .......................................................................................................... 3

17 U.S.C. § 512(c)(3) ................................................................................................. 3

**DEFENDANTS' REPLY ISO MOTION TO DISMISS FAC**

Whitley's Opposition does not save his defective claims. Far from it. After cutting through its rhetoric and bluster, the Opposition does not actually dispute the core factual allegations and defects in the FAC that preclude Whitley from obtaining the relief he seeks as a matter of law.

Because Whitley has already amended his complaint once and does not request leave to amend in the event of dismissal—let alone identify specific facts that could support a claim if such leave were granted—the Court should dismiss his claims without leave to amend. *Adaimy v. Bank of New York Mellon*, 2012 WL 10423232, at *9 (C.D. Cal. Apr. 6, 2012) (dismissing claims with prejudice "[b]ecause Plaintiff's Opposition does not point to any specific facts that could be alleged to support such a claim if leave to amend were granted").

## I.   THE COPYRIGHT INFRINGEMENT CLAIM FAILS

At bottom, Whitley's copyright infringement claim fails as a matter of law because he does not dispute that (1) he authorized the use of his "Subject Design" in the Caked Apes NFTs, (2) he promoted the sale of the Caked Apes NFTs, (3) the Caked Apes collection "sold out" before he allegedly "revoked" his authorization to use his "Subject Design," and (4) he has not alleged Defendants created or sold any additional Caked Apes NFTs <u>after</u> he revoked his authorization. These core facts—all of which are in the four corners of the FAC and not disputed in the Opposition—foreclose a claim for copyright infringement. The claim should be dismissed.

Whitley argues Defendants may still be held liable for copyright infringement because, according to him, they acted outside the "scope of the license" by allegedly removing his access to social media accounts for the project <u>after</u> the works "sold out" and by not paying him certain royalties he believes he was entitled to. But these grievances sound in contract. They do not constitute copyright infringement.

When a copyright owner grants a license, it "ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract."

*MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 941 (9th Cir. 1999) (cleaned up). "[T]he potential for copyright infringement exists **only where** the licensee's action (1) exceeds the license's scope (2) in a manner that implicates one of the licensor's exclusive statutory rights." *Id.* at 940 (emphasis added). This second condition exists because "[o]therwise, a copyright holder could designate any disfavored conduct during use as copyright infringement," but that's not the law. *Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F. Supp. 3d 1164, 1172 (C.D. Cal. 2018) (Wright II, J.) (quotations marks and alterations omitted).

Here, Whitley fails on both counts. **First**, Whitley does not dispute that he was involved in the project *through the date the collection sold out*, and thus the purported condition that he be involved was not exceeded when the works were actually created and sold. **Second**, the alleged removal of Whitley from social media accounts <u>after</u> the works sold out, and the alleged non-payment of certain royalties, do not violate or implicate any of his exclusive rights of copyright. Indeed, the Copyright Act provides a copyright owner of a visual work with four exclusive rights: (1) "to reproduce the copyrighted work," (2) "to prepare derivative works based upon the copyrighted work," (3) "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending," and (4) "to display the copyrighted work publicly." 17 U.S.C. § 106. The alleged removal of Whitley from social media accounts <u>after</u> the derivative works embodying his "Subject Design" were already created and sold (all with his full involvement and authorization at the time) does not implicate any of these exclusive rights. See *Lickerish, Inc. v. Alpha Media Grp.*, 2014 WL 12589641, at *3 (C.D. Cal. Jan. 2, 2014) (stating that the breach of "terms of a license not involving the use of the copyright work . . . fall[s] under contract law," not copyright law). Neither does the alleged non-payment of money. That is why courts routinely dismiss copyright infringement claims based on the alleged failure to pay license fees. *Id.*

Whitley also cannot maintain a claim based on the alleged "revocation" of his

license because he concedes he has not alleged any post-revocation creation or sale of works embodying his "Subject Design" by Defendants, which appeared in only a small percentage of the collection to begin with (and only three works specifically identified by Whitley). Indeed, when a license is revoked, only continued use of the work may constitute infringement. *See Fosson v. Palace (Waterland)*, 78 F.3d 1448, 1455 (9th Cir. 1996) (noting that after a proper revocation, "***further distribution*** of the copyrighted material would constitute infringement" (emphasis added)). Again, Whitley alleges none. Nevertheless, he requests a free pass to enter discovery because "Defendants ***could have*** purchased Caked Apes after they were launched and then resold them." (Opp. at 8 (emphasis added).) This plea should be easily rejected because the "Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it." *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2013).

