O

# United States District Court
# Central District of California

| | |
|---|---|
| TAYLOR WHITLEY et al., <br><br> Plaintiffs, <br><br> v. <br><br> CLARE MAGUIRE et al., <br><br> Defendants. | Case № 2:22-cv-01837-ODW (JEMx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [22][28]** |

## I.   INTRODUCTION

Plaintiffs Taylor Whitley and WTF.Industries, LLC bring this action against Defendants Clare Maguire, Jake Nygard, Antonius Wiriadjaja, and Donglee Han, alleging copyright infringement and eleven other claims arising from Whitley's ouster from the digital art community that he founded.  (First Am. Compl. ("FAC") ¶¶ 1, 7–12, ECF No. 20.)   Defendants now move to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  (Mot. Dismiss FAC ("Motion" or "Mot."), ECF No. 22.)   The Motion is fully briefed. (Opp'n, ECF No. 25; Reply, ECF No. 26.)   For the following reasons, the Court **GRANTS IN PART and DENIES IN PART** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiffs allege the following facts, which the Court accepts as true for purposes of Defendants' Rule 12(b)(6) Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiff Whitley is an artist and the sole member of Plaintiff WTF.Industries, LLC, a digital art agency. (FAC ¶¶ 13, 32.) Defendants are individuals with whom Whitley worked and collaborated. (*Id.* ¶¶ 29–31, 35.)

### A. The Art Discord Server

In June 2021, Whitley set up a Discord server[2] entitled discord.art ("Art Discord") and purchased a corresponding web domain. (*Id.* ¶ 16.) Whitley used his notoriety as a digital artist to attract users to the Art Discord, where Whitley promoted his work and digital goods for sale. (*Id.* ¶ 18.) The Art Discord also contains significant digital assets owned by Whitley, including art and music assets, data and contact information about the art community and collectors, client lists, and future art project plans. (*Id.* ¶ 45.)

After launching the Art Discord, Whitley agreed to open a channel on the Art Discord to allow Defendant Wiriadjaja to market Wiriadjaja's Non-Fungible Tokens ("NFTs").[3] (*Id.* ¶ 20.) Wiriadjaja assisted Whitley in promoting the Art Discord and the two developed a strong working relationship. (*Id.* ¶ 22.)

On August 23, 2021, Whitley decided to take a temporary step back from active moderation of the Art Discord and temporarily transferred "ownership" of the Art Discord to Wiriadjaja. (*Id.* ¶¶ 23, 27.) Plaintiffs clarify that "ownership" conveys a particular meaning in the context of a web-platform that is distinct from legal ownership: an "owner" of a web-based platform has the highest level of server access

---

[2] A "Discord server" is an online community commonly focused on a single topic. (FAC ¶ 16.) A Discord server may contain multiple "channels" for discussions focused on subsets of the overall topic. (*Id.*)

[3] NFTs are "digital assets that correspond to a unique digital or real world item and serve as a proof of ownership or bill of sale for that item by describing the item in metadata." (FAC ¶ 13 n.1.)

and control, allowing the "owner" to dole out permissions to other users. (*Id.* ¶ 24.) Following the transfer of "ownership," Whitley "remained instrumental in hiring and promotion decisions," including by leading the hiring of twenty-four people. (*Id.* ¶¶ 25, 28.) Whitley also continued to pay the required maintenance fees for the Art Discord. (*Id.* ¶ 48.) In addition, Whitley did not make any changes with respect to who owned or controlled the website or social media accounts related to the Art Discord. (*Id.* ¶ 27.)

By mid-October 2021, the Art Discord community boasted thousands of members and required a full staff to manage it. (*Id.* ¶ 29.) Whitley and Wiriadjaja "agreed that they were 'co-creators' of the Art Discord and that each had played critical roles in its growth and development." (*Id.*)

On or about October 19, 2021, Defendant Maguire was hired as an Art Discord community manager. (*Id.* ¶ 30.) Throughout November 2021, Whitley, Wiriadjaja, and Maguire promoted NFT releases and developed the Art Discord. (*Id.* ¶ 31.) At the end of November 2021, Defendant Han joined the Art Discord. (*Id.*)

**B.  WTF.Industries**

In late 2021, Whitley formed Plaintiff WTF.Industries, a digital art agency for developing, marketing, and profiting from the sales of digital assets, such as NFTs and other digital art collections. (*Id.* ¶ 32.) On December 16, 2021, and "[i]n line with Whitley's ambitions," the Art Discord was rebranded to "WTF Industries." (*Id.* ¶ 33.)