   Finally, Whitley suggests that after he allegedly revoked his authorization, Defendants can be held liable for infringement for the resale of Caked Apes NFTs by collectors in secondary markets. (Opp. at 8.) And to avoid such liability, Whitley states Defendants should have removed the Caked Apes NFTs from those secondary markets by filing takedown notices under the Digital Millennium Copyright Act ("DMCA"), which would have required Defendants to state under penalty of perjury that those resales constitute infringement. *See* 17 U.S.C. § 512(c)(3). This is absurd. Not only is this theory unsupported by any authority, but if Defendants had executed such a takedown, it would have constituted a false claim under the DMCA that would have exposed them to significant liability from the thousands of collectors who, upon their first purchase, received the right to resell the works. Indeed, when Defendants ***and Whitley*** sold the Caked Apes works to their original customers, by statute they granted them and any subsequent owners the right to resell the works "without the authority of the copyright owner." 17 U.S.C. § 109; *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 524 (2013) (buyers of copyrighted works

and subsequent owners "are free to dispose of [them] as they wish"). While Whitley may have no qualms about making false claims under the DMCA, Defendants do. Whitley's misguided theory should be rejected.

Because Whitley fails to state a claim for direct infringement, his vicarious infringement claim also fails (a point Whitley does not dispute).

## II. THE INTENTIONAL MISREPRESENTATION CLAIMS FAIL

The Opposition recognizes that to state an intentional misrepresentation claim based on promises in an alleged agreement (*i.e.*, promissory fraud), "[u]nder Rule 8(a), a plaintiff 'must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation.'" (Opp. at 9 (quoting *UMG Recs., Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015).) Yet the FAC and Opposition point to no such facts. Indeed, the Opposition rests largely on the conclusory claim that "[s]ignificant facts exist and were pled in the FAC demonstrating Defendants should be liable for intentional misrepresentation," but fails to show what any of them actually are. (*Id.*)

To be sure, the Opposition repeats the FAC's allegations of Whitley's supposed "fame" and "renowned reputation in the NFT community" and states Defendants wanted to work with him, but none of that shows an intent not to perform at the time of the alleged agreements. (*See* Opp. at 10.) Whitley also notes the FAC's allegations that Maguire, Nygard, and Wiriadjaja created a "multi-signature" wallet to receive the revenues from Caked Apes NFTs, but that just means two signatures were required to distribute funds. (*Id.*) It does not show an intent not to perform. In fact, the FAC's allegations regarding the wallet, as a whole, undercut Whitley's claim as they allege Defendants "created a 'multi-signature wallet' . . . ***to send Whitley the 10% he was due***." (FAC ¶ 39 (emphasis added).) Whitley also does not dispute—in either his FAC or Opposition—that ***he received*** 10% of Caked Apes revenues, further destroying any plausible inference he attempts to make. Indeed, his complaint is only that his supposed LLC, "WTF.Industries,"

1  didn't receive additional revenues to which he believes it was entitled.