**C.  The Pixel Tots Project**

Han created a NFT collection named Pixel Tots. (*Id.* ¶ 34.) Whitley and Han agreed that Whitley and WTF.Industries would market Pixel Tots for two months in exchange for (1) 25% of revenue from the initial launch; (2) 60% of all revenue earned through secondary sales[4]; and (3) 60 NFTs from the collection. (*Id.*)

---

[4] "NFTs are often bought and transferred using the Ethereum cryptocurrency system," which allows "the initial seller to automatically receive a percentage royalty on subsequent sales of the same NFT." (FAC ¶ 34 n.2.)

On December 16, 2021, Pixel Tots launched, generating tens of thousands of dollars in revenue to date. (*Id.* ¶¶ 33–34.) Whitley and WTF.Industries have not received any money from the Pixel Tots project. (*Id.* ¶ 34.)

**D.  The Caked Apes Project**

Whitley and Nygard collaborated on a NFT collection named Caked Apes. (*Id.* ¶ 35.) Whitley originally conceived of Caked Apes, advised on elements to include in various NFTs, and invested nearly $200,000 to launch the collection. (*Id.*) In addition, Whitley authorized the use of a series of logo designs ("Subject Design") in many of the Caked Apes NFTs. (*Id.* ¶¶ 36, 50.) Whitley alone created the Subject Design and registered it with the United States Copyright Office. (*Id.* ¶¶ 36, 49.)

On January 7, 2022, Whitley, Maguire, Nygard, and Wiriadjaja agreed that (1) Whitley would receive 10% of all revenue—including both primary sales and royalties from secondary sales—generated from Caked Apes; and (2) WTF.Industries would receive 30% of all primary sales and 45% of all royalties from secondary sales generated from Caked Apes. (*Id.* ¶ 37.) Whitley's authorization to use the Subject Design in the Caked Apes project was contingent on this revenue split and Whitley's continued involvement with and management of the project. (*Id.* ¶ 50.)

Whitley and Defendants launched a website and social media accounts to promote the Caked Apes project, each of which identified Whitley and Nygard as creators of the project. (*Id.* ¶ 38.) On January 10, 2022, Caked Apes opened for presale online. (*Id.*)

Unbeknownst to Whitley, Defendants created a "multi-signature wallet" to receive funds derived from the Caked Apes launch and to send Whitley the 10% he was due. (*Id.* ¶ 39.) A "multi-signature wallet" is a software that requires two authorized individuals to approve each monetary transaction. (*Id.* ¶ 39 n.5.) Since its launch, the Caked Apes project has generated an estimated $1.9 million in primary sales revenue and $225,000 in royalties from secondary sales. (*Id.* ¶ 40.) However,

Defendants have not distributed any money from these sales to WTF.Industries. (*Id.* ¶¶ 39, 41.)

Based on information and belief, Plaintiffs allege that, on January 28 and 30, 2022, Defendants revoked Whitley's access to all social media accounts related to Caked Apes and terminated Whitley's access to the Art Discord, which contains significant digital assets owned by Whitley. (*Id.* ¶¶ 44–45.)

### E. Defamation Allegations

Since Whitley's removal from the Art Discord, Nygard, Maguire, and individuals using anonymous social media accounts have made false and slanderous statements about Whitley. (*Id.* ¶ 46.) Plaintiffs allege on information and belief that Maguire sent numerous slanderous messages about Whitley on anonymous accounts that she controls or are "at her behest." (*Id.* ¶ 47.) Plaintiffs include screenshots of "representative examples" of the alleged false and slanderous statements in the First Amended Complaint. (*Id.* ¶ 46.)

### F. Proceedings

On March 18, 2022, Plaintiffs filed the Complaint. (Compl., ECF No. 1.) After Defendants moved to dismiss the Complaint, Plaintiffs filed the First Amended Complaint, alleging twelve causes of action:[5] (1) copyright infringement; (2) vicarious and/or contributory copyright infringement; (3) intentional misrepresentation against Han; (4) intentional misrepresentation against Maguire, Nygard, and Wiriadjaja; (5) breach of implied contract; (6) breach of fiduciary duty; (7) dissolution of implied partnership; (8) money had and received; (9) conversion; (10) defamation against Maguire; (11) defamation against Nygard; and (12) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200. (FAC ¶¶ 53–139.) Defendants now move to dismiss each of Whitley's claims. (*See generally* Mot.)