2  Whitley also points to Defendants alleged actions to remove him from social media accounts *after* this controversy arose, but that does not show an intent not to perform at the time of the alleged agreements. Nor do Maguire's vague, generalized tweets referenced in the Opposition, which are not alleged to have anything to do with Whitley. (*See* Opp. at 11.) The Opposition itself believes these tweets concerned "other members of the NFT community." (*Id.*)

Finally, Whitley's cases don't help him. His reliance on *Beckwith v. Dahl*, 205 Cal. App. 4th 1039 (2012) to argue that mere "allegations that defendant never intended to perform the promises made [are] sufficient" fails because *Beckwith* was a state court case where Rule 8 didn't apply. (Opp. at 11.) And the claims survived in *R Power Biofuels, LLC v. Chemex LLC*, 2017 WL 1164296 (N.D. Cal. Mar. 29, 2017) and *Lee v. Federal Street LA LLC*, 2016 WL 2354835 (C.D. Cal. May 3, 2016), because those plaintiffs asserted sufficient facts to create a plausible inference of fraudulent intent at the time of the promise. Here, as already discussed, the facts Whitley points to support no such inference as to any of the four individual Defendants (whom Whitley lumps together in his analysis). In the end, the FAC alleges nothing more than an alleged failure to perform, which is not sufficient to state a claim for promissory fraud. *See UMG Recs., Inc.*, 117 F. Supp. 3d at 1109.

## III. THE BREACH OF IMPLIED CONTRACT, FIDUCIARY DUTY, AND DISSOLUTION OF IMPLIED PARTNERSHIP CLAIMS STILL FAIL

The FAC's breach of implied contract, fiduciary duty, and dissolution of implied partnership claims all still fail for the same reason—because Whitley does not sufficiently allege the existence and terms of an implied contract, joint venture, or partnership to state a claim or give Defendants fair notice.

To bring a claim based upon a contract, California law requires the plaintiff, at a minimum, to adequately allege "the substance of its relevant terms." *Mitchell v. Taylor*, 2021 WL 4311459, at *3 (N.D. Cal. Sept. 22, 2021) (quotation marks

omitted). This is "more difficult" than pleading a contract by quoting it verbatim, as it requires "comprehensiveness in statement, and avoidance of legal conclusions." *Id.* (quotation marks omitted). The allegations "must be sufficiently definite for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." *Id.* (quotation marks omitted). Additionally, when the contract is one allegedly formed by conduct, the plaintiff "must allege sufficient facts, such as a 'course of conduct,' from which 'the promise is implied.'" *Nelson v. Levy*, 2016 WL 6892713, at *5 (N.D. Cal. Nov. 23, 2016).

Whitley fails to satisfy these requirements. His allegations regarding the relationship between the parties are both amorphous and contradictory. On the one hand, he alleges that he and Defendants—***not through their words*** but "[t]hrough their actions" (FAC ¶ 80)—established an implied contract, joint venture, or partnership concerning an unspecified number of "projects created by each other" and unnamed "others in the Art Discord" (FAC ¶ 79). On the other, he confusingly asserts he "hired" Defendants as his employees, and fails to state the joint profits they would receive under the supposed implied partnership with him.[1] (*Id.* ¶¶ 30, 31; Opp. at 13.) Whitley also fails to explain how WTF.Industries, LLC came to become part of the implied partnership, yet alleges Defendants breached the partnership by "[f]ailing to distribute to WTF.Industries its portion of revenue." (FAC ¶ 82.) In short, the FAC's allegations are nowhere near definite enough to ascertain the scope and terms of the supposed implied contract, joint venture, or partnership on which Whitley seeks to bring claims. *Beautiful Slides, Inc. v. Allen*, 2017 WL 3782304, at *5 (N.D. Cal. Aug. 31, 2017) (dismissing claim for failure to allege terms of implied contract).

Rather than clarify the scope of the supposed implied agreement, Whitley argues his cryptic pleading is enough, citing a concurrence from *Cotran v. Rollins*

---

[1] In the Opposition, Whitley argues "each of the Defendants hav[e] at least some share" of this joint venture, whatever it is. (Opp. at 14.)