---

[5] Unless otherwise stated, Plaintiffs' causes of action are asserted against all Defendants. (*See* FAC ¶¶ 53–139.)

### III. LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy "the minimal notice pleading requirements of Rule 8(a)(2)"—"a short and plain statement of the claim." *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pursuant to this standard, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe "[a]ll factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). However, a court need not blindly accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment.

*See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

IV. **DISCUSSION**

**A. Copyright Infringement and Vicarious and/or Contributory Copyright Infringement (First and Second Causes of Action)**

As a result of Defendants' use of the Subject Design in the Caked Apes project, Plaintiffs bring claims for direct and vicarious and/or contributory copyright infringement. (FAC ¶¶ 53–63.) Plaintiffs allege that "Whitley's authorization to use the Subject Design was contingent on receiving his agreed upon portion of revenue . . . and WTF.Industries receiving its share, and [Whitley's] ongoing involvement with and management of the Caked Apes NFT project." (*Id.* ¶ 55.) Plaintiffs further allege that, after Defendants failed to pay WTF.Industries and removed Whitley from the Art Discord, Whitley revoked his authorization to use the Subject Design, yet Defendants "continued to sell" Caked Apes NFTs incorporating the Subject Design. (*Id.* ¶¶ 51, 55.) Defendants now move to dismiss Plaintiffs' claims for copyright infringement on the basis that Whitley provided Defendants a license to use the Subject Design in the Caked Apes project and Plaintiffs fail to allege that Defendants exceeded the scope of that license. (Mot. 4–7.)

"Generally, a copyright owner who grants a nonexclusive license to use [their] copyrighted material waives [the] right to sue the licensee for copyright infringement and can sue only for breach of contract." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999), *abrogated on other grounds by Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979–80 (9th Cir. 2011) (internal quotation marks omitted). "To recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license[;] and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution)." *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 940 (9th Cir. 2010). Thus, "for a licensee's violation of a contract to constitute

copyright infringement, there must be a nexus between the condition [that was violated] and the licensor's exclusive rights of copyright." *Id.* at 941. By contrast, the breach of "terms of a license not involving the use of the copyrighted work . . . fall[s] under contract law." *Lickerish, Inc. v. Alpha Media Grp.*, No. 13-cv-00377-DMG (SSx), 2014 WL 12589641, at *3 (C.D. Cal. Jan. 2, 2014).

Here, Plaintiffs fail to plausibly allege that Defendants violated any of Whitley's exclusive rights of copyright. Although Plaintiffs allege that Defendants failed to pay WTF.Industries and removed Whitley from the Art Discord, (FAC ¶ 55), those allegations do not raise a dispute concerning whether Defendants used the Subject Design in a manner unauthorized by Whitley's license—*e.g.*, whether Defendants reproduced or distributed the Subject Design in an unauthorized manner.[6] *See MDY*, 629 F.3d at 940–41. Rather, these claims present a straightforward breach of contract dispute that lacks a nexus to Whitley's "exclusive rights of copyright." *Id.* at 941; *see also Lickerish*, 2014 WL 12589641, at *3 (dismissing copyright claim based on failure to pay required fee because such a claim sounds in contract). In addition, Plaintiffs' allegation that Defendants "continued to sell" Caked Ape NFTs incorporating the Subject Design after Whitley revoked the authorization, (FAC ¶¶ 51, 55), is wholly conclusory and appears to be inconsistent with Plaintiffs' well-pleaded factual allegations. *See EVOX Prods., LLC v. Verizon Media Inc.*, No. 2:20-cv-02852-CBM (JEMx), 2021 WL 3260609, at *4–5 (C.D. Cal. May 5, 2021) (dismissing infringement claim where plaintiff failed "to allege any non-conclusory facts that the photographs were distributed by Defendants"). For example, Plaintiffs also allege that the Caked Ape NFTs "sold out [in] their original run" before