*Hudig Hall Inern.*, 17 Cal. 4th 93 (1998), to claim "ambiguous or uncertain" contract terms should just be sorted by the trier of fact. (Opp. at 12). But *Cotran* was not a pleading case. And it did not unwrite the rule that a plaintiff must adequately set forth its position as to the relevant contract terms. Indeed, in *Cotran*, the relevant term asserted by the plaintiff was clear—he claimed "he had an implied contract under the terms of which defendant employer could terminate him only for specific acts of misconduct." *Id.* at 112. The contract was "uncertain" because the defendant claimed the relationship "was terminable at will," requiring the question to be determined by the trier of fact. *Id.* In short, the case does not support a plaintiff's ability to allege "ambiguous" contract terms and proceed beyond the pleading stage.

Whitley's attempt to piggyback his claim off the joint venture alleged in the *Nygard* action is also unavailing, particularly because he "disputes the specific facts upon which Defendants base their theory." (Opp. at 12.) Thus, the mere fact that Defendants alleged a limited joint venture concerning the Caked Apes project does not permit Whitley to maintain a much broader, undefined claim concerning a joint venture extending to an unspecified number of projects with unnamed other persons.

Finally, *Second Measure, Inc. v. Kim*, 143 F. Supp. 3d 961 (N.D. Cal. 2015) and *Kahn Creative Partners, Inc.*, 2011 WL 1195680 (C.D. Cal. Mar. 29, 2011), also cited by Whitley, are easily distinguishable because in those cases, the scope of the alleged joint ventures were clear. In *Second Measure*, the claim alleged a joint venture in a defined and established corporate business (*i.e.*, "Second Measure, Inc."). By contrast, here, Whitley denies Defendants have any share of WTF.Industries, LLC, the only formal business entity involved. And in *Kahn*, the joint venture was clear and limited in scope to producing a specific, stand-alone information technology conference, unlike here where it supposedly extends to an unspecified and unlimited number of unnamed projects with unnamed other persons.

### IV.  THE "MONEY HAD AND RECEIVED" CLAIM FAILS

Whitley's claim for "money had and received" is based on three paragraphs,

which allege: (1) "Defendant's requested that Whitley market and promote the Pixel Tots and Caked Apes NFT collections" (FAC ¶ 99), (2) "No written contract existed where Defendants and Whitley agreed to compensation for Whitley's contribution" (*id.*), (3) "Whitley did market and promote the Pixel Tots and Caked Apes NFT collections" (*id.* ¶ 100), and (4) "Defendants have not compensated Whitley for his work promoting and/or marketing the Pixel Tots and Caked Apes NFT collections" (*id.* ¶ 101). These allegations do not state a claim for money had and received.

Whitley's Opposition entirely ignores *Bekins v. Zheleznyak*, 2016 WL 1091057 (C.D. Cal. Mar. 21, 2016), cited in the Motion, which is directly on point in holding that allegations that a defendant has "failed to compensate plaintiffs for their efforts" in helping the defendant generate revenue do "not align with a claim for money had and received." *Id.* at *7. And just like this case, in *Bevin*, the plaintiffs also did not allege any contract existed where the parties agreed to compensate the plaintiffs for their contribution. *Id.* As a result, the court properly dismissed the claim because the plaintiff could not claim the revenues were received by the defendants "for the use of the plaintiff," an essential element. *Id.*

The cases Whitley cites also don't help him. For example, in *Shen v. Gotham Corp. Grp., Inc.*, 2015 WL 4517146 (C.D. Cal. July 21, 2015), the plaintiff properly stated a claim by alleging it paid the defendant to perform various services it did not perform, while keeping the money. *Id.* at *8. It is no surprise that such facts properly stated a claim, as they represent the quintessential money had and received claim. *See Bekins*, 2016 WL 1091057, at *7 ("Typical applications of claims for money had and received involve cases where the plaintiff directly paid money to the defendant under a contract which is later breached or voided."). And in *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010), the court <u>dismissed</u> the claim because the plaintiffs—like Whitley—"cite[d] no authority for the proposition" that the money they sought "can be recoverable under a theory of money had and received." *Id.* at 1048.