---

[6] Plaintiffs argue that a footnote in *MDY* supports a copyright infringement claim based on an alleged failure to pay. (*See* Opp'n 7–8 (citing *MDY*, 629 F.3d at 941 n.4).) Although a footnote in *MDY* includes dicta suggesting that the failure to make required payments while continuing to use a licensed work "arguably may" constitute copyright infringement, *MDY*, 629 F.3d at 941 n.4, the Ninth Circuit expressly held that a licensor may bring a claim for copyright infringement "only where the licensee's action . . . exceeds the license's scope . . . in a manner that implicates one of the licensor's exclusive statutory rights," *id.* at 940. Here, Plaintiffs do not allege any facts indicating that Defendants violated Whitley's exclusive rights of copyright.

Whitley revoked the authorization to use the Subject Design. (FAC ¶¶ 40–44, 55.) Thus, the Court finds that Plaintiffs fail to state a plausible claim for copyright infringement because Defendants' alleged use of the Subject Design falls within the scope of the alleged license.

The parties agree that Plaintiffs' vicarious copyright infringement claim rises and falls with Plaintiffs' direct copyright infringement claim. (*See* Mot. 7; Opp'n 9.) Because Plaintiffs fail to state a claim for direct copyright infringement, Plaintiffs' vicarious copyright infringement claim likewise fails. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' claims for direct and vicarious copyright infringement and **DISMISSES** these claims **with leave to amend**.

**B.    Intentional Misrepresentation (Third and Fourth Causes of Action)**

Plaintiffs assert two intentional misrepresentation claims. (FAC ¶¶ 64–77.) In the third cause of action, Plaintiffs allege that Han knowingly misrepresented that, in exchange for marketing the Pixel Tots collection, Plaintiffs would receive certain revenue percentages and 60 NFTs. (*Id.* ¶ 65.) Similarly, in the fourth cause of action, Plaintiffs allege that Maguire, Nygard, and Wiriadjaja knowingly misrepresented that, in exchange for Whitley's work on the Caked Apes project, Plaintiffs would receive certain revenue percentages. (*Id.* ¶ 72.) Plaintiffs further allege that Defendants failed to pay Plaintiffs pursuant to these agreements. (*Id.* ¶¶ 34, 41.)

The elements of an intentional misrepresentation claim are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage.[7] *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997); *see also UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1109 (C.D. Cal. 2015). A plaintiff asserting an intentional misrepresentation claim based on promises in an

---

[7] "When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).

alleged agreement "must plead and prove that the defendant made a promise . . . that it had no intention of performing." *UMG Recordings*, 117 F. Supp. 3d at 1109. But "the mere fact that a party breaches a promise to perform a condition of contract is as a matter of law insufficient to give rise to an inference that the breaching party acted with fraudulent intent at the time that the promise was made." *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, No. C 05-0553 MHP, 2005 WL 1876106, at *6 (N.D. Cal. Aug. 8, 2005) (citing *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985)).

Here, Plaintiffs' allegations against Han are insufficient to give rise to an inference that Han acted with fraudulent intent at the time Han agreed to pay Plaintiffs for the Pixel Tots project. Plaintiffs' allegation that "Han knew [his] representations were false" is merely conclusory. *See Sprewell*, 266 F.3d at 988. And, beyond Plaintiffs' allegation that Han ultimately failed to perform, (FAC ¶ 34), Plaintiffs plead no other facts to support the inference that Han had no intention to perform when she promised to pay Plaintiffs. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' claim for intentional misrepresentation against Han and **DISMISSES** this claim **with leave to amend**.

However, unlike Plaintiffs' allegations against Han, Plaintiffs allege sufficient facts against Maguire, Nygard, and Wiriadjaja to infer they acted with fraudulent intent at the time they agreed to pay Plaintiffs for the Caked Apes project. In addition to alleging that Maguire, Nygard, and Wiriadjaja failed to pay WTF.Industries, Plaintiffs allege that Maguire, Nygard, and Wiriadjaja created a "multi-signature wallet" to receive funds from the Caked Apes project without Whitley's knowledge. (*Id.* ¶¶ 39, 41.) Plaintiffs further allege that Maguire, Nygard, and Wiriadjaja created the wallet to pay Whitley, but not WTF.Industries. (*Id.* ¶ 39.) These facts, construed in the light most favorable to Plaintiffs, support the inference that Maguire, Nygard, and Wiriadjaja did not intend to pay WTF.Industries when they agreed to do so. *See Lee*, 250 F.3d at 688. Accordingly, the Court **DENIES** Defendants' Motion as to

Plaintiffs' claim for intentional misrepresentation against Maguire, Nygard, and Wiriadjaja.