## V. THE CONVERSION CLAIM FAILS

The Opposition also fails to revive Whitley's conversion claim. To the extent the claim is based on the "Art Discord," Whitley cannot overcome his own allegation that he transferred ownership of it to Defendant Wiriadjaja in August 2021. He continues to rely on nothing more than his conclusory say-so that he nevertheless retained legal ownership after this transfer and that "the term 'owner' only describes the highest level of access and control on the Discord Platform." (Opp. at 17.) Whitley still points to no *facts* to plausibly back this up, including for example, anything in Discord's terms of service.[2] As such, the claim falls short.

With the social media accounts, the allegations that set forth the conversion claim itself (FAC ¶¶ 102-109) fail to identify the accounts on which it is based. The Opposition now argues the claim is based on social media accounts referenced elsewhere in the FAC, but that is an improper pleading technique. *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 769-70 (E.D. Cal. 2021) (reliance on incorporation by reference to expand claim beyond factual allegations pleaded in claim for relief was "an improper shotgun pleading technique that does not give proper notice to either [defendant] or the Court" of factual basis for claim). Moreover, the only two social media accounts specifically named in the FAC's other allegations are the Twitter and Instagram accounts for Caked Apes, and the FAC fails to allege any facts that establish Whitley's ownership of those accounts. The only allegation is "Whitley and Defendants launched" the accounts. (FAC ¶ 38.) That is not enough. In short, the entire claim fails.

## VI. THE DEFAMATION CLAIMS FAIL

First, because Whitley does not oppose the dismissal of his defamation claim to the extent it is based on statements that aren't specifically charged in the FAC

---

[2] Were this claim to proceed, discovery would show Discord requires a person transferring ownership to affirmatively "acknowledge that by transferring ownership of this server" it "officially belongs to" the transferee.

(*see* Opp. at 18), Defendants request that the Court grant that part of their motion.

Second, Whitley still fails to state a claim with respect to the identified statements. Contrary to his request that the Court permit his claims to proceed because he has merely pled the elements (Opp. at 19), the law is clear that a plaintiff must plead more than just "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is particularly true with defamation, where a plaintiff must "establish both that the words about which they complain are reasonably capable of sustaining a defamatory meaning, and that they are not mere comment within the ambit of the First Amendment," which protects statements of opinion. *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) (quotation marks omitted). It is well-settled this is a question of law, meaning it can be addressed in a Rule 12(b)(6) motion. *Id.* at 1158.

Throughout the Motion, Defendants cited cases showing that nearly identical statements to the ones Whitley alleges have been held to be non-actionable opinions, yet the Opposition fails to address any of them. *See, e.g.*, *Sakala v. Milunga*, 2017 WL 2986364, *2 (D. Md. July 13, 2017) (dismissing defamation claims based on statements that person was "abused" because they were statements of opinion); *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 894 (9th Cir. 1988) (dismissing defamation claim based on statements that the plaintiff "hates men" and "hates herself" because they were statements of opinion). Whitley likewise ignores the cases stating that "generalized comments lacking any specificity as to the time or place of alleged conduct"—such as all the charged statements here—are also non-actionable. *ZL Tech., Inc. v. Does 1-7*, 13 Cal. App. 5th 603, 624 (2017). In short, Whitley fails to meet his burden of showing the charged statements are actionable statements of fact.

Whitley also fails to establish two of the charged statements were even about him (*i.e.*, Maguire's statement that "someone . . . abused me and tried to kill me" and Nygard's statement that "he hates all of you"). The Opposition doesn't even attempt to uphold the Nygard statement, which should therefore be dismissed. The

Opposition attempts to uphold the Maguire statement by misrepresenting a *different* tweet by Maguire that is excerpted in the FAC as being a comment by "a third party on the discord who explains that the 'someone' Maguire referred to had to be Whitley." (Opp. at 22.) An independent review of the actual screen shots in the FAC shows this is a blatant misrepresentation. (*See* FAC ¶ 46.) Not only is the referenced tweet *by Maguire* (*not* a third party), but it also doesn't state that the "someone" in the charged statement is Whitley. In short, the FAC pleads no facts—as it must—establishing that the charged statement concerns Whitley.