### C. Breach of Implied Contract (Fifth Cause of Action)

Defendants move to dismiss Plaintiffs' claim for breach of implied contract on the basis that Plaintiffs fail to sufficiently plead that the parties entered into an agreement on specific terms and conditions. (Mot. 9–12.)

In California, the elements of a claim for breach of an express or implied contract are the same. *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 525 (2009). To state a claim for breach of an implied contract, a plaintiff must allege facts sufficient to establish: (1) the existence of a contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). The existence and terms of an implied contract are manifested by the parties' conduct. Cal. Civ. Code § 1621.

Plaintiffs allege that Whitley, WTF.Industries, and Defendants "joined together to earn profit and share loss from projects created by each other and others in the Art Discord and promoted by the Art Discord and its social media accounts." (FAC ¶ 79.) Plaintiffs allege that Whitley and Defendants formed an implied partnership "[t]hrough their actions in promoting projects such as the Caked Apes NFT project." (*Id.* ¶ 80.) However, other than the allegation that the parties entered into an implied contract "to earn profit and share loss created by each other and others in the Art Discord," Plaintiffs fail to allege the substance of the terms of this alleged contract. As alleged, the implied contract is not sufficiently definite for a court to enforce it. *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991) ("Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.")

Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' claim for breach of implied contract and **DISMISSES** this claim **with leave to amend**.

### D. Breach of Fiduciary Duty and Dissolution of Implied Partnership (Sixth and Seventh Causes of Action)

Defendants move to dismiss Plaintiffs' claims for breach of fiduciary duty and dissolution of implied partnership on the sole basis that Plaintiffs fail to allege the existence of a joint venture or partnership. (Mot. 12–13.)

However, the Court finds that Plaintiffs plausibly allege a partnership. Under California law, a partnership is "the association of two or more persons to carry on as coowners a business for profit, . . . whether or not the persons intend to form a partnership." Cal. Corp. Code § 16202(a). A partnership "may be formed orally or assumed to have been organized from a reasonable deduction from the acts and declarations of the parties." *Weiner v. Fleischman*, 54 Cal. 3d 476, 483 (1991) (internal quotation marks and citations omitted). "The actual sharing of profits . . . is prima facie evidence . . . when determining if a partnership exists." *Holmes v. Lerner*, 74 Cal. App. 4th 442, 457 (1999).

Here, Plaintiffs allege that they entered into profit-sharing agreements with Han regarding the Pixel Tots project and with Maguire, Nygard, and Wiriadjaja regarding the Caked Apes project. (FAC ¶¶ 34, 37.) Plaintiffs further allege that "Whitley, WTF.Industries, and Defendants joined together to earn profit and share loss from projects" through Art Discord and the production of other NFT projects. (*Id.* ¶ 79.) Moreover, Plaintiffs allege that Whitley and Wiriadjaja "agreed that they were 'co-creators' of the Art Discord," an online community that Plaintiffs and Defendants collectively developed to promote and sell digital goods. (*Id.* ¶¶ 18, 29–31, 37.) These facts are sufficient to allege the existence of a partnership. Accordingly, the Court **DENIES** Defendants' Motion as to Plaintiffs' claims for breach of fiduciary duty and dissolution of implied partnership.

### E. Money Had and Received (Eighth Cause of Action)

Plaintiffs' eighth claim for money had and received is based on Defendants' failure to compensate Whitley for his work promoting and marketing the Pixel Tots

and Caked Apes NFT projects. (*Id.* ¶ 101.) Defendants move to dismiss this claim on the basis that Plaintiffs fail to plead the essential elements of this claim, including by failing to identify a "sum certain" at issue. (Mot. 13–15.)

"A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff." *Murphy v. Am. Gen. Life Ins. Co.*, 74 F. Supp. 3d 1267, 1280 (C.D. Cal. 2015) (quoting *Gutierrez v. Girardi,* 194 Cal.App.4th 925, 937 (2011)). "While it is true that money cannot be the subject of a conversion unless a specific sum capable of identification is involved, . . . it is not necessary that each coin or bill be earmarked." *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019 (E.D. Cal. 2010).