Whitley's attempt to distinguish *SDV/ACCI, Inv. v. AT&T Corp.*, 522 F.3d 955 (9th Cir. 2008) on this issue is also unavailing. Whitley claims it is inapposite because "it was a summary judgment case," but that makes no difference here because the court stated the question of whether a statement can be reasonably interpreted as referring to the plaintiff is a "question of law," not fact. *Id.* at 959. *SDV/ACCI, Inc.* makes clear that "a defamatory statement that is ambiguous as to its target" must meet *two* requirements: (1) it "must be capable of being understood to refer to the plaintiff" and (2) it "must be shown actually to have been so understood by a third party." *Id.* at 960. While Whitley fails on both grounds, the Motion challenged it primarily on the first because the FAC alleges no facts tying the statement to Whitley. However, the statement can also be dismissed because the FAC also alleges no facts showing that a third party understood it to refer to him.

And while Whitley notes *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694 (9th Cir. 1984), held the plaintiff stated a claim because, among other things, it made the conclusory allegation the remarks were "understood by the listening public to be of and concerning Plaintiff," *id.* at 697, the case **predated** *Twombly* and *Iqbal*'s disapproval of conclusory statements and was based on *Conley v. Gibson*'s abrogated rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," 355 U.S. 41, 45-46 (1957). It is of no

help to Whitley. Whitley's failure to allege sufficient *facts* is dispositive.

Finally, while the Opposition highlights the FAC's allegations that Maguire "told various of Whitley's contacts . . . that he threatened to kill her and that an audio recording of such threat exists" (Opp. at 19), it fails to address that the FAC alleges this on mere "information and belief" and does not set forth the dates the statements were purportedly made or the specific persons to whom they were made. As the Motion pointed out, to state a claim a plaintiff must "specifically identify who made the statements, *when they were made and to whom they were made*." *Elias v. Spotify USA Inc.*, 2020 WL 11884714, *2 (C.D. Cal. Nov. 24, 2020) (emphasis added). In *Elias*, the court dismissed a similar claim, also alleged on "information and belief," because it "fail[ed] to specifically allege the time, place, . . . or listener of each allegedly defamatory statement." *Id.* at *3. As the court reasoned, the allegations failed "to provide Defendants with any specifics," and the fact they were "based only on 'information and belief' . . . highlight[ed] the speculative nature" of the claim. *Id.* The Opposition makes no attempt to rescue this statement. It should also be dismissed.

## VII. THE UCL CLAIM FAILS

Whitley's UCL claim based on the "unlawful" prong falls with his underlying claims. The claim based on the "unfair" prong fails because the FAC does not allege that the conduct "threatens an incipient violation of an antitrust law . . . or otherwise significantly threatens or harms competition." *Cel-Tech Comms., Inc. v. Los Angeles Cell. Tel. Co.*, 20 Cal. 4th 163, 187 (1999). This requirement was noted in the Motion and the Opposition fails to address it.

## VIII. CONCLUSION

Defendants respectfully ask that the Court dismiss the FAC without leave to amend. *See Williams v. California*, 764 F.3d 1002, 1018-19 (9th Cir. 2014) ("The fact that Plaintiffs have already had two chances to articulate clear and lucid theories . . . , and they failed to do so, demonstrates that amendment would be futile.").

| | | |
|---|---|---|
| 1 | DATED: June 21, 2022 | KING, HOLMES, PATERNO & SORIANO, LLP |

By: */s/ John G. Snow*
 HOWARD E. KING
 JOHN G. SNOW
Attorneys for Defendants CLARE MAGUIRE, JAKE NYGARD, ANTONIUS WIRIADJAJA, and DONGLEE HAN

KING, HOLMES, PATERNO & SORIANO, LLP

5862.060/1826860.1

13

REPLY IN SUPPORT OF MOTION TO DISMISS FAC