Here, Plaintiffs fail to properly allege a claim for money had and received because they do not allege that Defendants possess a sum certain owed to Whitley for marketing services. In their claim for relief, Plaintiffs allege that "Defendants have not compensated Whitley for his work promoting and/or marketing the Pixel Tots and Caked Apes NFT collections." (FAC ¶ 101.) Elsewhere in the Complaint, Plaintiffs allege that Defendants agreed to compensate Whitley and WTF.Industries in relation to the Pixel Tots and Caked Apes projects, but those allegations do not reflect an agreement by Defendants to pay Whitley a sum certain for his work promoting or marketing the projects. (*Id.* ¶¶ 34, 37.) First, under the alleged agreement concerning Pixel Tots, Defendants agreed to compensate Whitley and WTF.Industries for marketing services in the form of a percentage of revenue and 60 NFTs from the collection. (*Id.* ¶ 34.) However, Plaintiffs do not allege facts showing that the amount Defendants owe Whitley is capable of being reduced to a sum certain, including whether (1) the NFTs were intended to compensate Whitley alone; (2) Defendants provided some or all of the NFTs; and (3) the value of the unspecified NFTs—which fluctuates over time, (*id.* ¶ 34 n.2)—is calculable. Second, Plaintiffs do not allege that the parties' compensation agreement for the Caked Apes project was for Whitley's

marketing and promotion services alone. (*Id.* ¶¶ 35–37.) Rather, that agreement seemingly encompassed additional contributions to the project, including Whitley's authorization to use the Subject Design. (*Id.*) Based on these allegations, Plaintiffs do not plead an amount that Defendants owe Whitley for marketing and promotion services that is capable of being reduced to a sum certain. *See Natomas Gardens*, 710 F. Supp. 2d at 1019; *see also Johnson v. GMRI, Inc.*, No. CV F 07-0283LJODLB, 2007 WL 1490819, at *6 (E.D. Cal. May 21, 2007) (finding "mere estimates" insufficient to state claim for money had and received).

Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' claim for money had and received and **DISMISSES** this claim **with leave to amend**.

**F. Conversion (Ninth Cause of Action)**

Next, Defendants move to dismiss Plaintiffs' conversion claim. (Mot. 15–16.) Under California law, conversion is "the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1161 (9th Cir. 2017) (quoting *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 208 (2014)). The elements of a conversion claim are: "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019).

Here, Plaintiffs' conversion claim rests on two theories. (FAC ¶¶ 102–109.) First, Plaintiffs allege that Defendants wrongfully converted the Art Discord and all data contained therein when Defendants terminated Whitley's access. (*Id.* ¶¶ 103, 105.) Defendants move to dismiss this claim solely on the basis that Defendants rightfully owned and possessed the Art Discord because, as Plaintiffs allege, Whitley transferred "ownership" of the Art Discord to Wiriadjaja in August 2021. (Mot. 15–16.) However, Plaintiffs also allege that "owner" has a specific meaning in the context of the web-platform Discord and "does not reflect legal ownership," but rather

"the highest level of access and control of anyone presently existing on [the] server." (FAC ¶ 24.) In addition, Plaintiffs allege other facts that indicate that Whitley maintained an ownership interest in the Art Discord after he transferred "ownership" to Wiriadjaja. For example, Plaintiffs allege that Whitley "merely transferred the 'ownership' to Wiriadjaja temporarily," and that afterwards, Whitley remained actively involved in the Art Discord, making hiring and promotion decisions and paying the required maintenance fees for the server. (*Id.* ¶¶ 25, 27–28, 48.) Based on these allegations, Plaintiffs allege that Whitley temporarily transferred certain administrative access and control privileges within the Art Discord—not legal ownership—to Wiriadjaja. Therefore, the Court **DENIES** Defendants' Motion as to Plaintiffs' claim for conversion of the Art Discord and all data contained therein.

The second theory underlying Plaintiffs' conversion claim is that Defendants wrongfully converted "the social media accounts" that Whitley created to promote the Art Discord. (*Id.* ¶ 104.) Defendants move to dismiss this claim on the basis that Plaintiffs fail to identify the social media accounts that are subject to the conversion claim. (Mot. 16.) Plaintiffs refer to multiple social media accounts throughout the Complaint, (*see, e.g.*, FAC ¶¶ 13, 38), but do not identify any in the cause of action for conversion, (*see id.* ¶¶ 102–109). Defendants should not be required to guess as to which social media accounts are subject to Plaintiffs' conversion claim. *See Applied Hydrogel Tech., Inc. v. Raymedia, Inc.*, No. 06-cv-02254-B (PORx), 2007 WL 951297, at *4 (S.D. Cal. Mar. 2, 2007) (dismissing conversion claim where plaintiff "did not adequately identify" the property subject to the claim). Plaintiffs' claim for conversion of the social media accounts fails "to give fair notice and to enable [Defendants] to defend [themselves] effectively." *Starr*, 652 F.3d at 1216. Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' claim for conversion of the social media accounts **with leave to amend**.

### G. Defamation (Tenth and Eleventh Causes of Action)

Defendants move to dismiss Plaintiffs' defamation claims against Maguire and Nygard on the bases that (1) by referring to unidentified statements, Plaintiffs fail to give Defendants fair notice of the statements charged against them; and (2) the statements that Plaintiffs identify are not actionable. (Mot. 16–23.) The parties agree that Plaintiffs' claims shall be limited to only the statements that Plaintiffs specifically identify in the claims. (*Id.* at 16–18; Opp'n 18; FAC ¶¶ 110–136.)

Under California law, a defamation claim includes the following elements: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1166–67 (C.D. Cal. 2015) (quoting *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010)). In order to survive a motion to dismiss, a plaintiff must establish both that the words "about which they complain are reasonably capable of sustaining a defamatory meaning," and "that they are not mere comment within the ambit of the First Amendment." *Knievel v. ESPN*, 393 F.3d 1068, 1073–74 (9th Cir. 2005) (internal quotation marks omitted). Courts must interpret the statement "not in isolation, but within the context in which it is made." *Id.* at 1074.

#### 1. Maguire's Alleged Defamatory Statements

First, Plaintiffs allege that Maguire defamed Whitley by stating on social media that "someone I was asked to help build community for abused me and tried to kill me." (FAC ¶ 111.) Although this alleged statement does not refer to Whitley by name, it is plausible that, based on the context of Maguire and Whitley's alleged professional relationship, this statement refers to Whitley by reasonable implication. (*Id.* ¶ 30 (alleging Maguire was hired as a community manager for the Art Discord); *D.A.R.E Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1289 (C.D. Cal. 2000) ("[T]he plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication."). In addition, under

California law, "wrongful accusations of criminal conduct . . . are among the most clear and egregious types of defamatory statements." *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1127 (2003). Thus, the Court finds that Maguire's alleged statement could reasonably be understood to state that Whitley tried to kill Maguire. This is sufficient to state a claim for defamation against Maguire.

Second, Plaintiffs allege that Maguire defamed Whitley by stating that, "[t]he caked apes collection was DMCA'd by Taylor Whitley aka Taylor wtf because he chose to abuse Cake and an entire community of holders of Caked Apes." (FAC ¶ 111.) However, this allegation fails to support a claim for defamation because Plaintiffs do not allege that Maguire's statement that Whitley "DMCA'd" the Caked Apes collection is false. Rather, Plaintiffs appear to allege that Maguire's statement that Whitley "abuse[d] Cake and an entire community of holders of Caked Apes" was false. (*Id.* ¶ 117 (alleging falsity because "Whitley was unfailingly polite and kind to Maguire").) However, that statement is a non-actionable opinion and "too loose and hyperbolic to be susceptible of being proven true or false." *Art of Living Found. v. Does*, No. 10-cv-05022-LHK, 2011 WL 2441898, at *8 (N.D. Cal. June 15, 2011) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21–22 (1990)).

The final two statements that Plaintiffs allege Maguire made are (1) "Can you tell me what it is I said about you because i know Taylor despises you but I don't know who you are;" and (2) Whitley threatened to kill Maguire and that an audio recording of such threat exists in Maguire's possession. (FAC ¶¶ 111–12.) However, Plaintiffs do not identify to whom Maguire made the statements or when they were made. Accordingly, Plaintiffs do not sufficiently state a claim for defamation based on these statements.

For these reasons, Plaintiffs state a claim for defamation against Maguire as to only Maguire's alleged first statement, and the Court **DENIES** Defendants' Motion as to Plaintiffs' defamation claim against Maguire.

### 2. *Nygard's Alleged Defamatory Statement*

Plaintiffs' defamation claim against Nygard rests on the allegation that Nygard defamed Whitley by stating "he hates all of you" in a series of posts on social media. (*Id.* ¶ 126.) Plaintiffs allege that "[t]he relevant public familiar with Whitley, the Art Discord, and Defendants understands Nygard to be referring to Whitley, even without naming him." (*Id.* ¶¶ 127, 129.) However, Plaintiffs allege no facts to support the conclusory allegation that "[t]he relevant public" would understand Nygard to be referring to Whitley in the context of the statement "he hates all of you." Thus, Plaintiffs fail to allege "that the statement at issue either expressly mentions [Whitley] or refers to [Whitley] by reasonable implication." *D.A.R.E Am.*, 101 F. Supp. 2d at 1289. This is insufficient to state a claim for defamation against Nygard.

Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiffs' defamation claim against Nygard and **DISMISSES** this claim **with leave to amend.**

### H. Unfair Competition (Twelfth Cause of Action)

Finally, Defendants move to dismiss Plaintiffs' UCL claim. (Mot. 24–25.) By way of this claim, Plaintiffs allege that Defendants "engaged in unlawful and unfair business practices" by wrongfully removing Whitley from the Caked Apes social media accounts and withholding the Art Discord and the revenue generated by the Pixel Tots and Caked Apes NFT launches." (FAC ¶ 138.)

The UCL prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The "unlawful" prong prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145 (N.D. Cal. 2013) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). The "unfair" prong "creates a cause of action for a business practice that is unfair even if not proscribed by some other law." *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014). Conduct is "unfair" under the UCL if it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of

one of those laws . . . or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns*, 20 Cal. 4th at 187.

First, Defendants' sole argument for dismissal of Plaintiffs' claim under the "unlawful" prong is that the claim "is based entirely on his other defective claims." (Mot. 24.) However, as discussed above, the Court denied Defendants' Motion as to Plaintiffs' claim for conversion of the Art Discord and all data contained therein. *See supra* Part IV.F. Because Defendants put forth no other argument regarding the substance of Plaintiffs' unlawful business practices claim, the Court **DENIES** Defendants' Motion as to Plaintiffs' UCL claim under the "unlawful" prong.

Second, Defendants argue that Plaintiffs fail to plead a claim under the 'unfair' prong because Plaintiffs make only boilerplate allegations that do not address how the alleged conduct threatens or harms competition. (Mot. 24–25.) Indeed, Plaintiffs' claim is devoid of any allegations regarding how Defendants' conduct harmed competition. (*See* FAC ¶¶ 138–39.) Instead, Plaintiffs allege only that Defendants' conduct harmed Plaintiffs' business and property. (*Id.*) Thus, Plaintiffs fail to state a claim under the "unfair" prong of the UCL. *See Snapkeys, Ltd. v. Google LLC*, 442 F. Supp. 3d 1196, 1210 (N.D. Cal. 2020) (granting motion to dismiss UCL claim under unfair prong where plaintiff failed to allege any harm to competition and "merely focuse[d] on harm to itself"). The Court **GRANTS** Defendants' Motion as to Plaintiffs' UCL claim under the "unfair" prong **with leave to amend**.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion as to Plaintiffs' claims for (1) intentional misrepresentation against Maguire, Nygard, and Wiriadjaja; (2) breach of fiduciary duty; (3) dissolution of implied partnership; (4) conversion of the Art Discord and all data contained therein; (5) defamation against Maguire; and (6) UCL claim under the unlawful prong. The Court otherwise **GRANTS** Defendants' Motion **with leave to amend**. (ECF Nos. 22, 28.)

If Plaintiffs choose to amend, their Second Amended Complaint is due no later than **twenty-one (21) days** from the date of this Order. If Plaintiffs do not amend, then (1) Defendants' Answer is due **fourteen (14) days** from the date the Second Amended Complaint would have been due, and (2) the dismissal of Plaintiffs' claims as described herein shall be deemed a dismissal with prejudice as of the lapse of Plaintiffs' deadline to amend.

**IT IS SO ORDERED.**

December 5, 2022

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**